# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER F. PAUL<br>31 Holcombe Way<br>Chandler, NC 28715,<br><br>   *Plaintiff,*<br><br> v.<br><br>JUDICIAL WATCH, INC.<br>501 School Street, S.W.<br>Suite 500<br>Washington, D.C. 20024,<br><br>THOMAS J. FITTON<br>5245 42nd Street N.W.<br>Washington, D.C. 20015, and<br><br>PAUL ORFANEDES, ESQUIRE<br>1050 North Stuart Street<br>Unit 515<br>Arlington, VA 22201.<br><br>   *Defendants.* | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED.** |

## COMPLAINT

Plaintiff, Peter F. Paul ("Paul"), complains against the Defendants, Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), and Paul J. Orfanedes, Esquire ("Orfanedes"), as follows:

### INTRODUCTION

1. This action arises out of the actions and inactions of the Defendants in connection with their representation of Paul. Paul, a Hollywood producer and entrepreneur, at President Clinton's request, organized and underwrote a series of fundraising events largely for the benefit

of Hillary Rodham Clinton's 2000 Senate campaign. Among the events were "Hollywood's Tribute to William Jefferson Clinton." After Paul discovered that the money he raised and contributed had never properly been reported to the Federal Election Commission ("FEC"), the Internal Revenue Service ("IRS") or the Secretary of the Senate, Paul went public and "blew the whistle" on these illegal and improper activities.

2.      Paul contacted the Defendants in March 2001, and subsequently entered into agreements with them to represent him in connection with all his whistle blowing activities. This representation included providing and/or paying for Paul's legal representation in actions he instituted, and defending him in retaliatory actions brought against him alleging securities law and related violations of campaign financing laws and civil litigation. Judicial Watch recognized that its representation of Paul in these maters was "in the public interest due to its relationship to illegal conduct by high government officials." In return, for providing him global representation, Paul authorized Judicial Watch to solicit donations from the public for championing Paul's cause, and to seek publicity for Paul as may serve the "public interest."

3.      Pursuant to their agreements, Defendants undertook Paul's representation in several civil and criminal matters, including, *inter alia*, (a) civil actions against former President William Jefferson Clinton, Senator Hillary Rodham Clinton and others, (b) defense of criminal charges brought by the United States or its agencies in federal court, (c) a bankruptcy action in California state court, (d) complaints by Paul to the FEC and the Senate Ethics Committee, and (e) proffers to the Attorney General regarding government misconduct in connection with an operative who, along with the Clintons, contributed to the collapse of Paul's public company. Judicial Watch immediately, aggressively and continuously solicited donations from the public using its efforts on behalf of Paul to raise the funds. Defendants were spectacularly successful and on

2

information and belief, raised millions of dollars from hundreds of thousands of donors.

4.      Beginning in late September 2003, upon his extradition from Brazil to answer the criminal charges against him in the Eastern District of New York, Paul languished in pre-trial detention for over 16 months.  Because it suited Judicial Watch's purposes, Defendants employed a strategy to antagonize the judge in the case, virtually guaranteeing that Paul would remain in pre-trial detention, even though such was not in Paul's best interest.  Although Paul requested that Defendants provide new attorneys under the agreements, Defendants refused the requests.  Only after Paul had to personally retain a new attorney at his own expense --- despite the agreements with Defendants --- was that attorney able to secure Paul's release after 43 months of pretrial detention in Brazil and New York.  The attorneys Defendants retained were based in California and failed to even visit Paul when he requested, or to communicate with him, much less proceed as he wished.  When Paul himself found counsel who could assist him, Defendants failed to pay as they were obligated to out of the funds Judicial Watch had raised on Paul's behalf.

5.      Thereafter, and in breach of their duties to Paul, Defendants abused their control over Paul's legal representation in early 2005 to coerce Paul into signing a mutual general release for their prior misconduct.  When Paul refused to release Defendants, they not only fabricated a basis on which the existing attorneys under Defendants' control succeeded in withdrawing from all pending cases, leaving Paul entirely on his own, but Defendants refused to honor their agreements to provide Paul the representation to which he was entitled.  Instead, they abandoned Paul who then had to fend for himself during critical phases of his civil and criminal cases.

6.      After abandoning Paul, Defendants nonetheless continued to use his whistle blowing activities for their own ends, including touting his actions and information as their own, misrepresenting their efforts on his behalf, publishing photographs provided and owned by Paul

3

and linked to Defendants' website, and used the confusion they created in the public in soliciting enormous amounts of donations based on Paul's activities. Defendants' outrageous and malicious actions have injured Paul by an amount in excess of $1 million dollars.

## THE PARTIES

7.     Paul is an individual citizen currently residing in Chandler, North Carolina.

8.     Defendant Judicial Watch is a 501(c) (3) organization formed under laws of the District of Columbia with its headquarters in the District of Columbia. Upon information and belief, Judicial Watch was founded in 1994 as a public interest government watchdog to investigate and prosecute government corruption and abuse. Judicial Watch purports to be a public interest law firm with the motto "Because No One is Above the Law!"

9.     Thomas J. Fitton ("Fitton") is President of Judicial Watch. At all times material to the allegations made in this complaint, Judicial Watch was controlled by Fitton. Fitton has never had a license to practice law, a law degree or even a college degree during that time.

10.    Paul J. Orfanedes ("Orfanedes") is the Secretary and a Director of Judicial Watch. At all times material to the allegations made in this complaint, Orfanedes was the Secretary of Judicial Watch, a director, and the attorney managing cases at Judicial Watch, including the representation of Paul in civil and criminal matters.

## JURISDICTION AND VENUE

11.    The court has jurisdiction under 42 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction is also proper pursuant to 15 U.S.C. §§ 1125(a), *et. seq.* and 15 U.S.C. § 1117(a). This court has supplemental jurisdiction over the claims in this complaint that arise under state law, because the state law claims are so related to the federal claims that they form part of the

4

320008-4

same case or controversy and derive from the same operative facts.

12.    Venue is proper pursuant to 28 U.S.C. § 1391.  The actions occurred in whole or in part in this jurisdiction and, therefore, venue is appropriate.

## STATEMENT OF FACTS

13.    Paul was a Hollywood producer and entrepreneur who owned controlling interests in and managed several businesses in the United States and overseas.  In or around 2000, Paul sought to have then President Clinton enter into a business arrangement with two of his companies to use his "rainmaking" services after his Presidential term ended.  Paul had discussions with President Clinton, personally and through agents designated by him, who requested that Paul organize and underwrite a series of fundraising events to benefit, *inter alia,* his wife's Senate campaign.  Included in these efforts was the largest fund raising event of Hillary Rodham Clinton's campaign, an event titled "Hollywood's Tribute to William Jefferson Clinton."  The more than $1.2 million Paul contributed was never properly reported to the FEC, or in filings lodged with the Secretary of the Senate or the IRS.

14.    After Paul learned about the Clinton campaign fundraising abuses, and how he and his companies had been deceived, he decided to "blow the whistle" on these abuses.  Paul knew that Judicial Watch routinely filed suits against public agencies and officials to fight corruption. Defendants further represented that Judicial Watch was the only public interest group with the necessary clout to adequately and fully represent Paul in all aspects of his whistle blowing activities.  In or about March of 2001, Judicial Watch and Paul entered into an agreement whereby Judicial Watch undertook the legal representation of Paul in all matters, criminal and civil, pertaining to his whistle blowing activities, and particularly with respect to the exposing of fundraising abuses of Senator Hillary Rodham Clinton.  In order to fund its global representation

5

320008-4

of Paul, Judicial Watch would use Paul's information, including that discovered in the lawsuits, to solicit funds from its donors. As such, Judicial Watch advanced its public interest agenda through championing the individual interests of Paul as whistleblower. Over the years, and in particular in 2004 through 2006, Judicial Watch's fundraising campaign featuring its global representation of Paul was hugely successful, delivering, on information and belief, millions of dollars of donations to Judicial Watch and tens of thousands of new donors.

15.    On March 30, 2001 (and as amended on April 23, 2001), Paul and Judicial Watch signed a legal representation agreement (the "Agreement"). A true and correct copy of the Agreement, as amended on April 23, 2001 is attached hereto as Exhibit "A."

16.    Pursuant to the Agreement, Judicial Watch agreed "to provide legal representation to the Client for alleged securities and related violations of law, since this representation is in the public interest due to its relationship to illegal conduct to high government officials. Civil litigation concerning this may also be pursued." *See Agreement*, Ex. A ¶ 1.

17.    In the Agreement, Judicial Watch agreed to fund all of Paul's attorneys' fees and expenses incurred in defending, prosecuting lawsuits or regarding any other legal action taken on behalf of Paul. Instead, Judicial Watch arranged for payment of those legal fees and costs in connection with the legal representation of Paul by establishing a fund to support the Judicial Watch efforts on behalf of Paul raised by the charitable donations of its donors. The Agreement further provided that Judicial Watch "has been authorized to obtain such publicity for Client [Paul] as may serve the Client and the public interest..." *See Agreement*, Ex. A ¶ 4.

18.    In or about June 2001, Judicial Watch filed a civil action on Paul's behalf against former president William Jefferson Clinton, Senator Hillary Rodham Clinton, Hillary Rodham Clinton for U.S. Senate, New York Senate 2000, and David Rosen in the California Superior Court,

6

Los Angeles County, captioned *Peter F. Paul v. William Jefferson Clinton,* Case No. BC252654 ("Clinton I") for business frauds that included violations of campaign fundraising laws.

19.     In or about June 2001, an indictment of Paul and two other Defendants for violations of SEC regulations was unsealed in the Eastern District of New York, captioned *United States v. Paul, et al.,* Case Number 01-cr-00636-LDW.  In October of 2001, a second indictment of Paul was handed-up in the Central District of California, captioned *United States v. Paul,* Case Number 01-cr-01081-AHM-ALL.

20.     In July 2001, Judicial Watch filed a complaint with the FEC on Paul's behalf alleging wrong doing and corrupt fundraising practices by, *inter alia,* Senator Clinton.  ("FEC Complaint"). Judicial Watch was not a party to the FEC Complaint.

21.     At the time the indictments were filed and unsealed, Paul was living in his home in Brazil.  Because of the indictments, Paul remained there and attempted to fight his extradition. Pursuant to the Agreement, Judicial Watch undertook Paul's defense and retained outside criminal counsel.

22.     In August 2001, Paul, and then later in December 2001, Paul and Judicial Watch both as plaintiff and counsel, filed a civil action against the FEC based on its failure to timely investigate, and resolve the FEC Complaint.  This action was captioned, *Judicial Watch, Inc., et al v. FEC,* Docket 01-cv-02527-RJL.  The Complaint was sworn to by Paul based on his involvement with the fundraiser in 2000 for the benefit of Hillary Rodham Clinton.

23.     In the meantime, Judicial Watch aggressively solicited donations from its donors specifically for funds to support the legal representation of Paul.  Indeed, Defendants continue to solicit donations on the back of Paul's whistle-blowing activities.  *See* Solicitation by Judicial Watch dated in 2005, attached hereto as Exhibit "B."

7

24.    In March 2002, Franklin F. Urteaga filed suit against Paul and his wife in the California Superior Court, Los Angeles County, captioned *Franklin F. Urteaga v. Peter F. Paul*, Case Number BC270350 and attempted to levy upon assets owned independently by Paul's wife. Judicial Watch initially provided counsel, but in or about late 2003, that attorney that had to be discharged for mismanagement of the case in favor of an attorney, procured by Paul for his wife and over the objections of Fitton and Orfanedes, who ultimately settled the litigation through mediation.

25.    In August 2003, the action that Defendants brought on behalf of Judicial Watch and Paul against the FEC was dismissed on summary judgment.

26.    In September 2003, following twenty five months of detention in Brazil, Paul returned from Brazil on the New York indictment and was held in pre-trial detention in New York. The matter was before Judge Wexler in the Eastern District of New York, and the Defendants initially retained Michael Dowd to represent him. Later, however, Defendant Fitton selected Robert Patrick Sticht ("Sticht") from Beverly Hills, California to oversee Paul's entire legal representation as the agent of the Defendants. Since Sticht not only had no experience at the criminal bar and worked out of his offices in Beverly Hills, Sticht was supposed to only oversee and supervise experienced counsel, who would conduct Paul's actual criminal defense. When Sticht ventured outside of his agreed upon role, serious problems occurred to the detriment of Paul.

27.    Meanwhile, in October 2003, Judicial Watch further trumpeted its association with Paul and refiled the Clinton I action in the Superior Court of California, which had been dismissed on procedural grounds while Paul was in pre-trial detention, captioned *Peter F. Paul v. William Jefferson Clinton*, Case Number BC304174 ("Clinton II"). Clinton II remains pending in the Superior Court of California, Los Angeles.

8

28.    In October 2003, Judicial Watch retained James C. Neville, Esquire to represent Paul and replace Dowd as Paul's local defense counsel in the matter before Judge Wexler.

29.    After discussions with Neville, Paul agreed on the strategy Neville recommended, which was to petition for a Writ of *Habeas Corpus* to finally end the nightmare of three years of pre-trial detention.  However, in February 2004, Judicial Watch, Fitton, and/or Sticht attempted to pressure and coerce Neville into changing that strategy.  When Neville refused to put Judicial Watch's interests over his client's, Defendants discharged Neville over Paul's objections.  Instead, they hired new local counsel that would "play ball" with Judicial Watch interests.  A true copy of the letter from Fitton to Paul dated January 14, 2004 enclosing a letter from Fitton to Neville is attached hereto as Exhibit "C." All the while, Paul languished in pre-trial detention.

30.    In February 2004, Judicial Watch retained another attorney, Boris Orlov, Esquire, from Sticht's Beverly Hills office, and Scott L. Black, Esquire of Kastelanitz and Fink as local counsel to appear for Paul in the criminal action before Judge Wexler.  Over the course of the next months up to and including November 2004, this new defense team, led by Judicial Watch, Fitton and/or Sticht, proceeded to file numerous motions designed to anger the court, but with little hope of success.  These included motions to dismiss the indictment for lack of a speedy trial, for recusal of Judge Wexler, and to dismiss the indictment for outrageous governmental conduct.  When, as expected, the court denied them, appeals were taken, and there was further delay.  None of these actions were designed to or succeeded in securing Paul's release from detention.  They nonetheless assisted Defendants in raising money.

31.    When Paul repeatedly requested to consult with the attorneys, most of whom were based far from the Eastern District of New York, the Defendants informed Paul that the attorneys would visit when it suited their needs, not Paul's.

9

32.     In June 2004, Judicial Watch, on behalf of Paul, filed an Adversary Proceeding Complaint against Aaron Tonken of Beverly Hills to discharge a debt in the U.S. Bankruptcy Court, Central Division of California, captioned *Paul v. Tonkin*, Case Number 04-ap-01982-EC.

33.     In July 2004, Judicial Watch, on behalf of Paul, filed a Notice of Motion and Motion for Return of Seized Property against the United States, captioned *In the Matter of the Search of 18440 Burbank Boulevard, Unit 2206, Tarzana*, CA 91536, Case Number 04-cv-05154-AHM.

34.     Also, in August 2004, Judicial Watch hired Sticht and Orlov to represent Paul in defense of a civil action filed by the Securities and Exchange Commission ("SEC") in the Central District of California, captioned *SEC v. Paul*, Case Number 04-cv-06613-SVW-SS.

35.     By October 2004, Paul had spent more than three years in pre-trial detention without bail (almost 2 years in Brazil before extradition and over one year in New York) as a result of Sticht's actions in representing and controlling Paul's defense on behalf of the Defendants. At that time, Judge Wexler took the extraordinary step of announcing in open court that he was appointing a private attorney to advise Paul. Judge Wexler perceived there to be a conflict between Paul's interests and Judicial Watch's interests and expressed concerns that the attorneys Judicial Watch had appointed may be favoring Judicial Watch's interests to Paul's detriment, especially in connection with a motion to unseal pleadings and documents the attorneys had made under Sticht's direction.

36.     Paul demanded that Judicial Watch, Fitton, Orfanedes and/or Sticht find a way to get him released from custody. Paul identified a new counsel, the law firm of LaRusso and Conway, he believed would obviate the conflict Judge Wexler had discerned and requested that Judicial Watch retain that firm, especially since both partners had agreed to work jointly on his

10

defense. Paul urged Defendants to retain the new attorneys, both of whom were experienced New York based criminal defense attorneys. Paul reasonably believed the new attorneys could succeed in obtaining his release. Further, he was entitled under his representation agreement to competent local criminal counsel familiar with practice in the Eastern District of New York, something which Sticht was not and which the Defendants refused to provide since May 2004. Judicial Watch not only refused, but when Paul borrowed money to retain the attorney himself, Judicial Watch refused to permit Sticht to meet or speak with him. The strategy Conway and his partner contemplated would involve dismissing the counter productive motions Judicial Watch had filed and having Paul offer to plead guilty in the New York case. Defendants rejected this because it conflicted with and/or was not in Judicial Watch's best interests, and disregarded Paul's desires.

37.    Paul then retained LaRusso and Conway on his own, who proceeded to withdraw the previous pre-trial motions and appeals filed by Defendants leading quickly to Paul's release from custody.

38.    Despite the Agreement and various written and oral representations by Judicial Watch, Fitton, Orfanedes and/or Sticht, and as a result of Defendants' disagreement with Paul and Conway as local counsel regarding Conway's efforts to obtain Paul's release from custody, on or about November 18, 2004, Sticht, with the Defendants' support and consent, unilaterally, and without Paul's consent and over his strenuous objections, moved to withdraw their appearances on behalf of Paul in the criminal and related matters captioned *SEC v. Paul*, Case Number 04-cv-06613-SVW-SS, *United States v. Paul, et al*, Case Number 01-cr-00636-LDW, *United States v. Paul*, Case Number 01-cr-01081-AHM-ALL, *In the Matter of the Search of 18440 Burbank Boulevard, Unit 2206, Tarzana, CA 91536*, Case Number 04-cv-05154-AHM.

39.    Paul strenuously objected to Defendants' unilateral withdrawal and demanded that

11

Defendants pay for Conway's legal services on his behalf pursuant to Defendants' agreements with and representations to Paul. Judicial Watch and Fitton categorically refused to pay Conway's legal fees despite the agreements and representations to the contrary. They further failed to provide meaningful access, or return of, key files to Paul or his counsel in connection with the aforesaid criminal matters.

40.     Moreover, Fitton, who is not an attorney, was nonetheless in direct control of Judicial Watch's legal representation activities on behalf of Paul. He provided legal advice of his own to Paul on various matters in connection with the aforesaid criminal matters. Fitton further outrageously represented to Paul that any accommodation to Paul's requests would not be at the expense of compromising Judicial Watch's interests. *See* Letter from Fitton to Paul dated March 2, 2005, attached hereto as Exhibit "D." Fitton also directed attorneys representing Paul, including Dowd, Sticht and others, not to communicate with Paul without copying, or communicating through Fitton, despite various duties to ensure privileges are protected.

41.     Pursuant to a bail hearing in the Eastern District of New York criminal action in which Conway appeared for Paul, Paul was released from custody in January 2005.

42.     Beginning in late February and March 2005, Defendants then sought to coerce Paul into releasing them from any and all claims he might have, in return for payment of the $75,000 in fees to Conway that Defendants were obligated to pay under the representation agreements. Defendants then presented a modified representation agreement to Paul, a copy of which is attached as Exhibit "E". Under that unilaterally proposed modified agreement, Judicial Watch would pay Paul $75,000, Paul would generally release the Defendants and Sticht; Paul would be left on his own in all remaining litigation, except two cases; and Defendants would still be able to use Paul in their fundraising and publicity efforts.

320008-4

43.    Paul refused to sign, and demanded that the Defendants honor their existing agreements with him. Instead, Defendants ignored their promises, and, along with Sticht, filed motions to withdraw from their representations of Paul in the remaining cases, including Clinton II. Thereafter, the Defendants failed and refused to provide counsel to Paul or pay him for counsel and failed to return valuable exhibits and evidence entrusted to Fitton and Judicial Watch for use on his behalf in Paul's cases.

44.    Judicial Watch nonetheless continued to solicit and receive thousands of donations from its donors in support of its legal actions on behalf of Paul. At no time did Defendants advise their donors that they had totally abandoned Paul or their reasons for doing so.

45.    By March 2005, the artificial dispute with Paul that the Defendants manufactured with Paul regarding the aforesaid criminal and civil matters became publicized. A true copy of a New York Times article dated March 15, 2005 is attached hereto as Exhibit "F".

46.    On or about April 7, 2005 Paul refused to grant Defendants, Orfanedes and other Judicial Watch attorneys the rights to withdraw from their legal representation of him in the civil matters. Paul continued to raise objections to the unilateral withdrawal from the criminal matters and Defendants' refusal to pay for Paul's legal defenses in violation of the Agreement and subsequent representations to vigorously pursue Paul's claims to final conclusion of the cases.

47.    Notwithstanding the above, on or about April 11, 2005, Defendants unilaterally and without consent of their client filed an *Ex Parte* Application to Withdraw as Plaintiff's Attorney in Clinton II. A true copy of the Ex Parte Application to Withdraw as Plaintiff's Attorney dated April 11, 2005 is attached hereto as Exhibit "G." In his declaration to the Court, Orfanedes, on behalf of Judicial Watch and its attorneys appearing, falsely stated that he "had not been able to ascertain whether Mr. Paul would consent to or oppose this *ex parte* application…" and that "Judicial Watch

13

has not been able to obtain a definitive answer from Paul…" *See* Ex. "G" (Orfanedes Decl. ¶ 4).

48.    While they were abandoning Paul, Defendants were busy using the information they obtained from Paul for their own purposes. In particular, in May 2005, they caused Judicial Watch to file a complaint with the Senate Ethics committee against Senator Clinton. The allegations in the complaint came entirely from information Paul provided or which was developed in the course of representing Paul. Defendants had no right to use such information for purposes other than representing Paul. Moreover, Defendants failed to consult in any way with Paul regarding the accuracy and completeness of these allegations in this forum. As a result of Defendants' failures in this regard, the Ethics Committee flatly rejected the complaint, which caused further confusion in the public of the origin and nature of Paul's allegations.

49.    The court granted the Defendants motion to withdraw in Clinton II. Thereafter, Judicial Watch refused to honor its representation agreement and pay for any legal counsel for Paul. Paul was left to handle *pro se* claims that Defendants had induced him to bring in the first place against the formidable legal defense mounted by the Clintons. The Defendants' abandonment of Paul in mid-stream left him without funds to hire counsel and to pursue the necessary discovery and pretrial preparation in his cases.

50.    On or about December 29, 2005, the FEC finally ruled on Paul's FEC Complaint and found probable cause existed to believe New York Senate 2000 and Andrew Grossman, in his official capacity as the Clinton campaign treasurer, violated certain federal election laws and regulations and that the FEC accepted a conciliation agreement and payment of a fine to close the matter.

51.    In January 2006, Judicial Watch and Fitton issued a press release intentionally misrepresenting Judicial Watch as having brought the claims against the Clintons in the FEC

14

Complaint, relegating Paul to the status of mere "former client" of Judicial Watch and taking credit

for their (falsely implied) role as the complainant. A copy of the Judicial Watch press release dated

January 6, 2006 is attached hereto as Exhibit "H."

52.    The Defendants' failure to inform Judicial Watch's donors that they had abandoned

Paul, and why, was intended to and did cause confusion among donors who were willing to

contribute to help Paul in his legal actions. This interfered with Paul's ability to raise funds

himself from those and/or other donors. Paul complained of the confusion Defendants were

creating, but Defendants ignored him.

53.    After Defendants' willful and malicious abandonment of Paul in the aforesaid

criminal and civil actions, and because of Defendants' continual and massive fundraising efforts to

support Paul's legal matters and the vast sums reportedly raised, Paul continued to demand that

Defendants pay and provide legal representation as required by the agreements and representations

of Defendants. Moreover, Paul has demanded the return of files, documents and other irreplaceable

evidence and exhibits relating to his cases in light of Defendants' abandonment in order to properly

defend and prosecute the aforesaid matters.

54.    To date, Defendants have failed and/or refused to adequately respond.

### COUNT ONE – BREACH OF CONTRACT

55.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 54 as if

fully set forth herein.

56.    Pursuant to the terms of the agreements, Defendants were to provide legal

representation to Paul for the aforesaid criminal and civil matters. *See Agreement* Ex. "A".

57.    Defendants breached the agreements with Paul to provide legal representation of

Paul when they unilaterally and without consent, and indeed over the objection of Paul, withdrew

in November, 2004 from representing Paul in the aforesaid criminal matters, and subsequently failed and/or refused to pay for legal fees and costs associated with Paul's legal defenses therein in violation of the agreements between the parties.

58. Defendants breached their agreements with Paul when they attempted to coerce Paul into modifying the Agreement to limit their representation and have Paul provide a general release.

59. Defendants further breached the agreements with Paul to provide legal representation of Paul when they unilaterally and without consent, and indeed over the objection of Paul, withdrew in April 2005 from representing Paul in the aforesaid civil matters, and subsequently failed and/or refused to pay for legal fees and costs associated with Paul's prosecution of claims against the Clintons in violation of the agreements between the parties.

60. Defendants further breached the agreements with Paul by thereafter failing to faithfully prosecute and defend Paul's claims despite the agreements to provide for such legal services without precondition, and causing such claims to wither and die for lack of prosecution. As a result of the aforesaid breaches, Paul has been damaged in an amount in excess of $1,000,000 to be determined at trial for, *inter alia*, payment of legal fees and costs, future defense and other litigation costs and fees related to the legal actions by Paul and Judicial Watch as Paul's provider of legal representation.

### COUNT TWO – BREACH OF FIDUCIARY DUTY

61. Plaintiff incorporates by reference the allegations of paragraphs 1 through 60 as if fully set forth herein.

62. By virtue of the representation agreements entered into by the parties, Defendants owed a fiduciary duty to provide faithful, competent and vigorous legal representation to Paul.

16

63.    Defendants breached the fiduciary duty owed to Paul in the provision of faithful, competent and vigorous legal representation to Paul.  Defendants failed to hold their client's interest above their own when, for example, in the Eastern District of New York criminal matter Defendants refused to pursue Paul's immediate goal in late 2003 of release from pre-trial detention because the defense team headed by Judicial Watch and/or Fitton (a non-lawyer) and supervised by Sticht as lead attorney believed such a strategy would be counterproductive to the interests of Judicial Watch.

64.    Defendants further breached their fiduciary duty to Paul by withdrawing unilaterally, without consent and despite the objections of their client, Paul, from the criminal matters in November 2004 and from the civil matters in April 2005.

65.    Defendants further breached their fiduciary duty to Paul by failing and/or refusing to pay for or otherwise provide faithful, competent and vigorous legal representation to Paul in connection with the aforesaid criminal and civil matters after Defendants unilateral and unauthorized abandonment of Paul's litigation and other legal matter despite their fiduciary duties to the contrary and Paul's complete reliance on the Defendants' undertakings.

66.    As a direct and proximate result of the aforesaid breaches, Defendants caused Paul to suffer economic loss, physical and emotional distress and damages, and injuries and losses to his claims, reputation and good will.

67.    As a direct and proximate result of the aforesaid breaches, Paul suffered economic loss, physical and emotional distress and damages, and injuries and losses to his claims, reputation and good will.

### COUNT THREE – VIOLATIONS OF STANDARDS OF PROFESSIONAL CONDUCT

68.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 67 as if

320008-4

fully set forth herein.

69.     Pursuant to the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York, Judicial Watch, Orfanedes and/or Sticht and others are barred from abandoning the legal representation of Paul in connection with the aforesaid criminal and related actions without Paul's express written consent.

70.     Pursuant to the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York, Defendants owe a continuing duty to Paul as a former client to not disadvantage Paul in connection with the legal representations undertaken by Defendants on Paul's behalf.

71.     Despite the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York, Judicial Watch, Orfanedes and/or Sticht and others unilaterally withdrew their legal representation of Paul in connection with the aforesaid criminal and related actions without Paul's express written consent and, indeed, over Paul's express objections.

72.     Further, Defendants failed and/or refused to provide Paul with the return and/or any meaningful access to his case files, key documents and other materials in connection with the withdrawn legal representation in violation of the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York.

73.     Further, Defendants breached the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York by failing to diligently pursue the client's goals and, in particular, by attempting to limit the independence of Neville and Conway in the Eastern District of New York criminal matter.

74.     Defendants further violated the applicable standards of professional conduct

320008-4

governing attorneys in the District of Columbia, the State of California, and the State of New York by subjugating Paul's interests to Judicial Watch's interests by virtue of the aforesaid interference, control and/or direction by Judicial Watch in connection with the aforesaid civil and criminal matters.

75.    Fitton engaged in the unauthorized practice of law by providing legal advice to Paul, and making substantive legal decisions concerning strategy and tactics in the Defendants' legal representation of Paul.  The other Defendants, including Orfanedes, aided and abetted and encouraged Fitton's unauthorized practice of law.

### COUNT FOUR – UNJUST ENRICHMENT

76.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 75 as if fully set forth herein.

77.    At all times relevant hereto, Defendants solicited and accumulated vast sums from its donor base in direct response to Defendants' pleas to said donors to support the litigation and other legal efforts of Judicial Watch on behalf of Paul.

78.    Defendants failed to diligently and competently provide legal representation to Paul, in connection with the aforesaid criminal and civil matters despite their duty to do so.

79.    Defendants unilaterally, without consent and, indeed, over Paul's objections, abandoned the legal representation despite having raised the aforesaid vast sums through the donations of its donors specifically to support Judicial Watch's legal representation provided to Paul.

80.    Defendants failed and/or refused to use appropriate amounts of said funds for such necessary, diligent and competent legal representation, and Defendants unilaterally and without consent, withdrew their legal representation of Paul, leaving Paul without resources to pay the

continuing fees costs and expenses associated with the aforesaid criminal and civil matters.

81.     Paul has demanded that Defendants turn over adequate funds that were raised pursuant to Defendants' efforts to fund Paul's criminal and civil matters, but Defendants have refused and/or otherwise failed to respond.

82.     As such, Defendants are unjustly enriched by retention of the aforesaid funds for the provision of legal representation to Paul, as provided for in the agreements between the parties.

### COUNT FIVE – VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

83.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 82 as if fully set forth herein.

84.     By placing in the U.S. mails and on the Internet letters, newsletters, photos, press releases  and other solicitations that misrepresented that Judicial Watch was championing Paul's interests and providing individual legal representation to Paul in defense of criminal and civil actions, and using these published misrepresentations to raise money for Judicial Watch, Judicial Watch engaged in false designation of origin, false and misleading descriptions, false and misleading representations, false and misleading advertising and other illegal acts of unfair competition which are likely and did cause confusion, mistake, and/or deception and misrepresented the nature, characteristics and qualities of plaintiffs' products, services, and activities in violation of 15 U.S.C. §1125(a)(1)(A) and (B). These illegal acts were perpetrated and occurred both nationally and internationally.

85.     Defendants deliberately misrepresented and falsely advertised that Judicial Watch was raising money to advance Paul's interests and allegations against the Clintons and to provide legal representation in Paul's criminal defense and other civil matters.

86.     Defendants deliberately misrepresented and falsely advertised that Paul's victories

20

against the Clintons were attributable to Judicial Watch after Judicial Watch abandoned Paul in his criminal and other civil matters.

87.    The misuse of Paul's name and likeness when he was unlikely to be aware of the nature of Judicial Watch fundraising efforts allegedly for the benefit of Paul, were calculated to confuse donors into believing that Judicial Watch was soliciting their donations to directly advance Paul's interests, claims and defenses that Judicial Watch was doing so on Paul's behalf.

88.    Paul is a celebrity within the entertainment, and political watchdog and non-profit community.  Paul is widely recognized, both nationally and internationally, as a leading figure in connection with allegations of the Clinton's illegal campaign fundraising.

89.    Judicial Watch, and Fitton as President of Judicial Watch, knew that donors that received the misleading fundraising publications would be confused by the publication and use of Paul's name, likeness and Judicial Watch's role in matters concerning Paul.

90.    Fitton, Orfanedes and Judicial Watch deliberately used Paul's image and name to confuse donors into thinking that Paul was benefiting from donors' donations, when in fact Judicial Watch repeatedly failed to use such funds for the benefit of Paul.

91.    Fitton's, Orfanedes' and Judicial Watch's false portrayal of Paul and their role in Paul's affairs was used to misrepresent the status of Judicial Watch to entice donors to continue giving donations to Judicial Watch.

92.    As a result of the foregoing, plaintiff has been damaged in an amount that will be ascertained at trial. In addition to plaintiff's actual damages, he is entitled to receive Defendants' profits pursuant to 15 U.S.C. § 1117(a). These damages and profits should be enhanced to achieve justice pursuant to 15 U.S.C. § 1117(a) and/or trebled pursuant to 15 U.S.C. § 1117(b) because Defendants conduct was willful.

21

320008-4

93.     The activities of Defendants have caused and will cause irreparable harm to Plaintiff's personal and business relationships and good will for which he has no adequate remedy at law.

### COUNT SIX – APPROPRIATION OF NAME AND LIKENESS

94.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 93 as if fully set forth herein.

95.     Defendants Judicial Watch, Fitton and/or Orfanedes unlawfully and willfully copied, used  and/or otherwise misappropriated all or part of Paul's files, documents and other irreplaceable evidence and exhibits relating to his cases, including Paul's likeness and name for their own use and benefit.

96.     Upon information and belief, Defendants continue to misappropriate Paul's files, documents and other irreplaceable evidence and exhibits relating to his cases, including Paul's likeness and name for their own use and benefit, thereby confusing the public and causing Paul to suffer irreparable damages and lost access to resources and/or benefits.

320008-4

**WHEREFORE**, Plaintiff requests the Court grant judgment in their favor and:

A.    **On Counts One Two Three and Four** award Peter F. Paul a sum in excess of one million dollars ($1,000,000) plus interest, against the Defendants jointly and severally;

B.    **On Count Five** award Peter F. Paul a sum in excess of $75,000 plus interest, a reasonable royalty, and an amount of punitive damages to be determined at trial against the Defendants, jointly and severally;

C.    **On Count Six** enjoin Defendants, Judicial Watch, Fitton and Orfanedes during the pendency of this action and permanently thereafter from appropriating, using or otherwise distributing Paul's photographs, images and name and likeness and to anyone; and award Peter F. Paul damages against Defendants, jointly and severally, in an appropriate amount as determined at trial, plus interest; require Defendants to account for and pay to Paul all gains and income/profits that they have enjoyed at Paul's expense as a result of their actions;

D.    Award Plaintiff the costs of the action, including attorneys' fees; and

320008-4

*E.*       Award Plaintiff such further relief as is just and equitable.

### *JURY TRIAL DEMANDED*

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: _Daniel J. Dugan_

Daniel J. Dugan, Esquire
1635 Market Street, 7th floor
Philadelphia, PA  19103
215.241.8872
215.241.8844 *fax*
email:  ddugan@lawsgr.com
*Attorneys for Plaintiff Peter F. Paul*

February 5, 2007


Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jeffrey H. Schervone, Esquire
1000 Lenola Road, Bldg. 1, Suite 202
Maple Shade, NJ  08052
856.778.8100
856.772.5344 *fax*
email: *jschervone@lawsgr.com*

24

320008-4

# EXHIBIT A

<u>CONFIDENTIAL</u>

### <u>FIRST MODIFICATION TO LEGAL REPRESENTATION AGREEMENT</u>

WHEREAS Mr. Peter F. Paul (hereinafter "the Client") undertakes to retain the public interest legal services of Judicial Watch, Inc. (hereinafter "JW"), and JW undertakes to represent the Client;

IT IS HEREBY AGREED this 21st day of April, 2001 as follows:

1.       The Client has previously authorized JW to evaluate potential legal claims and defenses available to the Client and to pursue mutually agreed-upon legal action to protect the Client's rights and interests. This agreement initially ran only for the period of Client's consultation and discussion with the U.S. Attorney's office in New Jersey and other appropriate law enforcement authorities. Now, upon the conclusion of consultation and discussion, JW agrees to provide legal representation to the Client for alleged securities and related violations of law, since this representation is in the public interest due to its relationship to illegal conduct by high government officials. Civil litigation concerning this may also be pursued.

2.       JW shall not invoice the Client for any attorneys fees or expenses incurred in defending the Client, prosecuting a lawsuit or any other legal action taken on behalf of the Client. Rather, only in the event that the Client receives an award of attorneys' fees at the conclusion of any lawsuit or other mutually agreed-upon legal action, JW shall be entitled to receive any such court-awarded attorneys' fees as a donation for its public interest legal services. JW shall also be entitled

Page 1 of 3

<u>CONFIDENTIAL</u>

to reimbursement, out of any recovery by the Client, of any and all costs and expenses incurred by JW in prosecuting any lawsuit or any other mutually-agreed upon legal action. Should the Client receive an award of costs, the award shall be credited to the costs and expenses reimbursable to JW.

3.    Both the Client and JW shall keep any and all communications between them in the strictest confidence. The Client shall not undertake any public appearance or other communication or contact with the media concerning the Client's legal defense, any lawsuit or any other legal action by JW on his behalf, without advising and consulting with JW in advance, within a reasonable period of time. Likewise, JW shall advise and consult with the Client in advance and obtain Client's approval concerning any and all public appearances or other communications or contacts JW may have with the media concerning the Client's legal defense, any lawsuit, or any other mutually agreed-upon legal action undertaken by JW on his behalf.

4.    JW has been authorized to obtain such publicity for Client as may serve the Client and the public interest, including but not limited to an appearance on "60 Minutes."

5.    This legal representation agreement may be modified only on the written consent of the parties. In the event that this legal representation agreement must be modified to reflect any other mutually agreed-upon legal action, the Client shall not unreasonably withhold consent to any such modification.

JUDICIAL WATCH, INC.                              THE CLIENT

By: _____              By: _____
    Larry Klayman                                    Peter F. Paul
    Chairman and General Counsel

Page 2 of 3

MAR-16-2006 08:51AM FROM-PITA                    3056708866        T-287  P.008/008  F-335

CONFIDENTIAL

By:

Thomas J. Fitton
President

# EXHIBIT B



**Judicial Watch**
*Because no one,*
*is above the law*

Thomas Fitton
President

**Re: Holding Hillary Clinton Accountable!**

Dear Friend:

I want to share with you some very important news about one of the biggest political scandals in our nation.

And I also want to ask you to help see that justice is done, and that Senator Hillary Clinton (D-New York) is held accountable for her crimes!

In January, the United States Department of Justice "unsealed" a federal grand jury indictment of David Rosen, the finance director of Hillary Clinton's 2000 Senate campaign. (A portion of the actual first page of the indictment is printed on your envelope. "Senator A" is Hillary Clinton!)

In May, a federal jury in Los Angeles found Mr. Rosen "not guilty" of charges that he intentionally covered up the costs of a massive fundraising event for Hillary's campaign, "The Hollywood Tribute to William Jefferson Clinton." This verdict does not mean Mr. Rosen is "innocent." It merely means the government made a political calculation, and decided not to aggressively pursue the case against Mr. Rosen.

Sadly, instead of looking at who was really responsible for the conspiracy to evade the campaign laws – Bill and Hillary Clinton – the Justice Department instead chose to indict the lowest-level participant in the scheme, Mr. Rosen. Having witnessed in person a significant portion of the trial, I am not entirely surprised that a jury of his peers failed to convict him, despite the strong evidence of wrongdoing that was presented during the trial. No one likes making someone like Mr. Rosen a fall guy for his powerful employers – especially when it was clear the government was going out of its way NOT to implicate the Clintons!

Here's what I think you, and the rest of America, should take away from Mr. Rosen's indictment and trial.

1) The indictment and the facts presented at the trial should spell the beginning of the end of Bill and Hillary Clinton's immunity from the consequences of their criminal activity, as well as an end to their insatiable political ambitions.

(over, please)

Page two

2) This indictment, and the facts it put on the public record, never would have happened without the unceasing efforts of Judicial Watch, America's premier watchdog group that investigates and prosecutes government and political corruption, on behalf of our former client, Peter Paul, and our nonstop efforts to force the Justice Department to investigate the crimes charged in the indictment.

The four counts of Mr. Rosen's indictment all related to the August 2000 "Hollywood Tribute" organized and funded on behalf of Hillary Clinton's campaign for the U.S. Senate.

Our former client, Peter Paul, contributed nearly $2 million to this event. Mr. Rosen, Hillary Clinton and her Senate campaign not only failed to report the full extent of Mr. Paul's contribution, but specifically and intentionally misstated it and reported to the Federal Election Commission (FEC) that Mr. Paul only contributed $2,000 to Hillary's campaign!

These facts are not in dispute! They are part of Mr. Rosen's trial record.

Despite the politically-driven weak court case presented by the government against Mr. Rosen, the chickens are clearly coming home to roost for the Clintons!

1) The FEC is pursuing its own investigation into the "Hollywood Tribute."

2) And Judicial Watch is demanding that the U.S. Senate Select Committee on Ethics open an investigation into Sen. Hillary Clinton's own role in this massive violation of federal campaign law.

Let me assure you: the charges against Mr. Rosen and the facts laid out at his trial are serious enough to cast a deep cloud over the legitimacy of Hillary Clinton's election to the U.S. Senate in 2000, and we intend to see that she is held responsible for her actions by that body!

We are also committed to getting the facts out that will go beyond the serious fundraising violations cited in the Rosen indictment, and expose the entire Clintonite plan to not only violate federal campaign laws, but also to "sell" the Presidency, and presidential pardons, for financial gain!

*I am counting on you to help us force the Senate Select Ethics Committee to take action! I will tell you how in just a moment.*

As I said earlier, the Rosen indictment never would have happened if Judicial Watch had not relentlessly persisted in working with the Justice Department, and providing them with critical evidence regarding the criminal activities of Hillary Clinton and her campaign. *The Rosen indictment has Judicial Watch written all over it!*

Judicial Watch was founded in 1994, just as the full extent of the criminality of the Clinton White House was becoming evident.

(next page, please)

Page three

Over the past eleven years, Judicial Watch has played a critical role in exposing scandals such as "China-gate," "E-mailgate," and the tawdry history of the Clinton political machine trashing Bill Clinton's many female victims. I encourage you to go to our Internet site, www.JudicialWatch.org, to learn more about us.

Although we are proudly conservative, Judicial Watch is not partisan. We have investigated, exposed and prosecuted ethical violations and crimes by leading politicians of both the Republican and Democratic parties. As our mission emphatically states, "no one is above the law." *We are committed to the rule of law, and to open and transparent government!*

Judicial Watch has been working unceasingly on the conspiracy behind the "Hollywood Tribute" case since 2001. Even though the politically well-connected in Washington wanted to "move on," and ignore Hillary Clinton's flagrant violation of federal campaign law, Judicial Watch dug in, and continued to fight to get the facts out about this corrupt scheme.

Because of national press attention given to the Rosen criminal trial, the heat has been turned up on the Clintons.

And that means the pressure has increased on Judicial Watch!

Today, I have a very special request to make of you.

**Will you sign the enclosed Citizen Petition to Senator George Voinovich (R-Ohio), Chairman of the Senate Select Ethics Committee, demanding that his committee open an investigation into Hillary Clinton's role in this attempt to violate and evade federal campaign laws?**

Ever since we began working on this case, we have faced skeptics in politics and in the liberal media.

They derided our attempts to hold Bill and Hillary Clinton accountable for their crimes because the political culture of Washington, D.C. does unfortunately believe that politicians, especially the most powerful and influential, are exempt from the laws and rules the rest of us live by every day.

But thanks to our hundreds of thousands of supporters around the country, we have persevered.

And with the indictment and trial of Hillary's top campaign aide, a lot of the skeptics are suddenly not so skeptical about what we have been saying from the start – that Hillary Clinton was elected to the U.S. Senate under a serious criminal and ethical cloud! With Hillary the clear front-runner for her party's presidential nomination in 2008, even the liberal media is now following this story with interest!

(over, please)

Page four

Let me stress that Judicial Watch does not endorse or oppose candidates for public office. But we believe all citizens, particularly politicians, should be held accountable under the law!

I am asking you to sign the enclosed Citizen Petition because Judicial Watch needs your personal help and involvement to put pressure on the Senate Select Ethics Committee, and go on a full-scale media offensive against the Clintons!

Your support will not only help force the Senate Select Ethics Committee to do its duty, but will also help in the court of public opinion. You and I have to educate the American people about the criminal misdeeds of the Clintons. We need to remind our fellow citizens that the Clinton scandals are not issues of the past, but are continuing to this day.

And I have another, equally important request to make of you today.

With your "Citizen Petition," will you also enclose a special tax-deductible contribution for $25, $35 or even $50 to Judicial Watch?

You see, Judicial Watch has already spent well over $1 million in our investigation and litigation over the "Hollywood Tribute." Taking our case to the Senate Select Ethics Committee and pursuing our media offensive will run that number even higher!

And our work on the "Hollywood Tribute" is not all we are doing! Our Internet site gives you a very good idea about the scope of the work we are undertaking to expose public corruption, and to make government open and transparent.

In addition:

- This past winter we were in court in Miami on behalf of our clients who were violently and illegally attacked by government agents during the Clinton-era raid to snatch Elian Gonzalez back for Fidel Castro;

- This spring we appeared before the Vermont Supreme Court, defending a lower court victory in our lawsuit against Democratic National Chairman, and former Vermont Governor, Howard Dean, who has attempted to hide 145 boxes of his public gubernatorial papers from public scrutiny;

- And now we are preparing for a scheduled trial in California on behalf of our client, conservative African-American activist Rev. Jesse Lee Peterson. Rev. Peterson is suing Jesse Jackson and a number of Jackson associates for their vicious physical and verbal assault when our client dared to publicly challenge one of Jackson's fraudulent corporate shakedown schemes.

That's why I am so hopeful you will back up your signed Citizen Petition with a generous tax-deductible contribution today. Your contribution of $25 or $35 will be

(next page, please)

Page five

gratefully received; but the cost and expenses of our many investigations and lawsuits means that we also need to receive contributions for $100, $250 and more.

You see, Judicial Watch is a non-profit organization. We do not charge our clients fees for our representation. We rely entirely on the voluntary contributions of Americans who share our commitment to the rule of law, open and transparent government, and to the principle that "no one is above the law!"

Whatever level of support you can give us will be an enormous help as we press forward in holding politicians, government officials, judges and bureaucrats accountable under the law.

Over the past four years, Judicial Watch has made incredible progress in getting to the facts behind Hillary Clinton's violation of federal campaign law in pursuit of her political ambitions. We are responsible for a criminal indictment of her chief fund-raiser... and now we intend to hold Senator Clinton, in the Senate itself, accountable for her role in this scandal!

I deeply hope you will find Judicial Watch and our work worthy of your support. And I want to thank you, in advance, for your signed Citizen Petition to Senator Voinovich and your financial support!

Sincerely,

Thomas Fitton
President

P.S. We are reaching out to concerned Americans like you at this time because it is very difficult to motivate Senators to initiate investigative proceedings against other members of the Senate "club." But the undisputed facts of this case, which go to the corrupt process by which Hillary Clinton won election to the Senate in the first place, absolutely demand an Ethics Committee investigation! Won't you help us finally hold Hillary Clinton accountable for her transgressions? We will carry this fight forward right into 2006 and Hillary's re-election campaign, if necessary! It would be a great help to us if you could return your signed Citizen Petition, and your most generous tax-deductible contribution, back to us by the end of the month.

UNITED STATES ... .P COURT

FOR THE CENTRAL DISTR.... OF CALIFORNIA

UNITED STATES OF AMERICA,  )
            Plaintiff,  )
      v.  )
DAVID F. ROSEN,  )
            Defendant.  )

CR 03-1219

I N D I C T M E N T
[18 U.S.C. § 1001: False
Statements; 18 U.S.C. § 2
Causing an Act to be Done
and Aiding and Abetting]

The Grand Jury charges:

[18 U.S.C. §§ 1001 and 2]

INTRODUCTORY ALLEGATIONS

At all times material to this indictment:

1. Defendant DAVID F. ROSEN was the National Finance Director for the 2000 United States Senate campaign of a candidate for the United States Senate ("Senator A"), and an experienced political fundraiser who had been associated with several other campaigns for federal office.



Carrier



# Judicial Watch
*...because no one is above...*

# New Member's Reply
# to Thomas Fitton

FROM:

llulllll...llllllll...llllllll...lll.llll.lllll...llll

020998021  P05748RN

Dear Tom:

Count me in! I agree with you completely – No one is above the law! That standard is one to which all Americans, including Hillary Clinton, must be held.

☐ I authorize you to deliver my signed Citizen Petition to Senator George Voinovich at the offices of the U.S. Senate Select Committee on Ethics.

☐ And I want to help Judicial Watch today. I understand that my tax-deductible contribution will help ensure that Hillary Clinton, and her disgraced husband Bill, will be held accountable to the law and to the American people. I understand my contribution will be used by Judicial Watch to advance its general litigation and investigations, and to educate the public about the dangers posed to our democracy by public corruption.

☐ My tax-deductible contribution, payable to Judicial Watch, is enclosed in the amount of:

☐ $25*  ☐ $35  ☐ $50  ☐ $100  ☐ $250  ☐ $500  ☐ $1,000  ☐ Other $_____

*Individuals who contribute at least $25 will receive Judicial Watch's monthly, 16-page newsletter, "The Judicial Watch Verdict."*

*My check is made payable to Judicial Watch. See reverse to pay by credit card.*

Judicial Watch is a 501(c)(3) nonprofit organization. Your gift is very much appreciated and fully deductible as a charitable contribution.

501 School Street, SW • Washington, DC 20024

(Please do not detach; Judicial Watch staff will perforate prior to delivery.)

## United States Senate Select Committee on Ethics

Dear Senator Voinovich:

I hereby call upon you to immediately open an Ethics Committee investigation into the personal role played by Senator Hillary Clinton (D-NY) in an illegal $5000 campaign fundraising event known as the "Hollywood Tribute to William Jefferson Clinton," held in Los Angeles on August 12, 2000.

I make this request because only after a federal grand jury indictment was handed down against David Rosen, Sen. Clinton's campaign finance director, for his role in this massive evasion of federal election law which resulted in the under-reporting of event expenses and contributions. Although Mr. Rosen was not convicted in the charges against him, the trial record clearly implicated Sen. Clinton in an unquestioned violation of federal campaign law. The organizer of the event, Peter Paul, has publicly accused Sen. Clinton and her husband of reaching a secret agreement to reimburse him in his business dealings in exchange for his role in raising millions of dollars for Sen. Clinton's campaign. At the time, Sen. Clinton's husband was the President of the United States.

Senator, the indictment of David Rosen and the facts disclosed at his trial casts a shadow over the legitimacy of Hillary Clinton's membership in the U.S. Senate, that, in turn, casts a shadow over the Senate itself. I call upon you to do your duty to the Senate and to the American people by undertaking an investigation that will, once and for all, put on the public record all the facts in this matter.

Validating Signature X _____    Date _____

# EXHIBIT C



**Judicial Watch** ™
*Because no one
is above the law*

January 14, 2004

Mr. Peter F. Paul
c/o United States Department of Justice
Federal Bureau of Prisons
Metropolitan Detention Center – Brooklyn
80 29th Street
Brooklyn, NY 11232

Dear Peter:

I hope you are holding up well under the trying conditions there in Brooklyn.

There is no crisis on your defense team. As you can see from the enclosed letter, we believe that Jim Neville has behaved inappropriately and therefore we simply cannot work with him anymore. Robert Sticht is making arrangements for a high-quality defense firm in New York to replace him and will continue to try to set up a bail hearing for you as soon as the judge is available.

It is our position that Jim Neville should not be performing any work on your behalf, as it may conflict with the work being done by your defense team led by Robert Sticht. Our commitment to your criminal defense has not waned, but it will not include Jim Neville. I will not expend any more time or money on this issue and I suggest you just focus on working with Robert.

Please be assured of the commitment of resources by Judicial Watch to both your criminal and civil cases. Judicial Watch has already provided you with, among other legal services, an extradition defense and a bail application – next up is the bail hearing. In the meantime, Sticht's experts and Judicial Watch are going through the thousands of pages of material produced by the government. We are committed to the pre-trial motions, pre-trial discovery and other legal requirements for your defense before trial. Of course, there will then be the huge expense of the trial. If you are convicted, we are prepared to provide representation for you in post-trial proceedings, including sentencing and appropriate appeals.

Paul will visit you when he feels it is necessary to consult with you on the legal and factual matters related to your civil matter. Robert will do the same with respect to your criminal case – you will get your time with Robert when he thinks it is the right

time, not when you think it is the right time.  A visit with you is costly in terms of time, money, and effort which otherwise may be more wisely spent on doing important legal work for you.  You simply will have to trust your lawyers' professional judgments as to when visits with you are warranted.

Judicial Watch has agreed to provide you with a criminal defense.  If you do not wish to make use of the criminal defense for which we are paying, then you are free to find and pay for other counsel.

Thank you.

Yours truly,

Thomas Fitton
President

cc:    Robert Sticht





## Judicial Watch™

*Because no one
is above the law!*

VIA FACSIMILE (516) 883-4954

January 14, 2004

Mr. James C. Neville
Attorney at Law
14 Vanderventer Avenue, Suite 115
PO Box 1711
Port Washington, NY 11050

Dear Jim:

This letter is in response to your various inappropriate emails and voice messages over the past two days. You were hired by Judicial Watch to serve as local counsel in the Peter Paul criminal matter and were tasked with the discreet jobs to develop and argue a bail application for Peter Paul and to develop a discovery motion for him. It was made clear to you that you were not the lead counsel and that Robert Sticht, working with Judicial Watch, was lead criminal defense counsel. You agreed to be on our team under these conditions.

Yet, you have consistently ignored instructions from Judicial Watch and Peter's lead criminal defense attorney on various matters and have admitted to sending a letter to the court without our authorization because you knew that Robert Sticht (and Judicial Watch) would not have approved it.

And then you send a categorically false email implying Judicial Watch and Robert Sticht are causing you to fail to comply with the Code of Professional Responsibility, evidently because you did not receive authorization to file a *habeas corpus* petition that had been duly considered by the defense team and rejected as counterproductive at best.

Jim, I do not know where your head is at. You seem to have chosen to respond to our concerns about your bill with outrageous and false accusations. You are harming Peter's defense by distracting his team with emotional outbursts and false accusations of impropriety.

To be clear, you will not be paid for any additional work you choose to unilaterally perform on Peter's behalf. If you do continue to represent Peter on the case, we believe it would be contrary to his legal interests. He already has an experienced and highly competent defense team in place and actions you perform may be at odds with the

02/05/2005  03:00    2024495555              EJF                        PAGE  05/19

defense team's strategy.  As you will no longer be privy to the defense team's strategy and information about its contacts with the court and prosecutors, any legal actions you decide to unilaterally undertake for Peter could have severely detrimental consequences for him.  Please return all files, pleadings, and correspondence from Peter's case to Judicial Watch's offices immediately.

Thank you for prompt attention to these matters.

Sincerely,

Thomas Fitton
President


cc:    Peter Paul
       Robert Sticht

# EXHIBIT D

Yahoo! Mail - orfanedes@yahoo.com                                    Page 1 of 3

**YAHOO!** MAIL                                          Print - Close Window

From:    "Tom Fitton" <tfitton@judicialwatch.org>

To:      peterfpaul@juno.com

Subject: Response to your emails of 2/28

Date:    Wed, 2 Mar 2005 17:38:19 -0500

Peter:

This is in response to your e-mail of 02/28/05.  You apparently sent us two,
separate but substantially similar e-mails at different times on 2/28, at
approximately 3:30 p.m. and 8:10 p.m.  I will address your second e-mail, because
it appears to encompass the entire, earlier e-mail.

Before addressing the substance of the e-mail, however, I noticed that you cc-ed
Chris
Belland and Joe Conway on the second e-mail.  As you know, the draft Second,
Modified Legal Representation Agreement and General Release I e-mailed to you on
or about 2/22 was
sent as part of our continuing efforts to resolve the issues between you and
Judicial Watch ("JW").  It certainly was not our expectation that you would be
sharing our settlement offer with third parties.  Obviously, we have no problem
with your consulting with an attorney with regard to the draft agreement, and to
the extent you are seeking Joe Conway's legal advice on the draft agreement, that
is your prerogative.  However, Chris is not an attorney, and, other than counsel,
we expect you will keep all our settlement discussions confidential and not
disclose them in whole or in part to anyone other than your attorneys.
Maintaining the confidentiality of any agreement we might reach is one of the
terms of our draft agreement.

For the record, we disagree generally with your characterization of our
relationship and the events that have transpired over the four years the
relationship has existed, including our recent, 2-day meeting in Washington, DC
and our efforts to resolve past issues and move forward.  For the sake of brevity,
I will address only some of what I believe are the most inaccurate
characterizations contained in
your e-mail.

You assert in the first paragraph that our proposed settlement "did not conform"
to your request that JW pay the $75,000 you requested to Joe Conway.  While we
have offered to pay the full $75,000 you asked for, we purposefully structured the
payment to be made to you, rather than Joe Conway to make clear that you can make
whatever use of the settlement money you deem appropriate.  We felt this was
necessary because of the issues that have arisen in the past -- expressed by the
prosecutor and Judge Wexler -- about our paying for your legal defense.  While we
do not believe, nor to our knowledge have you ever asserted, that our paying for
your criminal defense impacted the independence of the criminal defense team, we
felt the best way to avoid any such issue in the future is to pay the settlement
money to you directly.

You state in the second paragraph that you previously advised us you must make a
$15,000 payment to Joe Conway this week in order to continue Joe's representation
of you at a 3/8 plea hearing.  This week is the first that we have heard of a
timetable for any such
payment or its connection to a plea hearing on 3/8.  We will endeavor to
accommodate your timetable, if possible, but not at the expense of compromising
JW's interests.

Yahoo! Mail - orfanedes@yahoo.com                                          Page 2 of 3

With respect to the fourth paragraph, we have been offering for several months to
ship all materials associated with your criminal defense to Joe Conway.  In fact,
in my last conversation with Joe Conway several weeks ago, I offered to send him
all these materials
again, and he asked me to hold off on doing so until I heard from him.  He
indicated that he did not have space available for the volume of materials at
issue.

You also state in the fourth paragraph that you were "unable to locate any of the
work product that is critical for [your] imminent allocution . . . ."  This is
categorically false, as I personally went through these materials with you when
you were here at JW's office in Washington recently.  As you will recall, the
materials prepared by the forensic
team were indexed, tabbed, and placed in a thick binder.  We had a copy of this
binder made for you to take with you when you left.  Frankly, we don't know
whether you took this copy with you or not, but it certainly was readily available
to you, as were all the other documents and materials regarding your case.

In fact, Paul went through numerous boxes of documents and materials with you so
that you would understand what these documents and materials consisted of and how
they were arranged.  The documents and materials were carefully and neatly
organized in one of our fifth floor conference areas.  All of the documents
produced to us by the government were indexed and organized by bates stamp
number.  We gave you unfettered access to all documents and materials regarding
your case for as long as you desired.  We provided you an office and
a computer to review various CD's and diskettes, and Paul and other JW staff were
readily available to you at all times to provide whatever assistance you needed
and to answer any questions you had.  Your assertion that "all of the requests
[you] made regarding [our] preparation for [your] first ever visit . . . was (sic)
ignored" is completely false.  In this regard, your assertion in the sixth
paragraph that we "casual[ly] disregard[ed] the requests you made about making
documents and materials available to you is likewise is completely false.

You also assert in the fourth paragraph that videotapes "were not readily
locatable."  Multiple
sets of the videotapes we have regarding your case were neatly organized and
clearly labeled in a large banker's box, and you were given ready access to these
tapes.  Your statement that this relatively few number of tapes (of which we have
multiple copies) have not
been inventoried is irrelevant, as, again, all of these tapes are neatly organized
and clearly labeled in a single box.

While I see no need to revisit here our respective positions on your termination
of Robert Sticht and the entire criminal defense team we had been providing you,
and were willing to continue to provide to you, your assertion that JW is "holding
hostage" monies for your criminal defense is false as well.  We have a dispute.
We are attempting to resolve that dispute in a timely manner.  We made you a good
faith settlement offer that represented the entire amount you asked for.  All we
asked in return was for a clarification and redefinition of our relationship going
forward, an explicit statement that we have no further obligation to you with
respect to your criminal defense, and a general release for the vague and
undefined threats of litigation you have made against JW and its former
employees.  We believe that, for a variety of reasons, a general release is
necessary because we cannot continue to represent you if you are threatening to
embroil us in litigation.  We are not holding hostage any monies due you, nor are
we trying to take advantage of your difficult circumstances or "coerce" you in any
way.

If you truly have an immediate need, I suggest it would be a more efficient use of

whatever time is available if you would refrain from making false accusations
against us, to which we must respond.  Such false accusations only make us further
question whether we can or should continue in our relationship with you.

We look forward to receiving a revised draft of the settlement agreement we sent
you, showing all changes that you desire to be made.

Tom Fitton and Paul Orfanedes
Judicial Watch

# EXHIBIT E

## SECOND, MODIFIED LEGAL REPRESENTATION AGREEMENT AND GENERAL RELEASE

This Second, Modified Legal Representation Agreement and General Release ("Agreement and Release") is made this ___ day of February 2005, by and between Judicial Watch, Inc. ("Judicial Watch) and Peter F. Paul ("Paul"). Judicial Watch and Paul are collectively referred to herein as the "parties."

### RECITALS

WHEREAS, Judicial Watch and Paul entered into a Legal Representation Agreement on or about March 20, 2001 and subsequently modified that agreement on or about April 23, 2001;

WHEREAS, pursuant to the terms of the Legal Representation Agreement, as modified on or about April 23, 2001, Judicial Watch agreed to provide legal representation to Paul in connection with certain alleged violations of securities laws and other alleged criminal violations and related matters, as such representation was in the public interest because the alleged violations and related matters also involved allegations of illegal conduct by certain high level officials and operatives of the federal government;

WHEREAS, pursuant to the terms of the Legal Representation Agreement, as modified on or about April 23, 2001, Judicial Watch also agreed to provide legal representation to Paul in connection with certain civil and bankruptcy law matters, as such representation was in the public interest because these matters also involved allegations of illegal conduct by certain high level officials and operatives of the federal government;

WHEREAS, pursuant to the terms of the Legal Representation Agreement, as modified on or about April 23, 2001, Judicial Watch has provided legal representation to Paul in connection with the above-referenced, alleged violations of securities laws and other alleged

criminal violations and related matters, including but not limited to the matters captioned *U.S. v. Peter F. Paul, et al.*, Case No. 01-CR-636 (LDW) (E.D.N.Y.), *U.S. v. Peter F. Paul, et al.*, Case No.CR01-1081-AHM (C.D. Calif.), *In the Matter of the Search of 18440 Burbank Boulevard, Unit 2206, Tarzana, CA 91536*, Case No. CV04-5154-AHM (C.D. Calif.), *Securities and Exchange Commission v. Peter F. Paul, et al.*, Case No. CV04-6613-SVW (C.D. Calif.), and related appeals;

WHEREAS, pursuant to the terms of the Legal Representation Agreement, as modified on or about April 23, 2001, Judicial Watch also has provided legal representation to Paul in connection with the above-referenced civil and bankruptcy law matters, including but not limited to the matters captioned *Peter F. Paul v. Clinton, et al.*, Case No. BC 304174 (Los Angeles Co. Sup. Ct.), *Peter F. Paul v. Aaron Tonken*, Adversary Case No. AD 04-01982 (Bankr. C.D. Calif.), *Peter F. Paul v. Clinton, et al.*, Case No. BC 252654 (Los Angeles Co. Sup. Ct.), *Franklin F. Urteaga v. Peter F. Paul*, Case No. BS 070802 (Los Angeles Co. Sup. Ct.), *Judicial Watch, et al. v. Federal Election Commission*, Case No. 01-CV-2527 (RJL) (D. District of Columbia), and related appeals.

WHEREAS, Paul desires to retain legal representation, other than Judicial Watch, in connection with the above-referenced, alleged violations of securities laws and other alleged criminal violations and related matters, and has retained such other counsel;

WHEREAS, Paul also desires to have Judicial Watch continue to provide legal representation to him in connection with the on-going civil and bankruptcy law matters captioned *Peter F. Paul v. Clinton, et al.*, Case No. BC 304174 (Los Angeles Co. Sup. Ct.) and *Peter F. Paul v. Aaron Tonken*, Adversary Case No. AD 04-01982 (Bankr. C.D. Calif.), and related appeals;

WHEREAS, the parties desire to further define the terms, conditions, and scope of their ongoing relationship;

WHEREAS, the parties also desire to settle and compromise, as more fully set forth herein, any and all claims, causes of action, and liability, known or unknown, from the beginning of time until the execution of this Agreement and Release, without such settlement constituting any admission of liability, wrongdoing or violation of any federal, state or local law or regulation by any party; and

WHEREAS, the parties acknowledge that they have received from each other adequate and sufficient consideration for the warranties, promises, releases, undertakings, and other terms contained in this Agreement and Release in favor of or to the benefit of the other party;

## COVENANTS

NOW, THEREFORE, in consideration of the foregoing and the warranties, promises, releases, undertakings, and terms hereinafter contained, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.     The above recitals are expressly incorporated herein and made a part of this Agreement and Release.

2.     In consideration for the release, promises, warranties, undertakings, and other terms contained herein, Judicial Watch agrees to pay Paul, and Paul agrees to accept, subject to all the terms and conditions contained herein, the total sum of Seventy-Five Thousand U.S. Dollars ($75,000.00), to be paid by Judicial Watch to Paul in a single, lump sum payment, by check, within fourteen (14) days of Paul's execution of this Agreement and Release.

3.     Paul acknowledges and understands that, upon payment by Judicial Watch of the amount set forth in paragraph 2, above, Judicial Watch shall have satisfied, fully, completely, and forever, any and all obligations to provide Paul with a criminal defense or other legal representation in connection with any and all alleged violations of securities laws and other alleged criminal violations and related matters, including but not limited to the matters captioned *U.S. v. Peter F. Paul, et al.*, Case No. 01-CR-636 (LDW) (E.D.N.Y.), *U.S. v. Peter F. Paul, et al.*, Case No. CR01-1081-AHM (C.D. Calif.), *In the Matter of the Search of 18440 Burbank Boulevard, Unit 2206, Tarzana, CA   91536*,   Case No. CV04-5154-AHM (C.D. Calif.), *Securities and Exchange Commission v. Peter F. Paul, et al.*, Case No. CV04-6613-SVW (C.D. Calif.), and related appeals, and shall have no further obligation to provide Paul with a criminal defense or other legal representation in connection with any such matters.

4.     Paul acknowledges and understands that Judicial Watch has no responsibility, obligation, or liability whatsoever with regard to the federal and state income or other tax consequences to Paul, if any, regarding the sum paid to him under this Agreement and Release or sums paid previously on Paul's behalf, and Paul further acknowledges that he has received no legal or other advice from Judicial Watch or its agents with regard to such tax consequences, if any.

5.     Judicial Watch shall continue to provide legal representation to Paul in connection with the civil and bankruptcy law matters captioned *Peter F. Paul v. Clinton, et al.*, Case No. BC 304174 (Los Angeles Co. Sup. Ct.) and *Peter F. Paul v. Aaron Tonken*, Adversary Case No. AD 04-01982 (Bankr. C.D. Calif.), and related appeals.  Judicial Watch shall not be obligated to undertake any further or additional legal representation of Paul in any matter unless the parties expressly agree, in writing, to such additional representation.    Paul understands and

acknowledges that nothing contained in this Agreement and Release shall obligate Judicial Watch to retain outside legal counsel to represent Paul in connection with the above-referenced civil and bankruptcy law matters.

6.    Paul shall have no obligation to pay any amount to Judicial Watch for its attorney's fees, litigation costs, or other expenses incurred in providing legal representation to Paul; provided, however, that, in the event Paul receives an award of attorney's fees and/or litigation costs in any matter in which he is represented by Judicial Watch, Judicial Watch shall be entitled to the full amount of any such award as reimbursement for the attorney's fees and litigation costs expended or incurred by Judicial Watch in providing legal representation to Paul. In the event that Paul receives an award of damages or other monetary compensation, recovery, or settlement, other than an award of attorney's fees and/or litigation costs, Judicial Watch shall be entitled to reimbursement, out of any such award, compensation, recovery, or settlement, of all expenses, not including attorney and paralegal time, incurred by Judicial Watch in providing legal representation to Paul.

7.    Judicial Watch shall make reasonable efforts to advise and consult with Paul, in advance, about any public appearance, any public statement, or any contact with any member or representative of the media concerning any matter in which Judicial Watch provides legal representation to Paul; provided, however, that Judicial Watch shall not be obligated to advise and consult with Paul about any statement made by Judicial Watch in its monthly newsletter, entitled *The Verdict*, in direct mail solicitations, or in any other fundraising materials. Paul acknowledges and understands, however, that Judicial Watch may not always have the opportunity to consult with Paul in advance of any such public appearance, public statement or contact. Paul shall not engage in any public appearance, make any public statement, or have any

contact with any member or representative of the media concerning any matter in which Judicial Watch provides legal representation to Paul, without first advising and consulting with Judicial Watch, in advance, about any such appearance, statement, or contact. In the event that Paul engages in any public appearance, makes any public statement, or has any contact with any member or representative of the media about any matter in which Judicial Watch provides legal representation to Paul, without first advising and consulting with Judicial Watch, Judicial Watch, in the exercise of its sole discretion, shall be entitled to cease any and all further legal representation of Paul and shall further be entitled to withdraw immediately from any and all pending matters in which Judicial Watch represents Paul.

8.     Paul acknowledges and understands that Judicial Watch finances its operations and activities, including its legal representation of Paul and other clients, through direct mail solicitations and other fundraising efforts. Paul warrants and represents that he will not undertake any action that may harm or undermine Judicial Watch's direct mail solicitations and other fundraising efforts. In the event that Judicial Watch determines, in the exercise of its sole discretion, that Paul has undertaken any action that may harm or undermine Judicial Watch's direct mail solicitations and other fundraising efforts, Judicial Watch shall be entitled to cease any and all further legal representation of Paul and shall further be entitled to withdraw immediately from any and all pending matters in which Judicial Watch represents Paul.

9.     Paul hereby warrants, promises and covenants that he and his agents, representatives, and attorneys will keep the terms of this Agreement and Release strictly confidential and further warrants, promises, and agrees that he and his agents, representatives, and attorneys will not communicate the existence of or the terms of this Agreement and Release orally or in writing to any third party unless required to do so by law or by a court of competent

jurisdiction, or unless legal action is instituted to enforce the terms of the Agreement and Release. In the event that Judicial Watch determines, in the exercise of its sole discretion, that Paul or his agents, representatives, and attorneys fail to keep the terms of this Agreement and Release strictly confidential or communicate the existence of or the terms of this Agreement and Release orally or in writing to any third party, unless required to do so by law or by a court of competent jurisdiction, or to enforce the terms of this Agreement and Release, Judicial Watch shall be entitled to cease any and all further legal representation of Paul and shall further be entitled to withdraw immediately from any and all pending matters in which Judicial Watch represents Paul.

10.    Paul, for himself, his heirs, administrators, executors and assigns, hereby fully releases, acquits and forever discharges Judicial Watch and its past and present officers, directors, attorneys, agents, employees, successors, subsidiaries, and assigns from all claims, causes of action, and liability, known or unknown, from the beginning of time until the execution of this Agreement and Release, relating to or in any way connected with Judicial Watch's legal representation of Paul or the legal representation of Paul by any of Judicial Watch's and past and present officers, directors, attorneys, agents, employees, successors, subsidiaries and assigns, including but not limited to any claim arising under any federal, state, or local law, common law, statute, rule, regulation, ordinance, or provision, or any claim in equity or for monetary or equitable relief, indemnity, impairment of economic opportunity, reimbursement, or attorney's fees.

11.    Paul warrants and represents that he has neither made, suffered to be made, nor will make any assignment or transfer of any claims, actions, causes of actions, demands, debts, liens, contracts, agreements, promises, representations, torts, damages, costs, attorney's fees,

monies due on accounts, obligations, judgments or liabilities released by the Agreement and Release. Paul warrants and represents that he is the sole and absolute legal and equitable owner of all claims released under the aforementioned Release.

12.    Paul warrants and represents that he has relied on his own judgment and that of legal counsel independent of Judicial Watch regarding the proper, complete and agreed on consideration for the terms and provisions of this Agreement and Release. Paul warrants and represents that no statements or representations made by Judicial Watch or any of its officers, directors, attorneys, agents, employees, agents, representatives or legal counsel have influenced or induced him to execute this Agreement and Release.

13.    Paul acknowledges that he has read this Agreement and Release and knows and understands the full contents and effects of it, and fully and consciously contract with Judicial Watch to release it from any and all liability and responsibility arising out the matters specified herein. Paul's signature on the last page of this document indicates that Paul is entering into this Agreement and Release freely, knowingly, and voluntarily, with a full understanding of its terms.

14.    Each of the parties hereto represents and warrants to the other that they are fully competent to enter into this Agreement and Release, have full capacity and authority to enter into this Agreement and Release, and are not afflicted by or suffering from any mental, physical, emotional, psychological, physiological, or other disability, impairment, duress, or stress that impairs their ability to enter into this Agreement and Release.

15.    Any controversy or claim arising out of or relating to the Agreement and Release, or the breach thereof, or any controversy or claim arising out of or relating to any prior agreement of the parties, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and

judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The place of arbitration shall be Washington, DC. The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of the prevailing party's costs and fees. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out of pocket expenses such as copying and telephone, court costs, witness fees, and attorney's fees. Except as may be required by law, neither party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

16.    All benefits and burdens of this Agreement and Release shall be binding upon and inure to the benefit of Judicial Watch and Paul and their respective heirs, personal representatives, successors and assigns.

17.    The Agreement and Release may not be modified, changed, or altered, except by a writing signed jointly by Judicial Watch and Paul.

18.    This Agreement and Release, and any prior agreements between the parties, shall be governed by and interpreted in accordance with the laws of the District of Columbia, without regard to its conflict of laws provisions.

19.    For all purposes herein, the use of the conjunctive "and" shall include the disjunctive "or" and vice-versa; the singular shall include the plural and vice-versa; the masculine gender shall include the feminine and neuter genders and vice-versa; the verb tenses shall include the past, present and future; and "any" shall include "all" and vice-versa.

20.    The invalidity or enforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

21.    This Agreement and Release may be executed in counterparts, all of which counterparts together with this Agreement and Release shall constitute one original agreement. Telecopied or faxed signatures shall be effective and bind the party signing in that matter.

22.    The Agreement and Release sets forth the entire agreement between the parties and fully supersedes any and all prior covenants, agreements, promises, representations, warranties, or understandings between the parties pertaining to the subject matter hereof.

IN WITNESS WHEREOF, the undersigned have caused this Agreement and Release to be duly executed as the date first written above.

//

//

//

//

JUDICIAL WATCH, INC.

By:_____
    Thomas J. Fitton
    President

SUBSCRIBED and SWORN to
before me this _____ day
of _____, 2005.

_____
NOTARY PUBLIC


_____
Peter F. Paul

SUBSCRIBED and SWORN to
before me this _____ day
of _____, 2005.

_____
NOTARY PUBLIC

# EXHIBIT F

1 of 100 DOCUMENTS

Copyright 2005 The New York Times Company
The New York Times

March 15, 2005 Tuesday
Late Edition - Final

**SECTION:** Section B; Column 4; Metropolitan Desk; Pg. 3

**LENGTH:** 1005 words

**HEADLINE:** Battling the Clintons, and Each Other

**BYLINE:** By IAN URBINA

**DATELINE:** WASHINGTON, March 14

**BODY:**

After organizing a fund-raiser for Hillary Rodham Clinton in 2000, Peter Paul turned on the Clintons with a vengeance, claiming that they bilked him out of nearly $2 million in campaign donations.

His pursuit of former President Clinton and the senator from New York was championed by Judicial Watch, a conservative legal group that has sued the Clintons repeatedly over the years.

But now Judicial Watch and Mr. Paul are battling each other. Mr. Paul says that the organization used his case solely to draw donations while doing little to solve his legal troubles. Last week, Judicial Watch filed court papers in California seeking to sever ties with Mr. Paul, who has, in turn, threatened to sue the group for nearly $1 million.

"It's a pretty complicated situation," said Skip Pita, who is representing Mr. Paul in his negotiations with Judicial Watch. "At this point, they have offered my client a sum of money in exchange for his releasing Judicial Watch and their lawyers of any potential claims against them, but my client does not believe that the terms are fair."

Mr. Paul says Judicial Watch let his civil suit against the Clintons linger in court while using it to raise more than $15 million since 2001 from people who dislike the Clintons. Mr. Paul also says that by botching his defense in a criminal case concerning stock fraud that he pleaded guilty to last week, the organization caused his unnecessary detention in a Brazilian jail for two years while he awaited extradition to the United States, which occurred in September 2003. The group is now backing out of its agreement to pay the legal fees relating to Mr. Paul's criminal case, Mr. Paul says.

Thomas J. Fitton, president of Judicial Watch, says that his organization has tirelessly pursued the civil suit against the Clintons, having spent more than four years on it. In the criminal case against Mr. Paul, Mr. Fitton said, Judicial Watch never agreed to pay legal fees after Mr. Paul hired a separate lawyer last October, and the organization offered him a lawyer but he refused it.

"The fact that the Clintons are still stuck in the civil lawsuit speaks volumes to our success in the case," Mr. Fitton said. "We stood by Peter when no one else would, so frankly, we are a bit surprised by where this is coming from."

Whatever its source, the recent bad blood between Judicial Watch and Mr. Paul cannot help but work in the Clintons' favor.

Late Monday, Judicial Watch and Mr. Paul had still not come to an agreement over who would file the papers due on Tuesday in a California appellate court responding to Mrs. Clinton's motion to dismiss the civil suit against her. Questions about the 2000 fund-raiser have created a political embarrassment for Mrs. Clinton, who is preparing to run for a second Senate term and possibly pursue a presidential bid.

Page 2

Battling the Clintons, and Each Other The New York Times March 15, 2005

"I've got a great case against the Clintons, but Judicial Watch is going to tie me up in pointless litigation," said Mr. Paul, who added that he planned to sue Judicial Watch for $900,000 so that he could use half of the money to pay his criminal lawyer and the rest to pursue the civil suit against the Clintons. Without naming names, Mr. Paul said that he was assembling a "dream team" of Republican lawyers to replace Judicial Watch in that civil suit.

"It's too bad I have to start all over again because the point here is to bring the Clintons to justice," Mr. Paul said.

It all started in March 2001, when Mr. Paul says Judicial Watch agreed to handle his criminal and civil legal matters.

At the time, Mr. Paul was in Brazil, where he had gone in December 2000 to attend to a second business that he owned, soon after the collapse of Stan Lee Media, an Internet company that he had co-founded. Mr. Paul was facing criminal charges of stock fraud relating to the company. He also had a civil suit against the Clintons, in which he says that he gave close to $2 million in services and donations to Mrs. Clinton's Senate campaign based on promises that Mr. Clinton would join Mr. Paul's Internet company when the president left office. These promises were never fulfilled, he says.

Mr. Paul said that by failing to dedicate sufficient resources to his civil suit, Judicial Watch left the case to idle in California courts. And in taking an overly combative approach to negotiations with the Department of Justice regarding Mr. Paul's return for trial in the United States from Brazil, Judicial Watch lengthened his prison stay, Mr. Paul said.

"Had Peter's prior counsel been more willing to plea with the government, as we were willing to do, it would not have taken two years to get him out of the Brazilian prison," said Joseph R. Conway, the lawyer whom Mr. Paul hired in October 2004 to take over the criminal case.

Mr. Paul said that in the meantime, Judicial Watch had him write a Christmas note to be included with their fund-raising letters stating that the organization needed money to support Mr. Paul's family while they pursued his case against the Clintons. "In fact, they didn't give my family a cent, but I was stuck in prison -- so how was I going to raise a stink about it?" he said.

Mr. Fitton rejected Mr. Paul's account. "Peter hasn't the slightest idea about our how we fund-raise or what money we have made," he said. "We actually have lost money on his case."

Mr. Paul, who is under house arrest awaiting sentencing in the stock fraud case, may also be an important witness in a criminal trial against Mrs. Clinton's campaign finance director, David Rosen, who was indicted in January on charges of failing to report in-kind contributions and producing a false invoice in connection with an Aug. 12, 2000, fund-raiser for Mrs. Clinton. Mr. Rosen, who has pleaded not guilty, goes on trial on May 3 in Los Angeles.

"I don't see our relationship with Mr. Paul being resurrected," Mr. Fitton said. "But we're still going to pursue the Clintons, you can be sure of that."

URL: http://www.nytimes.com

LOAD-DATE: March 15, 2005

# EXHIBIT G

COPY

1  Sterling E. Norris, Esq. (SBN 040993)
   JUDICIAL WATCH, INC.
2  2540 Huntington Drive, Suite 201
   San Marino, CA 91180
3  Tel.:   (626) 287-4540
   Fax.:   (626) 237-2003
4
   *Attorneys for Plaintiff*
5

6

7

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
                         **COUNTY OF LOS ANGELES**
9

10  PETER F. PAUL,                          ) Case No. BC 304174
                                            )
11                          Plaintiff,      )
                                            ) ***EX PARTE* APPLICATION TO**
12          v.                              ) **WITHDRAW AS PLAINTIFF'S**
                                            ) **ATTORNEY; MEMORANDUM OF**
13  WILLIAM JEFFERSON CLINTON,              ) **POINTS AND AUTHORITIES IN**
    HILLARY RODHAM CLINTON,                 ) **SUPPORT THEREOF; DECLARATION**
14  HILLARY RODHAM CLINTON FOR U.S.         ) **OF PAUL J. ORFANEDES**
    SENATE COMMITTEE, INC., NEW YORK        )
15  SENATE 2000, DAVID ROSEN, GARY          ) Hearing Date: April 13, 2005
    SMITH, JAMES LEVIN, and AARON           ) Time:         8:30 a.m.
16  TONKEN,                                 ) Location:     Dept. 47 (Hon. A. N. Munoz)
                                            )
17                          Defendants.     )
                                            ) Original Complaint Filed:   October 14, 2003
18                                          ) First Amended Cplt. Filed:  February 27, 2004
    _____)
19                                            Discovery Cut-Off:   None
                                              Trial Date:          None
20
                                              Filed Concurrently with [Proposed] Order
21                                            Granting *Ex Parte* Application to Withdraw as
                                              Plaintiff's Attorney
22

23

24

25

26

27

28

_____

BC 304174     *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
              Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         Please take notice that on April 13, 2005, at 8:30 a.m., or as soon thereafter as they may

3 be heard, Sterling E. Norris, Paul J. Orfanedes, Michael J. Hurley, and Judicial Watch, Inc. will

4 and hereby do apply *ex parte* to this Court for an order permitting them to withdraw as counsel of

5 record for Plaintiff Peter F. Paul. The Court is located at the Stanley Mosk Courthouse, 111 N.

6 Hill Street, Los Angeles, California 90012.

7         The grounds for the issuance of this order are that Mr. Paul has engaged in a course of

8 conduct and made demands of Judicial Watch, Inc. that make it unreasonably difficult, if not

9 impossible, for Judicial Watch, Inc. and its attorneys to continue to represent him. Mr. Paul also

10 has made it clear that he would terminate Judicial Watch, Inc.'s representation of him if Judicial

11 Watch, Inc. did not accede to his demands, and Judicial Watch, Inc. has declined to accede to Mr.

12 Paul's demands.

13         As set forth in the accompanying Declaration of Paul J. Orfanedes, on or about April 5,

14 2005, Mr. Paul and all counsel of record were given notice of this *ex parte* application and the

15 hearing date. One or more attorneys from Judicial Watch, Inc. will be appearing at the hearing.

16 Judicial Watch, Inc. attempted to ascertain whether Mr. Paul would consent to or oppose this *ex*

17 *parte* application and whether an attorney would be appearing at the hearing on his behalf.

18 Judicial Watch, Inc. has not been able to obtain a definitive answer from Mr. Paul on either of

19 these points. Counsel for Defendants William Jefferson Clinton, Hillary Rodham Clinton, and

20 Hillary Rodham Clinton for U.S. Senate Committee, Inc. will be appearing at the hearing, but has

21 indicated that her clients do not oppose the application. Counsel for Defendant Gary Smith will

22 not be appearing at the hearing and has indicated that his client takes no position on the

23 application.

24         This *ex parte* application is based on (1) this Notice; (2) the Memorandum of Points and

25 Authorities in Support Thereof; (3) the Declaration of Paul J. Orfanedes; and (4) all other papers

26 and records filed in this action.

27

28

---

BC 304174     *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
            Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes     1

1   Dated: April 11, 2005                          JUDICIAL WATCH, INC.

2
                                            By:
3
                                                STERLING E. NORRIS
4                                               (Calif. Bar No. 040993)
                                                2540 Huntington Drive, Suite 201
5                                               San Marino, CA  91108
                                                Tel.: (626) 287-4540
6                                               Fax:  (626) 237-2003

7                                               PAUL J. ORFANEDES
                                                (Admitted Pro Hac Vice)
8                                               MICHAEL J. HURLEY
                                                (Admitted Pro Hac Vice)
9                                               501 School Street, S.W., Suite 500
                                                Washington, DC  20024
10                                              Tel.: (202) 646-5172
                                                Fax:  (202) 646-5199
11

12                                              *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

BC 304174        *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
                 Points and Authorities in Support Thereof; Declaration of Paul J. Orfanedes              2

## MEMORANDUM OF POINTS AND AUTHORITIES

Messrs. Norris, Orfanedes, and Hurley, and Judicial Watch, Inc., currently serve as counsel for Mr. Paul. Mr. Norris is a member of the California Bar. Messrs. Orfanedes and Hurley were admitted *pro hac vice*. All three attorneys are employees of Judicial Watch, Inc.

Mr. Paul has engaged in a course of conduct and made demands of Judicial Watch, Inc. that make it unreasonably difficult, if not impossible, for Judicial Watch, Inc. and its attorneys to continue to represent him. Mr. Paul also has made it clear that he would terminate Judicial Watch, Inc.'s representation of him if Judicial Watch, Inc. did not accede to his demands, and Judicial Watch, Inc. has declined to accede to Mr. Paul's demands. Accordingly, Messrs. Norris, Orfanedes, and Hurley, and Judicial Watch, Inc., request that they be allowed to withdraw from further representation of Mr. Paul in this matter pursuant to CCP § 284(a) and Rule 376 of the California Rules of Court.

No prejudice will result from the granting of this application, either to Mr. Paul or any other party, because no trial date has been scheduled and all discovery has been stayed pending the outcome of an appeal by Defendants Hillary Rodham Clinton and Hillary Rodham Clinton For U.S. Senate Committee, Inc. from the Court's ruling on their motion to strike pursuant to CCP § 425.16. Messrs. Norris, Orfanedes, and Hurley, and Judicial Watch, Inc., have filed a motion to withdraw in the appellate court and that motion has been granted. The only event currently scheduled before this Court is an 8:30 a.m. status conference on April 22, 2005 regarding the pending appeal. Because the appeal remains pending, there is little, if anything, to report at the April 22, 2005 status conference. Mr. Paul can retain alternate counsel before the date of the status conference, or, in the alternative, the status conference can be continued.

On or about April 5, 2005, Mr. Paul and all counsel of record were  given notice of this *ex parte* application and the hearing date. One or more attorneys from Judicial Watch, Inc. will be appearing at the hearing. Judicial Watch, Inc. attempted to ascertain whether Mr. Paul would consent to or oppose this *ex parte* application and whether an attorney would be appearing at the hearing on his behalf. Judicial Watch, Inc. has not been able to obtain a definitive answer from Mr. Paul on either of these points. Counsel for Defendants William Jefferson Clinton, Hillary

1 | Rodham Clinton and Hillary Rodham Clinton for U.S. Senate Committee, Inc. will be appearing

2 | at the hearing, but has indicated that her clients do not oppose the application.  Counsel for

3 | Defendant Gary Smith will not be appearing at the hearing and has indicated that his client takes

4 | no position on the application.  A copy of this application and supporting papers are being served

5 | by Federal Express on Mr. Paul at his last known address.  Additional copies of this application

6 | and supporting papers are being served on all counsel of record via facsimile.

7 |        WHEREFORE, Messrs. Norris, Orfanedes, and Hurley, and Judicial Watch, Inc., request

8 | that they be allowed to withdraw from further representation of Mr. Paul in this matter.

9 | Dated: April 11, 2005                          JUDICIAL WATCH, INC.

10

11 |                                        By:

12 |                                            STERLING E. NORRIS
                                            (Calif. Bar No. 040993)
13 |                                            2540 Huntington Drive, Suite 201
                                            San Marino, CA  91108
14 |                                            Tel.: (626) 287-4540
                                            Fax: (626) 237-2003

15 |                                            PAUL J. ORFANEDES
                                            (Admitted Pro Hac Vice)
16 |                                            MICHAEL J. HURLEY
                                            (Admitted Pro Hac Vice)
17 |                                            501 School Street, S.W., Suite 500
                                            Washington, DC  20024
18 |                                            Tel.: (202) 646-5172
                                            Fax: (202) 646-5199

19

20 |                                            *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

BC 304174        *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of                      4
                 Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes

## DECLARATION OF PAUL J. ORFANEDES

1.    I am the Director of Litigation for Judicial Watch, Inc., current counsel for Plaintiff Peter F. Paul in the above-captioned matter. I also am counsel of record for Mr. Paul, along with my colleagues Sterling E. Norris and Michael J. Hurley. Mr. Norris is a member of the California Bar. Mr. Hurly and I were admitted *pro hac vice*. All three of us are employees of Judicial Watch, Inc. I have first hand knowledge of the facts stated herein, and could and would testify competently thereto if called as a witness in this case.

2.    Mr. Paul has engaged in a course of conduct and made demands of Judicial Watch, Inc. that make it unreasonably difficult, if not impossible, for Judicial Watch, Inc. and its attorneys to continue to represent him. Mr. Paul also has made it clear that he would terminate Judicial Watch, Inc.'s representation of him if Judicial Watch, Inc. did not accede to his demands, and Judicial Watch, Inc. has declined to accede to Mr. Paul's demands.

3.    No prejudice will result from the granting of this application, either to Mr. Paul or any other party, because no trial date has been scheduled and all discovery has been stayed pending the outcome of an appeal by Defendants Hillary Rodham Clinton and Hillary Rodham Clinton For U.S. Senate Committee, Inc. from the Court's ruling on their motion to strike pursuant to CCP § 425.16. Messrs. Norris, Orfanedes, and Hurley, and Judicial Watch, Inc., have filed a motion to withdraw in the appellate court and that motion has been granted. The only event currently scheduled before this Court is an 8:30 a.m. status conference on April 22, 2005 regarding the pending appeal. Because the appeal remains pending, there is little, if anything, to report at the April 22, 2005 status conference. Mr. Paul can retain alternate counsel before the date of the status conference, or, in the alternative, the status conference can be continued.

4.    On or about April 5, 2005, Mr. Paul and all counsel of record were given notice of this *ex parte* application and the hearing date. One or more attorneys from Judicial Watch, Inc. will be appearing at the hearing. Judicial Watch, Inc. attempted to ascertain whether Mr. Paul

---

BC 304174        *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
                 Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes        5

1   would consent to or oppose this *ex parte* application and whether an attorney would be appearing

2   at the hearing on his behalf. Judicial Watch, Inc. has not been able to obtain a definitive answer

3   from Mr. Paul on either of these points. Jan B. Norman, counsel for Defendants William

4   Jefferson Clinton, Hillary Rodham Clinton, and U.S. Senate Committee, Inc. does not oppose

5   this application to withdraw, but will be appearing at the hearing. Leonard S. Matchinger,

6   counsel for Defendant Gary Smith, does not take a position on this application to withdraw, but

7   will not be appearing at the hearing. Judicial Watch, Inc. received no communication from any

8   other counsel, and, therefore, does not know whether any other party consents to or opposes this

9   *ex parte* application to withdraw, or whether counsel for any other party will be appearing at the

10  hearing. Copies of this Notice, the Memorandum of Points and Authorities in support thereof,

11  and this Declaration are being served by Federal Express on Mr. Paul at his last known mailing

12  address and are being served by facsimile on all counsel or record.

13      I declare under penalty of perjury of the laws of the State of California that the foregoing

14  is true and correct. Executed this 10 th day of April, 2005 in Washington, D.C.

15

16                                                    PAUL J. ORFANEDES

17

18

19

20

21

22

23

24

25

26

27

28  BC 304174        *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of                6
                     Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes

04/11/2005  11:25   6262372003          JUDICIAL WATCH INC                    PAGE  08/14

## PROOF OF SERVICE BY MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2540 Huntington Drive, Suite 201, San Marino, California 91109.

On April 11, 2005, I served the foregoing document described as *EX PARTE APPLICATION TO WITHDRAW AS PLAINTIFF'S ATTORNEY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PAUL J. ORFANEDES* on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

### See Attached Service List

( )    **BY MAIL:** By placing a true copy of thereof in sealed envelopes and causing them to be deposited in the mail at San Marino, California. The envelopes were mailed with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

( )    **BY HAND:** By placing a true copy thereof in sealed envelopes and causing such envelopes to be hand-delivered to the offices of the parties listed on the attached Service List.

(X)    **BY FAX:** By transmitting a true copy thereof via facsimile to the offices of the parties listed on the attached Service List. I caused the copy to be transmitted from the facsimile number of (626) 237-2003. The transmission was reported as complete and without error.

(X)    **BY OVERNIGHT MAIL (VIA FEDERAL EXPRESS):** By placing a true copy thereof in sealed envelopes and causing them to be deposited in the Federal Express depository maintained at 2540 Huntington Drive, San Marino, California 91108. The envelopes were sent with Federal Express fees therefor paid fully, with written instructions for "next day" delivery.

I declare under penalty of perjury that the foregoing is true and correct of my own personal knowledge and that I executed this document on April 11, 2005, at San Marino, California.

Constance S. Ruffley

BC 304174    *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes    7

04/11/2005  11:25    6262372003              JUDICIAL WATCH INC                    PAGE  09/14

## SERVICE LIST

Peter F. Paul v. William Jefferson Clinton, et al.
Case No. BC 304174

Peter F. Paul
1601 River Ridge Drive
Asheville, NC 28803

H. K. Skip Pita
PITA & DEL PRADO
9350 S. Dixie Highway, Suite 1200
Miami, FL 33156
Fax: (305) 670-6666

Brad D. Brian
Michael R. Doyen
Eric J. Lorenzini
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Fax: (213) 687-3702

Joseph Sandler
SANDLER, REIFF & YOUNG PC
50 E Street S.E., Suite 300
Washington, DC 20003
Fax: (202) 479-1115

Paul Mark Sandler
SHAPIRO SHER GUINOT & SANDLER
36 South Charles Street
Baltimore, MD 21201
Fax: (410) 539-7611

Steven Gonzalez
PERKINS COIE LLP
1620 26th Street, Sixth Floor - South Tower
Santa Monica, CA 90404
Fax: (310) 788-3399

Marc E. Elias
PERKINS COIE LLP
607 Fourteenth Street, N.W.
Washington, DC 20005-2001
Fax: (202) 434-1690

David E. Kendall
Suzanne H. Woods
Christian A. Weideman
WILLIAMS & CONNOLLY LLP
725 12th Street N.W.
Washington, DC 20005
Fax: (202) 434-5029

Carolyn Utrecht
RYAN, PHILLIPS, UTRECHT &
MACKINNON
1133 Connecticut Avenue, N.W., Suite 300
Washington, DC 20035
Fax: (202) 293-3411

Jan B. Norman
1000 Wilshire Blvd., Suite 600
Los Angeles, CA 90017
Fax: (213) 629-9022

Leonard S. Machtinger
KENOFF & MACHTINGER, LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, CA 90067
Fax: (310) 277-0653

---

BC 304174        *Ex Parte* Application to Withdraw as Plaintiff's Attorney; Memorandum of
Points and Authorities In Support Thereof; Declaration of Paul J. Orfanedes

COPY

1  Sterling E. Norris, Esq. (SBN 040993)
   JUDICIAL WATCH, INC.
2  2540 Huntington Drive, Suite 201
   San Marino, CA 91180
3  Tel.:  (626) 287-4540
   Fax.:  (626) 237-2003
4
   *Attorneys for Plaintiff*
5

6

7

8            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
                      **COUNTY OF LOS ANGELES**
9

10  PETER F. PAUL,                    )  Case No. BC 304174
                                      )
11               Plaintiff,           )
                                      )  **[PROPOSED] ORDER GRANTING** *EX*
12        v.                          )  *PARTE* **APPLICATION TO WITHDRAW**
                                      )  **AS PLAINTIFF'S ATTORNEY**
13  WILLIAM JEFFERSON CLINTON,        )
    HILLARY RODHAM CLINTON,           )  [Assigned to Hon. Aurelio N. Munoz]
14  HILLARY RODHAM CLINTON FOR U.S.   )
    SENATE COMMITTEE, INC., NEW YORK  )
15  SENATE 2000, DAVID ROSEN, GARY    )
    SMITH, JAMES LEVIN, and AARON     )
16  TONKEN,                           )
                                      )
17               Defendants.          )
                                      )
18

19

20

21

22

23

24

25

26

27

28

BC 304174        [Proposed] Order Granting *Ex Parte* Application to Withdraw as
                                Plaintiff's Attorney

1       IT IS HEREBY ORDERED upon consideration of the *Ex Parte* Application to

2   Withdraw as Plaintiff's Attorney of Sterling E. Norris, Paul J. Orfanedes, Michael J. Hurley,

3   and Judicial Watch, Inc. and the entire record herein that

4   1)  the *Ex Parte* Application to Withdraw as Plaintiff's Attorney is granted and

5   2)  Sterling E. Norris, Paul J. Orfanedes, Michael J. Hurley, and Judicial Watch, Inc. are relieved

6       of any and all further duties and responsibilities on behalf of Plaintiff Peter F. Paul.

7

8

9

10  DATED: _____          _____
                                       The Honorable Aurelio N. Munoz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Dated: April 11, 2005                    JUDICIAL WATCH, INC.

2

3                                            By:

4                                            STERLING E. NORRIS
                                             (Calif. Bar No: 040993)
5                                            2540 Huntington Drive, Suite 201
                                             San Marino, CA  91108
                                             Tel.: (626) 287-4540
6                                            Fax: (626) 237-2003

7                                            PAUL J. ORFANEDES
                                             (Admitted Pro Hac Vice)
8                                            MICHAEL J. HURLEY
                                             (Admitted Pro Hac Vice)
9                                            501 School Street, S.W., Suite 500
                                             Washington, DC  20024
10                                           Tel.: (202) 646-5172
                                             Fax: (202) 646-5199
11

12                                           *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BC 304174          [Proposed] Order Granting *Ex Parte* Application to Withdraw as
                                   Plaintiff's Attorney                          2

## PROOF OF SERVICE BY MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2540 Huntington Drive, Suite 201, San Marino, California 91109.

On April 11, 2005, I served the foregoing document described as *EX PARTE APPLICATION TO WITHDRAW AS PLAINTIFF'S ATTORNEY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PAUL J. ORFANEDES* on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

*See Attached Service List*

( )   **BY MAIL:** By placing a true copy of thereof in sealed envelopes and causing them to be deposited in the mail at San Marino, California. The envelopes were mailed with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

( )   **BY HAND:** By placing a true copy thereof in sealed envelopes and causing such envelopes to be hand-delivered to the offices of the parties listed on the attached Service List.

(X)   **BY FAX:** By transmitting a true copy thereof via facsimile to the offices of the parties listed on the attached Service List. I caused the copy to be transmitted from the facsimile number of (626) 237-2003. The transmission was reported as complete and without error.

(X)   **BY OVERNIGHT MAIL (VIA FEDERAL EXPRESS):** By placing a true copy thereof in sealed envelopes and causing them to be deposited in the Federal Express depository maintained at 2540 Huntington Drive, San Marino, California 91108. The envelopes were sent with Federal Express fees therefor paid fully, with written instructions for "next day" delivery.

I declare under penalty of perjury that the foregoing is true and correct of my own personal knowledge and that I executed this document on April 11, 2005, at San Marino, California.

Constance S. Ruffley

BC 304174          [Proposed] Order Granting *Ex Parte* Application to Withdraw as
                   Plaintiff's Attorney                                        3

1

## SERVICE LIST

2

Peter F. Paul v. William Jefferson Clinton, et al.
Case No. BC 304174

3

4     Peter F. Paul                           Marc E. Elias
     1601 River Ridge Drive                PERKINS COIE LLP
5     Asheville, NC 28803                  607 Fourteenth Street, N.W.
                                        Washington, DC  20005-2001
6     H. K. Skip Pita                         Fax: (202) 434-1690
     PITA & DEL PRADO
7     9350 S. Dixie Highway, Suite 1200      David E. Kendall
     Miami, FL 33156                    Suzanne H. Woods
8     Fax: (305) 670-6666                Christian A. Weideman
                                        WILLIAMS & CONNOLLY LLP
9     Brad D. Brian                          725 12th Street N.W.
     Michael R. Doyen                  Washington, DC  20005
10    Eric J. Lorenzini                     Fax: (202) 434-5029
     MUNGER, TOLLES & OLSON LLP
11    355 South Grand Avenue, 35th Floor    Carolyn Utrecht
     Los Angeles, CA  90071-1560        RYAN, PHILLIPS, UTRECHT &
12    Fax: (213) 687-3702               MACKINNON
                                        1133 Connecticut Avenue, N.W., Suite 300
13    Joseph Sandler                       Washington, DC  20035
     SANDLER, REIFF & YOUNG PC      Fax:  (202) 293-3411
14    50 E Street S.E., Suite 300
     Washington, DC  20003            Jan B. Norman
15    Fax: (202) 479-1115               1000 Wilshire Blvd., Suite 600
                                        Los Angeles, CA  90017
16    Paul Mark Sandler                Fax: (213) 629-9022
     SHAPIRO SHER GUINOT & SANDLER
17    36 South Charles Street            Leonard S. Machtinger
     Baltimore, MD  21201             KENOFF & MACHTINGER, LLP
18    Fax: (410) 539-7611               1901 Avenue of the Stars, Suite 1050
                                        Los Angeles, CA  90067
19    Steven Gonzalez                  Fax: (310) 277-0653
     PERKINS COIE LLP
20    1620 26th Street, Sixth Floor - South Tower
     Santa Monica, CA  90404
21    Fax: (310) 788-3399

22

23

24

25

26

27

28

---

BC 304174        [Proposed] Order Granting *Ex Parte* Application to Withdraw as
                                 Plaintiff's Attorney

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Peter F. Paul | Judicial Watch, Inc.; Thomas J.Fitton; Paul Orfanedes |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

*88898*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Daniel J. Dugan; Spector Gadon & Rosen, PC.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
215.241.8872

ATTORNEYS (IF KNOWN)

---

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

⊙ 4 Diversity
(Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ⊙ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)**          OR          **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ⊙ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Diversity Action under 28 USC § 1332; breach of contract; breach of fiduciary duty; unfair competition; legal malpractice

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 1 million | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE February 5, 2006    SIGNATURE OF ATTORNEY OF RECORD   *Daniel J Dugan*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.