IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

PETER F. PAUL, |
|
        Plaintiff, |
|
v. |     Civil Action No. 1:07-cv-00279-RCL
|     Honorable Royce C. Lamberth
JUDICIAL WATCH, INC., *ET AL*. |
|
        Defendants. |

---

## DEFENDANTS' MOTION TO DISMISS

    Defendants Judicial Watch, Inc., Thomas J. Fitton and Paul Orfanedes, by undersigned counsel and pursuant to Fed. Rule Civ. Pro. 12(b)(1), Fed. Rule Civ. Pro. 12(b)(6) and LCvR 7.1, hereby move to dismiss with prejudice Count One as to Defendants Fitton and Orfanedes, Count Two as to Defendant Fitton, and Counts Three through Six as to all Defendants for failure to state a claim. The grounds for this Motion are more fully set forth in the accompanying Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, which is incorporated by reference.

    WHEREFORE, for all of the forgoing reasons, and for those set forth in the accompanying Memorandum of Points and Authorities, Defendants Judicial Watch, Inc., Thomas J. Fitton and Paul Orfanedes respectfully requests that the Court GRANT this Motion and dismiss with prejudice Count One as to Defendants Fitton and Orfanedes, Count Two as to Defendant Fitton, and Counts Three through Six as to all Defendants.

Respectfully submitted,

//s// *Richard W. Driscoll*

_____

Richard W. Driscoll (436471)
Terence J. Everitt (492139)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile

*Counsel for Defendants Judicial Watch, Inc.,*
*Thomas J. Fitton and Paul Orfanedes*

Dated: March 15, 2007

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of March 2007, a copy of the foregoing Motion to Dismiss, Memorandum in Support and proposed Order were served by electronic filing upon counsel listed on the Notice of Electronic Filing.

//s// *Richard W. Driscoll*

_____

Richard W. Driscoll

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
|
PETER F. PAUL,                                        |
                                                              |
                    Plaintiff,                             |
                                                              |
v.                                                            |            Civil Action No. 1:07-cv-00279-RCL
                                                              |            Honorable Royce C. Lamberth
JUDICIAL WATCH, INC., *ET AL*.              |
                                                              |
                    Defendants.                         |
_____|

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton") and Paul Orfanedes ("Orfanedes"), by undersigned counsel, hereby submit the following Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint:

### INTRODUCTION

This action arises out of an agreement between the Plaintiff, Peter Paul ("Paul"), and Judicial Watch regarding legal representation for alleged securities and related violations of the law. Paul is a self-described whistle blower in connection with Hillary Rodham Clinton's 2000 Senate Campaign and alleges that he is "a leading figure in connection with allegations of the Clinton's illegal campaign fundraising." He is also a four-time felon. Judicial Watch is a not-for-profit educational organization that relies on charitable donations to fund its operations. On occasion, Judicial Watch provides legal services, without cost, to clients. Paul is alleged to be one such client. Fitton and Orfanedes are officers and directors of Judicial Watch.

In the spring of 2005, the relationship between Paul and Judicial Watch ended. Paul now sues Judicial Watch for monetary damages to pay legal fees associated with various criminal and civil matters. Relying on a three page agreement, Paul asserts that Judicial Watch is obligated to

pay his legal fees and may not withdraw from this responsibility under any circumstances.  In addition, claiming that Judicial Watch used his name and likeness inappropriately, Paul contends that Judicial Watch must turn over all contributions made to Judicial Watch during the course of their relationship.

Factually, Paul's hyperbolic allegations fail to disclose much of what actually occurred. However, for purposes of this Motion to Dismiss, Defendants are procedurally required to treat the allegations as true and demonstrate the legal insufficiency of the claims.  For the reasons set out below, as a matter of law, Paul's Complaint fails to state claims for breach of contract (as to Fitton and Orfanedes), breach of fiduciary duty (as to Fitton), violations of ethical standards of professional conduct, unjust enrichment, violation of the Lanham Act and appropriation of name and likeness.

## STANDARD OF REVIEW

A Court should grant dismissal under Rule 12(b)(6) where, taking the material allegations of the complaint as admitted, the plaintiff has failed to allege all material elements of the cause of action.  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001).  However, when considering a motion to dismiss, the Court need not accept unsupported inferences or legal conclusions in the Complaint.  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Volpone v. Caldera*, 190 F.R.D. 177, 180 (E.D. Va. 1999) (finding that a Court need not accept unsupported, conclusory allegations).

## ARGUMENT

**I.     COUNT ONE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT BY FITTON OR ORFANEDES BECAUSE THEY WERE NOT PARTIES TO THE AGREEMENT**

In Count One of the Complaint, Paul alleges that the Defendants breached the Agreement

between he and Judicial Watch when they: (1) withdrew from representing Paul in his criminal and civil matters (¶¶ 57, 59); (2) failed and/or refused to pay for Paul's legal fees (¶¶ 57, 59); and (3) attempted to modify the Agreement (¶ 58).  Whether intentional or mistaken, Paul includes Fitton and Orfanedes as defendants in this Count.  However, these allegations completely fail as to Fitton and Orfanedes.  *See* Complaint, Exhibit A.

Although Count One alleges that all Defendants breached the contract, the only entity having a contractual relationship with Paul is Judicial Watch.  Complaint, ¶¶ 15, 56-60 and Exhibit A.  "It is a fundamental principle of contract law that parties to a contract may bind only themselves and . . . may not bind a third person who is not a party to the contract in absence of his consent to be bound." *United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104, 114 (D.D.C. 2006) (citing *Sutton v. Messer*, 620 S.E.2d 19, 23 (N.C. App. 2005)).  Neither Fitton nor Orfanedes are alleged to be parties to the Agreement. Moreover, Paul does not allege that either agreed to be bound by the Agreement.

Because Fitton and Orfanedes are not parties to the Agreement, they cannot be bound by its terms, nor can they be held liable for any alleged breach arising from the same.  Therefore, Count One must be dismissed with prejudice as to Fitton and Orfanedes.

## II.    COUNT TWO FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY BY FITTON BECAUSE HE HAD NO SUCH DUTY

Count Two alleges that Defendants breached fiduciary duties owed to Paul. ¶¶ 61-67.  To state a claim for breach of fiduciary duty in the District of Columbia, Paul must allege facts sufficient to establish the following: "(1) the defendants owed the plaintiffs a fiduciary duty; (2) that the defendants breached that duty; and (3) that the breach proximately caused an injury." *See Shapiro. Lifschitz & Schram, P.C. v. R.E. Hazard. Jr. Ltd.*, 24 F. Supp.2d 66, 75 (D.D.C.

1998).  Paul's sole basis for alleging the existence of any fiduciary duty is the obligations imposed by the Agreement.  Complaint ¶ 62 and Exhibit A.  However, this bald allegation fails to state a claim upon which relief may be granted against Fitton.

It is well-settled that the mere existence of a contract does not create a fiduciary duty. *Steele v. Isikoff*, 130 F. Supp. 2d 23, 38-39 (D. D.C. 2000).  To establish that an employee of Judicial Watch owes a fiduciary duty in addition to any contractual relationship, Paul must allege facts sufficient to demonstrate the existence of a confidential relationship, including facts demonstrating the nature of the relationship, promises made, the type of services to be provided or advice given, and the parties' legitimate expectations.  *Id.* at 39.  Examination of the Complaint demonstrates that Paul has failed to make any such allegations.

Fitton does not have a fiduciary duty to Paul.  The Complaint acknowledges that Fitton is not a lawyer.  Complaint, ¶¶ 9, 63 and 75.  The sole allegation as to the creation of a fiduciary duty is found in paragraph 62, which reads: "By virtue of the representation agreements entered into by the parties, Defendants owed a fiduciary duty".  However, the agreements do not create a duty for Fitton, but only define the relationship between Judicial Watch and Paul.  The agreements do not require Fitton to act as a fiduciary, nor does Paul allege that Fitton agreed to act as a fiduciary of Paul.

Accordingly, Count Two should be dismissed with prejudice as to Fitton.

## III.    COUNT THREE FAILS TO STATE A CLAIM BECAUSE ALLEGED VIOLATIONS OF STANDARDS OF PROFESSIONAL CONDUCT ARE NOT VALID CAUSES OF ACTION

In Count Three, Paul seeks monetary damages for alleged breaches of ethical standards and for Fitton's alleged unauthorized practice of law.  However, the alleged breach of ethical standards and the alleged unauthorized practice of law do not create valid causes of action.

4

A.    <u>MERE BREACH OF ETHICAL DUTIES DOES NOT CREATE A CIVIL
      CAUSE OF ACTION</u>

In Count Three, Paul alleges that Defendants breached standards of professional conduct

governing attorneys in the District of Columbia, California and New York.  ¶¶ 69-75.  Count

Three fails to state a claim because mere breach of an ethical obligation or standard of conduct is

not recognized as a civil cause of action.

The District of Columbia, California and New York all recognize that violation of

standards of professional conduct does not give rise to a civil cause of action.  *D.C. Bar, Apx. A*,

Scope (2006) ("Nothing in these Rules, the Comments associated with them, or this Scope

section is intended to enlarge or restrict existing law regarding the liability of lawyers to

others"); *Cal. Rules of Prof'l Conduct*, Rule 1-100 (2006) ("These rules are not intended to

create new civil causes of action"); *Brainard v. Brown*, 91 A.D.2d 287, 289, 458 N.Y.S.2d 735,

736 (1983) (*overruled on other grounds*) (allegation of violation of a disciplinary rule does not,

by itself, create a cause of action); *see also Griva v. Davidson*, 637 A.2d 830, 846-847 (D.C.

1994) (stating that violation of ethical standard is not a civil cause of action).  Ethical standards

are promulgated by bodies having the authority to license attorneys.  The standards of conduct

exist to regulate an attorney's license to practice law.  In many cases, attorneys can be sanctioned

for technical violations of ethical standards regardless of harm to their clients.

For well-contemplated reasons, attorney regulatory bodies have determined that a client

does not have a cause of action for the mere violation of an ethical standard in any jurisdiction

referenced by Paul.  Therefore, Count Three fails to state a claim and must be dismissed with

prejudice.

B.    ETHICAL STANDARDS FOR LAWYERS DO NOT APPLY TO NON-
       LAWYERS

Paul acknowledges that Fitton is not a lawyer.[1]   Complaint, ¶¶ 9, 63, 75.   However,

Count Three alleges that Paul is entitled to collect monetary damages because Fitton allegedly

engaged in the unauthorized practice of law.   Complaint, ¶ 75.   While the unauthorized practice

of law is recognized as a contempt of court, there is no authority in the District of Columbia

recognizing such allegation as an independent cause of action.   *See J.H. Marshall & Assoc., Inc.*

*v. Burleson*, 313 A.2d 587, 592 (D.C. App. 1973).   Instead of creating a cause of action, the

Rules of the District of Columbia Court of Appeals require that complaints regarding the

unauthorized practice of law be filed with the Committee on Unauthorized Practice of Law.

*D.C. Ct. App. Rule 49 (2006).*

In light of the complete absence of any authority recognizing such allegations as an

independent cause of action, Count Three must be dismissed with prejudice as to Fitton.

IV.    **COUNT FOUR FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT**

Count Four alleges that Defendants unjustly solicited and accumulated vast sums of

money from donations made in response to fundraising efforts propelled by Judicial Watch's

legal efforts on behalf of Paul.   Complaint, ¶¶ 76–82.   Despite the alleged accumulation of such

funds, Paul claims that Defendant's failed to provide legal representation or to pay his legal fees.

*Id.*   As a consequence, Paul alleges that Defendants have been unjustly enriched.   *Id.*   Count Four

fails because the existence of an express contract bars any claim for unjust enrichment.

Moreover, Paul fails to allege that the putative enrichment was at his expense.   Finally, Count

Four fails as to Fitton and Orfanedes because neither is alleged to have solicited or benefited

---

1        Because Fitton is not an attorney, standards of professional conduct for lawyers do not apply to him.

6

from the donations.

A.     THE LAW OF UNJUST ENRICHMENT

Unjust enrichment occurs when a person retains a benefit that in justice and equity belongs to another. *Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. 1950). The modern law of unjust enrichment and restitution has its roots in the common law concept of quasi-contract. In the absence of an actual contract, a claim of unjust enrichment can require one party to compensate another to avoid the former's unjust enrichment. *Jordan Keyes & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005). However, it is not enough for a plaintiff to allege that another was unjustly enriched. "For [a plaintiff] to recover on a quasi-contractual claim, he must show that [the defendant] was unjustly enriched *at his expense*". *News World Commc's, Inc. v. Thompson*, 878 A.2d 1218, 1222 (D.C. App. 2005) (emphasis added).

The remedy of unjust enrichment is not available when the parties have an agreement. Where parties have an express contract, the law does not recognize a right to claim unjust enrichment. *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997). In this way, the law respects the parties' right to contract and form agreements between themselves. Therefore, "there is, of course, no need to resort to [quasi contract] when the evidence sustains the existence of a true contract, either express or implied in fact." *Jordan Keyes*, 870 A.2d at 64 (citing *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973)). "One who has entered into a valid contract cannot be heard to complain that the contract is unjust, or that it unjustly enriches the party with whom he or she has reached agreement." *Id.*

B.    THE AGREEMENT BETWEEN PAUL AND JUDICIAL WATCH
      DEMONSTRATES THAT COUNT FOUR FAILS TO STATE A CLAIM FOR
      UNJUST ENRICHMENT

In Count Four, Paul asks the Court to transfer to him all donations allegedly made to
Judicial Watch in relation to Paul's civil and criminal cases.  However, this quasi-contractual
claim ignores the existence of an actual contract, which does not entitle Paul to receipt of such
alleged funds.

In paragraph 15 of the Complaint, Paul alleges the existence of a contract with Judicial
Watch and attaches a document that purports to be the agreement as Exhibit A.  Throughout the
Complaint, Paul repeatedly refers to the alleged contract with Judicial Watch.  Complaint, ¶¶ 15
– 17, 38, 39, 42, 56-60 and 62.  In light of Paul's allegations, an express contract exists between
Judicial Watch and Paul for the purpose of this Motion to Dismiss.  Therefore, Paul is not
entitled to seek unjust enrichment as a matter of law.  *Jordan Keyes*, 870 A.2d at 64; *Schiff*, 697
A.2d at 1194.  Accordingly, Count Four must be dismissed with prejudice.

C.    PAUL'S FAILURE TO ALLEGE THAT DEFENDANTS WERE UNJUSTLY
      ENRICHED AT HIS EXPENSE DEMONSTRATES THAT COUNT FOUR
      FAILS TO STATE A CLAIM

Count Four also fails because Paul does not allege that Judicial Watch was enriched *at
his expense*.  Instead, Paul merely alleges that Judicial Watch raised money from its donor base.
Complaint, ¶¶ 77, 79.  The Complaint is void of any allegation that a donation to Judicial Watch
was made by Paul.

Upon careful review, Count Four is a veiled attempt by Paul to unjustly enrich himself at
the expense of Judicial Watch.  Paul does not allege any right to the list of individuals to whom
Judicial Watch sends solicitations for contributions.  Indeed, it is alleged that the funds Paul
seeks were generated from Judicial Watch's donor base.  Complaint, ¶ 77.  He does not allege

that he wrote the letters sent by Judicial Watch to its donors. Paul does not allege that he funded the efforts seeking donations to Judicial Watch. Finally, the alleged agreement attached to the Complaint does not obligate Judicial Watch to seek funds from its donors to assist Paul or to devote any contributions to Paul's various lawsuits. Complaint, Exhibit A. Therefore, Paul is a complete stranger to the relationship between Judicial Watch and its donors. Furthermore, Paul is not a participant in the fund raising effort in any way. He is merely one of many beneficiaries of Judicial Watch's non-profit efforts. His claim for unjust enrichment is nothing more than an attempt to benefit at the expense of another's rights, property, time and effort.

Paul is not a Judicial Watch donor. He cannot allege that Judicial Watch was enriched *at his expense*. *News World Commc's*, 878 A.2d at 1222. Moreover, the allegations demonstrate that Paul will not be able to allege that Judicial Watch was enriched at his expense. Accordingly, Count Four fails and must be dismissed with prejudice.

C.   COUNT FOUR FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST FITTON OR ORFANEDES BECAUSE THEY DID NOT RETAIN ANY BENEFIT CONFERRED BY PAUL

Whether intentional or mistaken, the Complaint includes Defendants Fitton and Orfanedes within the scope of Count Four. However, the donation request attached to Paul's Complaint clearly demonstrates that Judicial Watch was the fundraiser. Complaint, Exhibit B. There is no allegation that Fitton or Orfanedes requested donations to be sent to them. Instead, Judicial Watch is the recipient and beneficiary of contributions from its donors. Neither Fitton nor Orfanedes are alleged to have retained any funds. On the contrary, the Complaint is silent as to how either defendant was, or could be, unjustly enriched.

As previously discussed, unjust enrichment is focused on the individual who retains a benefit (usually money) that belongs to another. *Jordan, Keyes*, 870 A.2d at 63. The one who

9

receives the benefit must make restitution to the individual that conferred such benefit. *Id.* However, Count Four attempts to recover from Fitton and Orfanedes when neither retained any benefit conferred by Paul. Therefore, Count Four also fails to state a claim as to Fitton and Orfanedes.

## V.    COUNT FIVE FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED FOR VIOLATION OF THE LANHAM ACT

Count Five relies on a solicitation for donations and an alleged press release. Complaint, Exhibit B, ¶¶ 23 and 51.[2] Exhibit B to the Complaint is a seven page letter to donors soliciting contributions to assist Judicial Watch in pursuing its mission: "no one is above the law". The entire document contains only two references to Paul. Both references identify Paul as Judicial Watch's "former client".[3] Exhibit B is completely silent as to any request for funds to assist Paul in his litigation. In fact, the response form expressly reads: "<u>I understand my contribution will be used by Judicial Watch to advance its general litigation and investigation, and to educate the public about the dangers posed to our democracy by public corruption</u>."

Therefore, Count Five fails because there is no possible claim for false association or false endorsement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Further, Count Five fails to allege that Paul has standing to bring either a "false association/false endorsement" claim or a "false advertising" claim under the Lanham Act.

---

2    Neither the service copies of the Complaint delivered to Defendants' counsel nor the copy on file with the PACER System contain a copy of Exhibit H, the press release. Accordingly, it is not part of the Complaint.

3    The references to Paul in Exhibit A are as follows:

This indictment, and the facts it put on the public record, never would have happened without the unceasing efforts of Judicial Watch, <u>America's premier watchdog group that investigates and prosecutes government and political corruption</u>, on behalf of our former client, Peter Paul, and our nonstop efforts to force the Justice Department to investigate the crimes charged in the indictment.
. . .
Our former client, Peter Paul, contributed nearly $2 million to this event [referring to the "Hollywood Tribute"].

A.    COUNT   FIVE   FAILS   TO   STATE   A   CLAIM   FOR   "FALSE
ASSOCIATION/FALSE    ENDORSEMENT"    UNDER    §    1125(a)(1)(A)
BECAUSE PAUL DOES NOT DENY HE IS A FORMER CLIENT OF
JUDICIAL WATCH

While Paul purports to bring a "false association/false endorsement" claim, a careful

reading of the Complaint and its exhibits reveals that he failed to state such a claim.  In order to

prevail on a "false association/false endorsement" claim under 15 U.S.C. § 1125(a)(1)(A), "a

celebrity must show that use of his or her name is likely to cause confusion among consumers as

to the 'affiliation, connection, or association' between the celebrity and the defendant's goods or

services, or as to the celebrity's participation in the 'origin, sponsorship, or approval' of the

defendant's goods or services."  *Parks v. LaFace Records*, 329 F.3d 437, 445-46 (6th Cir.

2003).  "Consumer confusion occurs when consumers . . . believe that the products or services

offered by the parties are affiliated in some way, or when consumers make an incorrect mental

association between the involved commercial products or their producers."  *Id.* at 446 (internal

quotations and citations omitted).

Paul does not, and cannot, claim that he was not affiliated or associated with Judicial

Watch for the period from 2001 though April 2005.  Complaint, Exhibit A.  With respect to the

period after April 2005, the items referenced by Paul in his Complaint – a 2005 solicitation

(Exhibit B) – refers to Paul as a *former* Judicial Watch client.  Therefore, confusion that Paul

was no longer affiliated or associated with Judicial Watch is not possible.  Further, there is no

allegation that Judicial Watch represented that Paul somehow endorsed Judicial Watch's work.

On the contrary, Paul is merely referred to as a former client.  Therefore, his "false association or

endorsement" claim fails on its face.

B.    COUNT FIVE FAILS TO ALLEGE STANDING FOR EITHER A "FALSE ASSOCIATION/FALSE ENDORSEMENT" CLAIM UNDER 15 U.S.C. § 1125(A)(1)(A) OR A "FALSE ADVERTISING" CLAIM UNDER 15 U.S.C. § 1125(A)(1)(B)

Paul's Complaint alleges that he is a consumer of legal services. ¶¶ 2-3. He required counsel to represent him in his criminal indictments as well as to pursue civil remedies against the Clintons. *Id.* Judicial Watch is alleged to be a public interest law firm that investigates and prosecutes government corruption and abuse. ¶ 8. As a consumer of legal services, Paul has no standing to pursue a claim under the Lanham Act.

Standing to assert any type of claim under either § 1125(a)(1)(A) or (B) requires a plaintiff to claim a competitive or commercial injury. *Made in the USA Foundation v. General Motors Corp.*, 2005 U.S. Dist. LEXIS 5689, slip op. at 10, 74 U.S.P.Q.2d 1857 (D. D.C. April 6, 2005); *see also Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 212-13 (D.D.C. 1989) (noting that the Lanham Act gives a cause of action to "competitors"). The purpose of the Lanham Act is to protect persons engaged in commerce from unfair competition or anti-competitive conduct. *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 279-80 (4th Cir. 2004); *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561 (5th Cir. 2001); *Conte Bros. Automotive v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 234 (3d Cir. 1998); *Stanfield v. Osborne Industries*, 52 F.3d 867, 873 (10th Cir. 1995); *Berni v. Int'l Gourmet Restaurants, Inc.*, 838 F.2d 642, 647-48 (2d Cir. 1988). "[A]t least seven courts of appeals have held that consumers do not have standing to bring claims under the Lanham Act and no court of appeals has held to the contrary". *Made in the USA Foundation*, 2005 U.S. Dist. LEXIS 5689, slip op. at 9. At this time, the D.C. Circuit has not addressed the question.

Because Paul is a consumer and does not allege a competitive injury, Count Five fails and must be dismissed with prejudice for lack of standing.

C.    COUNT FIVE MAY NOT RELY ON THE JANUARY 2006 PRESS RELEASE AS IT CONSTITUTES PROTECTED SPEECH UNDER THE CONSTITUTION

Paul erroneously claims that Judicial Watch's reference to him as a "former client" in a press release regarding the Federal Election Commission's investigation  Hillary Clinton's 2000 U.S. Senate campaign caused confusion among donors willing to donate to Paul's litigation woes. Complaint, ¶¶ 51 – 52.  In addition to other flaws, this claim fails because the issuance of a press release regarding a matter of active public interest is not commercial speech, but is constitutionally protected speech.

It is beyond dispute that Section 43(a) of the Lanham Act "is clearly directed only against false representations in connection with the sale of goods or services."  *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141-42 (S.D.N.Y. 1990); *see also National Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1232 (S.D.N.Y. 1991) ("advertising or promotion for business purposes, whether conducted by for-profit or non-profit organizations").  Commercial speech is defined as "speech proposing a commercial transaction." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993)  The Supreme Court's decisions recognize a "common-sense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech."  *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455-456 (1978) (internal citations omitted).  Therefore, to assert a claim under the Lanham Act, the statements at issue must be of a commercial nature.

The press release, as alleged by Paul was not made "in the context of commercial promotion" as required by the Lanham Act, 15 U.S.C. § 1125(a).  As alleged, the press release

13

describes Paul as a "former client" of Judicial Watch.  Complaint, ¶ 51.  Judicial Watch is then alleged as taking credit for its role in the Federal Election Commission's investigation.  *Id.* However, there is no allegation that Judicial Watch solicited donations or any other type of commercial relationship.  It merely announced an accomplishment.

In the absence of a commercial solicitation, the January 2006 press release is constitutionally protected speech.  As such, the press release cannot be considered commercial speech.[4]  Accordingly, to the extent that Count Five is based on the press release, it must be dismissed with prejudice.

D.    COUNT FIVE MAY NOT RELY ON THE JANUARY 2006 PRESS RELEASE BECAUSE IT IS NOT MADE IN CONNECTION WITH THE SALE OF GOODS OR SERVICES

Count Five's reliance on the January 2005 press release presents what is known as the "advertising in effect" question.  In other words, can the press release, which is not considered to be advertising as the term is generally understood, provide the basis for a Lanham Act claim.  As alleged in the Complaint, the press release cannot be considered advertising in effect.  Therefore, it does not come within the scope of the Lanham Act.

Whether "advertising in effect" falls within the scope of the Lanham Act was addressed in *Gordon & Breach Science Publishers S.A. v. American Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994), which considered whether the publisher of a non-profit journal could be sued for false advertising under the Lanham Act.  *Id.* at 1523.  After a thorough review of the statutory history, the court concluded that Congress did not intend, nor was it constitutionally permissible,

---

[4]    Because the press release qualifies as protected speech, Paul will also be required to prove falsity of the representation that he is a "former client" and malice under <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 288, 84 S. Ct. 710, 711(1964).  Given that Paul does not allege he is not a former client, Judicial Watch's representation must be treated as true.  Accordingly, Paul's claim fails on this element as well.

14

to apply the Lanham Act to representations other than commercial speech. *Id.* at 1533. In particular, the court noted the following quote from the Congressional Record:

> The proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material . . . . The section is narrowly drafted to encompass only clearly false and misleading commercial speech.

*Id.* (citing 135 Cong. Rec. H1216-17 (daily ed. April 13, 1989)).

When considered in the context of *Gordon & Breach*, the alleged press release is not commercial speech relating to the sale of goods or services. Instead, it is protected speech that was never intended to fall within the purview of the Lanham Act. More importantly, Paul does not allege that Judicial Watch issued the press release to sell its goods or services. Likewise there is no allegation that Judicial Watch is a competitor of Paul, nor could there be. Finally, there is no allegation Judicial Watch made the press release to induce anyone to purchase a good or service. Put simply, a non-profit, public watchdog group made a public statement regarding a matter of intense public interest – the Clintons. Such comments are not made with the purpose of inducing consumers to buy something – they are purely within the realm of constitutionally protected speech.

Because Paul fails to allege that the press release is commercial advertising or promotion as required under § 43(a) of the Lanham Act, Count Five must be dismissed with prejudice as to the press release.

## VI.    COUNT SIX FAILS TO STATE A CLAIM FOR APPROPRIATION OF NAME AND LIKENESS

Paul's Complaint alleges that Defendants misappropriated his name and likeness for their own benefit. ¶¶ 94-96. This claim fails for two reasons: 1) the applicable statute of limitations

expired; and 2) even if this claim was timely, incidental use does not constitute appropriation under the law.

A.   THE STATUTE OF LIMITATIONS APPLICABLE TO COUNT SIX HAS EXPIRED

In the District of Columbia, it is well-settled that the conduct alleged in Count Six – appropriation of one's name or likeness – is deemed to be a claim for invasion of privacy. *Grunseth v. Marriott*, 872 F. Supp. 1069, 1074 (D.D.C. 1995) (stating that a cause of action for invasion of privacy may be maintained on any one of four theories, including "appropriation of the name or likeness for another's benefit."). Therefore, the one-year statute of limitations under D.C. Code § 12-301(4), which governs libel, slander, and similar intentional torts, applies to any invasion of privacy claims because such claims are types of defamation. *Id.*

Paul did not file suit until February 6, 2007. Therefore, any claim based on conduct before February 6, 2006 is time barred. Careful review of the Complaint discloses that the most recent allegation of use of Paul's name or likeness is Judicial Watch's January 2006 press release. Complaint, ¶ 51. Prior to that, Paul alleges that Judicial Watch used his name or likeness in a 2005 solicitation. Complaint, ¶ 23. Therefore, Count Six must be dismissed with prejudice in its entirety as there are no allegations of wrongful use after February 6, 2006.

B.   INCIDENTAL USE DOES NOT GIVE RISE TO A CLAIM OF APPROPRIATION

Paul's allegations fail to give rise to an "appropriation of name or likeness" claim. "Incidental use of name or likeness or publication for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation." *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 592 (D.C. 1985).

The Complaint alleges two instances in which Judicial Watch made passing reference to

Paul's name – the 2005 solicitation and the 2006 press release.[5]  Review of the 2005 solicitation shows that Judicial Watch made only incidental use of Paul's name when it referred to him as a former client. Paragraph 51 indicates that in referring to Paul, Judicial Watch relegated him to the "status of mere 'former'".  Rather than constitute a misuse of Paul's name, both incidents invoke Paul's name in passing reference and focus primarily on Judicial Watch and its work.  No rational reading of this document can be construed as an appropriation of Paul's name, likeness or anything else.

Accordingly, Count Six must be dismissed with prejudice.

## **CONCLUSION**

WHEREFORE, for all of the forgoing reasons, Defendants Judicial Watch, Inc., Thomas J. Fitton and Paul J. Orfanedes respectfully request that the Court GRANT this Motion and enter the following relief:

A.     Dismiss Count One with prejudice as to Defendants Thomas Fitton and Paul Orfanedes;

B.     Dismiss Count Two with prejudice as to Defendant Thomas Fitton;

C.     Dismiss Counts Three through Six with prejudice as to all Defendants; and

D.     Such other and further relief as this Court deems appropriate.

---

5        Defendants note that Exhibit H, the press release, was not attached to the Complaint as served or as filed with the Court.  Accordingly, it is not actually part of the Complaint.  However, paragraph 51 clearly alleges that publication occurred in January 2006.

Respectfully submitted,

//s// Richard W. Driscoll

_____
Richard W. Driscoll (436471)
Terence J. Everitt (492139)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc.,*
*Thomas J. Fitton and Paul J. Orfanedes*

Dated: March 16, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      |
PETER F. PAUL,                                  |
                                                      |
                    Plaintiff,                     |
                                                      |
v.                                                   |          Civil Action No. 1:07-cv-00279-RCL
                                                      |          Honorable Royce C. Lamberth
JUDICIAL WATCH, INC., *ET AL.*          |
                                                      |
                    Defendants.                   |
_____|

## <u>ORDER</u>

Upon consideration of the Defendants' Motion to Dismiss, opposition thereto, and the entire record herein, it is this ___ day of _____ 2006,

ORDERED that the motion is hereby GRANTED, and it is further

ORDERED that Count One is dismissed with prejudice as to Defendants Fitton and Orfanedes, and it is further

ORDERED that Count Count Two is dismissed with prejudice as to Defendant Fitton, and it is further

ORDERED that Counts Three through Six are dismissed with prejudice as to all Defendants.


_____
Honorable Royce C. Lamberth
Judge, United States District Court

cc:       Copies to all counsel