IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER F. PAUL, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:07-CV-00279-RCL |
| | Honorable Royce C. Lamberth |
| JUDICIAL WATCH, INC., *et al.* | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and LCvR 7.1, Plaintiff, Peter F. Paul, submits this memorandum of points and authorities in opposition to the defendants Motion to Dismiss Plaintiff's Complaint (the "Motion").

**I.   INTRODUCTION**

This action arises out of defendants' representation of Paul in connection with his whistle-blowing activities directed at Senator Hillary Rodham Clinton's fundraising abuses in her 2000 campaign for the United States Senate. Judicial Watch and Paul entered into an unusual legal representation agreement whereby Judicial Watch agreed to provide and/or pay for Paul's legal representation in actions he instituted, and to defend him in actions brought against him alleging securities law and related violations of campaign financing laws and civil litigation. In return for providing him global representation, Paul authorized Judicial Watch to solicit donations from the public for championing Paul's cause, and to seek publicity for Paul as may serve the "public interest."[1]

---

[1] As a result of their conduct after September 2003, Judicial Watch, Fitton and Orfanedas are currently defendants in other cases in this District, including an action by Judicial Watch founder and former Chairman in *Klayman v. Judicial Watch, et al*, Civil Action No. 06-CV-670; and in the Superior Court by a donor, in *Benson v. Judicial Watch*, *et al*., Civil Action No. 520-07.

342408-4

The Complaint alleges claims for breach of contract; breach of fiduciary duty; violations of standards of professional conduct (malpractice); unjust enrichment; Lanham Act violations; and appropriation of name and likeness.  The claims for breaches of contract, fiduciary duty, and malpractice arise out of the facts that the defendants (1) failed to faithfully prosecute and defend Paul's claims and interests, (2) attempted to coerce Paul into modifying the contract to limit their representation and have Paul provide a general release; and thereafter (3) unilaterally and without Paul's consent (indeed over his objection) withdrew from representing Paul in the several high profile civil and criminal matters for which they had agreed to represent him, and then they failed and/or refused to pay his legal fees and costs as they had obligated themselves to do.

The claims for unjust enrichment arise out of the facts that the defendants not only kept for themselves the money they otherwise were obligated to spend on Paul's legal representation, but also on their continued use of his whistle-blowing activities, including his likeness and images, without his consent, to raise funds from their donor base.  The defendants continue (to this day) to promote, and thus benefit from, their association with Paul even after the unilateral withdrawal and attempts to repudiate and re-write the agreement.  This also serves as the basis for the claims under the Lanham Act for appropriation of his likeness.

The complaint more than meets the notice pleading requirements of the federal rules.  Since the defendants cannot credibly challenge the pleadings, they resort instead to an impermissible analysis of the merits of Paul's claims.  The defendants selectively present portions of the Complaint and attempt to introduce new facts and make conclusory legal statements to this Court in support of the Motion, despite the well-settled standard for a motion to dismiss for failure to state a claim under Fed.R.Civ. P. 12(b)(6).  Judged by the proper

standards, the complaint sufficiently states all its claims and the court should deny the instant motion in its entirety.

## II. LEGAL ARGUMENT

### A. Applicable Legal Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is strictly limited to a test of the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, "a 12(b)(6) motion ought not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dowley v. Dewey Ballantine, LLP*, 2006 U.S. Dist. LEXIS 23304, *6 (D.C. 2006)(*citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). "[A] plaintiff's complaint need only satisfy the simplified pleading standard of Rule 8(a)," *id.; Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the district court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *Jordan Keys v. St. Paul Fire and Marine Ins. Co.,* 870 A.2d 58 (D.C. 2005); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999). Further, "[t]he court must disregard the contrary allegations of the opposing party," *Jordan v. Alternative Res. Corp.,* 2005 U.S. Dist. LEXIS 5279 at *7, and "[w]hen presented with a motion to dismiss for failure to state a claim, the court's function is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Perry v. Vanteon Corp.*, 192 F.Supp.2d 93, 97 (W.D.N.Y. 2002).

3

In accordance with the controlling legal precepts set forth above, all of the factual allegations contained in the Complaint must be considered in the light most favorable to Paul. Pivotal to the resolution of the defendants' Motion to dismiss for failure to state a claim, this Court simply must disregard all of defendants' factual allegations, interpretations and conclusions brought forth in the Motion.

### B. The Court Should Deny the Motion To Dismiss Count One (Breach of Contract) As To Fitton And Orfanedes.

Defendants claim that plaintiff failed to state a contract claim against the individual defendants, Fitton and Orfanedes. Though stated in conclusory terms, defendants appear to assert that the corporate veil of the defendant public interest law firm shields its principals and professional employees from liability for their own actions in failing to provide legal services to plaintiff in a professional manner. Defendants thus assert that, "[b]ecause Fitton and Orfanedes were not parties to the [retainer] Agreement, they cannot be bound by its terms…" Def. Br. p.3.

The complaint alleges that the individual defendants breached an agreement they made to provide legal services to plaintiff. Implicit in every contract for legal services is a personal covenant that attorneys performing the services will conduct themselves according to customary professional standards. "The lawyer's duty of care may be thought of as arising out of an implied term of the client-lawyer agreement." Restatement (Third) Law Governing Lawyers, § 48, *comment* c. Once established by contract, attorney-client relationships give rise to certain duties owed by the attorney to the client without regard to specific terms of any contract of engagement. Accordingly, if defendants meant to argue that an individual lawyer may be liable for malpractice only in tort, but not in contract, that is mistaken. Under District of Columbia law, "[w]hether a complaint is based on tort or breach of contract ... the liability of an attorney for failure to properly perform his duties is governed by the same general standard of care. In

4

342408-4

short, the 'reasonable skill' promised in [a contractual] agreement is the same as the 'reasonable skill' which an attorney must display to avoid tort liability." *Handy v. Shaw, Bransford, Veilleux & Roth*, 2006 WL 3791387, *3 (D.D.C., 2006); *see also* Restatement (Third) Law Governing Lawyers, s. 55 *comment* a. (special requirements of the client-lawyer relationship apply to breach of contract claims) and *comment* c. (plaintiff may cast a legal-malpractice claim in tort or contract mold, or both).

The individual lawyer's duty of care to the client is an incident of the contract for representation. Whether or not he has *separately* promised to exercise due care is an irrelevancy. Restatement (Third) Law Governing Lawyers, s. 50 (every lawyer owes a duty to exercise care in matters covered by the representation). In one formulation of the issue, a client who retains a law firm retains all of its lawyers. *George v. Caton,* 600 P.2d 822, 827 (N.M.App., 1979) ("Plaintiff retained the firm of White and Caton. This was equivalent to retaining each member of the firm, although one member of the firm had been consulted."); *Bossert Corporation v. City of Norwalk*, 253 A.2d 39 (Conn. 1968) (retaining a law firm was equivalent to retaining each of its members); *Sanders, Bruin, Coll & Worley, P.A. v. McKay Oil Corp.*, 943 P.2d 104, 109 (N.M., 1997) (attorney-shareholders in a law firm organized as a professional corporation are not shielded from personal liability for the attorney's own negligence when acting within the attorney's professional capacity). Among the duties implied in every contract for legal services are each attorney's duty of fidelity, honesty, and good faith in both discharge of contractual obligations to, and professional dealings with, the client. *Harman v. La Crosse Tribune*, 344 N.W.2d 536, 540 (Wis.Ct.App., 1984) ("The duty of loyalty runs from each attorney employed by a law firm to every client of that firm."); *Gieder v. Waxman*, 1983 WL 21397, *3 (Del.Ch.,

1983) (same); Restatement (Third) of Law Governing Law. § 123 (conflicts of interest are imputed to all lawyers affiliated with a law office or organization).

Those professional duties are contractual obligations of each attorney providing representation. Orfanedes' apparent contention that no contract claim can be stated against him for his own alleged breaches of duty while performing a contract for legal services is misconceived. His liability is an incident of the contract by which he entered an attorney-client relationship with Paul.

Defendants make no separate argument for immunizing Fitton. He was the head of Judicial Watch and was responsible for fulfilling the contractual obligations to represent Paul. Fitton further engaged in the separate misconduct of unauthorized practice of law. Public interest corporations, such as Judicial Watch, engage in the corporate practice of law, notwithstanding control by lay directors or principals such as Fitton, pursuant to a narrow exception to the bar on corporate practice of law. That exception arises from the associational rights guaranteed by the First Amendment of the Constitution of the United States. *NAACP v. Button*, 371 U.S. 415, 428-431(1963) (lay political organization may contract for litigation); *In re Primus,* 436 U.S. 412, 427-28 (1978) (contract to litigate by public interest legal services organization is protected association); *In re N.H. Disabilities Rights Center,* 541 A.2d 208, 215 (N.H. 1988) (statute limiting public interest corporate legal practice to poor clients was unconstitutional). However, the exception proscribes the kind of lay interference in the day to day conduct of litigation that Paul alleges Fitton engaged in. *In re Primus,* 436 U.S. at 439; *Button,* 371 U.S. at p. 447, conc. & dis. opn. of White, J.; *N.H. Disabilities Rights Center,* 541 A.2d at 213; *In re Education Law Center,* 429 A.2d 1051, 1057 (N.J. 1981); *Frye v. Tenderloin Housing Clinic, Inc.*, 129 P.3d 408, 40 Cal.Rptr.3d 221, 232-33, 241-42 (Cal. 2006). Paul is

6

342408-4

unaware of any cases involving a lay provider and controller of legal services claiming immunity from liability for breach of personal duties implied to every representation contract because he was a layman. Fitton's interference as a layman compounds the wrong alleged in the Complaint. An attorney-client representation agreement imposes personal duties on lawyers providing confidential professional services because the relationship created by the representation is confidential and fiduciary, not because the confidant is properly credentialed. While only lawyers are qualified to represent clients in litigation, it defies reason that a lay person who wrongly does so should evade contractual liability that would attach if he was qualified.

    **C.    The Court Should Deny The Motion To Dismiss Count Two (Breach of Fiduciary Duty) As To Fitton.**

A fiduciary relation exists when one party "is under a duty to act or give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) Torts § 874, *comment a*. Whether there exists a fiduciary relationship "is a fact-intensive question, involving a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *Church of Scientology Intern. v. Eli Lilly & Co.*, 848 F.Supp. 1018, 1028 (D.D.C., 1994). Paul's complaint alleges a relationship with Fitton that spanned the period from September 2003 through April, 2005, and which entailed the performance of substantial services to Paul, Fitton's client. Fitton, through his control of the litigation, advised Paul and was entrusted with the management of his affairs. This is sufficient to establish a fiduciary relationship.

A case defendants themselves cite, *Steele v. Isikoff*, 130 F.Supp.2d 23 (D.D.C., 2000), supports the existence of a fiduciary relationship. That case held that the relationship between a news informant and a reporter who allegedly promised her confidentiality "was simply too fleeting and too superficial to give rise to a fiduciary duty" because "[b]y her own account, their

7

342408-4

contact was limited to several short telephone calls and one face-to-face meeting." *Id.* at 37. The court went on to compare "this limited interaction" that could not support a fiduciary duty claim to a relationship alleged in a claim against a public relations firm "which spanned over two and one half years and entailed the performance of 'substantial services' to the client. While the client in *Scientology* entrusted the public relations firm with management of its affairs, Steele has not alleged that she expected Isikoff to advise her or take care of her affairs." *Id.* (citation omitted). The facts alleged in our case are similar to those alleged in *Scientology*, and far different from those alleged in *Isikoff*.

Notwithstanding the factual questions that preclude defendants' motion to dismiss under the standards set forth in *Steele,* the defendants' premise that "Paul's sole basis for alleging the existence of any fiduciary duty is the obligations imposed by the Agreement" misses the point. The agreement at issue not only created an attorney-client relationship between JW, its lawyers, and Paul, but also the obligation to hire and pay for outside counsel as might be necessary to protect and defend Paul. Unlike many other agreements, an agreement for legal services always imports fiduciary duties "[i]n addition to other possible bases of civil liability." Restatement (Third) of the Law Governing Lawyers, § 49. Defendants' protest that Fitton is not a lawyer is unavailing. The reason lawyers owe clients a fiduciary duty is that their relationship is confidential. Restatement (Third) of the Law Governing Lawyers, § 16. They owe a duty to avoid impermissible conflicts of interest, to deal honestly with the client, to adequately inform the client, to follow the instructions of the client, and to not employ adversely to the client powers arising from the client-lawyer relationship. Restatement (Third) of the Law Governing Lawyers, § 49 *comment* b. Through his direct control of JW, Fitton was in a superior position over the lawyers and had control over them, which he exercised to Paul's great detriment. He

8

342408-4

necessarily had at least the same duty as the lawyers he controlled.  As a result, Fitton is liable for breach of fiduciary duty no less than JW and Orfandes.

      **D.    The Court Should Deny The Motion To Dismiss Count Three (Violations of Standards of Professional Conduct).**

Count III alleges that defendants violated the Rules or Code of Professional Conduct governing lawyer discipline in California, the District of Columbia, and New York.  Defendants seek to dismiss on the grounds that "mere breach of ethical duties does not create a civil cause of action."  Def. Br. p.5.  Defendants are correct, *a propos* nothing.  Count III is entitled "VIOLATIONS OF STANDARD OF PROFESSIONAL CONDUCT," not violations of lawyer ethics rules giving rise to a private cause of action.  Paul alleges that defendants breached "the applicable standards of professional conduct governing attorneys in the District of Columbia, the state of California, and the State of New York."  More specifically, he alleges that JW and its attorneys breached a professional duty of care owed to him when they abandoned JW's legal representation of him (Complaint ¶¶ 69, 71), when they disadvantaged him in connection with legal representation formerly undertaken on his behalf (¶ 70), when they withheld access to his case files and materials connected to litigation that they formerly conducted on his behalf (¶ 72), when they failed to pursue his goals (¶ 73), when they embraced impermissible conflicts of interest (¶ 74), and when they abetted and participated in Fitton's unauthorized practice of law (¶ 75).  Those allegations are all proper grounds for Paul's Count III malpractice claim against JW and its lawyers.

That the defendant lawyers' violations of professional duty are *also* violations of specific ethical rules are undoubtedly true, and will be highly relevant to proving Paul's claims. *Wood v. Parker*, 901 S.W.2d 374, 379 (Tenn.Ct.App., 1995) ("[T]he Code of Professional Responsibility

9

342408-4

is not designed to create a private cause of action for infractions of disciplinary rules but is designed to establish a remedy solely disciplinary in nature. The Code does, however, provide guidance in ascertaining a lawyer's obligation to his or her client under various circumstances"). However, defendants' violations of disciplinary rules is irrelevant at this stage of litigation. If defendants mean to argue that they are not liable to Paul in malpractice for violations of the applicable standards of professional conduct because they are simultaneously liable to professional discipline for the same misconduct, such argument lacks merit.

Finally, defendants deny Paul's claim "that Paul is entitled to collect monetary damages because Fitton allegedly engaged in the unauthorized practice of law." They cite *J. H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587 (D.C. 1973), for the proposition that "there is no authority in the District of Columbia recognizing such allegations as an independent cause of action." Defendants have simply misread *Burleson,* a case in which a private damages claim based on an allegation of unauthorized practice of law *survived* a motion to dismiss. Upon closer review of their sole authority, defendants will presumably withdraw this argument. They also argue, whimsically, that Fitton, a non-lawyer, is not subject to the jurisdiction of any lawyer disciplinary agencies. Whether this is correct is immaterial to the Motion, although disciplinary agencies indeed have jurisdiction over the unauthorized practice of law.

### E.    The Court Should Deny The Motion To Dismiss Count Four (Unjust Enrichment).

Under the applicable law, a claim for unjust enrichment is based on a theory of a "quasi-contractual duty requiring compensation for services rendered." *Vereen v. Clayborne,* 623 A.2d 1190, 1193 (D.C. 1993). "The modern law of unjust enrichment and restitution has its roots in the common law concept of quasi-contract." *Jordan Keys v. St. Paul Fire and Marine Ins. Co.,* 870 A.2d 58, 63 (D.C. 2005). "At common law there were cases in which the courts, in the

342408-4

absence of an actual contract, nevertheless imposed 'a duty . . . under certain conditions upon one party to requite another in order to avoid the former's unjust enrichment.'" *Id.* (*citing Bloomgarden v. Coyer,* 479 F.2d 201, 208 (D.C. Cir. 1973). "To achieve this result, the courts devised "a legal obligation closely akin to a duty to make restitution, which they called a quasi-contract. From the beginning a quasi-contract has been openly acknowledged to be a 'legal fiction' invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise. . . ." *Id.* "It is . . . founded on considerations of justice and equity, and on [the] doctrine of unjust enrichment." BLACK'S LAW DICTIONARY 324 (6th ed. 1990). A plaintiff must simply allege that the defendant was unjustly enriched at plaintiff's expense and that the circumstances were such that, in good conscience, defendant should make restitution. *Vereen*, 623 A.2d at 1194.

In *News World Communications, Inc. v. Thompson*, 878 A.2d 1218 (D.C. 2005), the District of Columbia Court of Appeals held that a claim for unjust enrichment, not otherwise time-barred, would be sustained given that the plaintiff had conferred a benefit on the defendant, with the encouragement of defendant's personnel, and that defendant's enrichment was unjust. *Id.* at 1225. The only issue decided in *News World* was that under New Jersey law, plaintiff's claim was time-barred. *Id.* at 1226. *News World* in fact suggests that when a defendant encourages others to confer a benefit without compensation based on its representations, then misrepresentations would be unjust and entitle plaintiffs to restitution based on equitable principles. I*d.* at 1225-26.

Here, Paul alleges that the defendants were unjustly enriched as a result of their retention of funds that they were obligated to spend on representation of Paul and their fund-raising efforts

11

on the back of Paul's claims against the Clintons. As alleged, the defendants solicited and accumulated vast sums from its donor base in direct response to the defendants' pleas to said donors to support the litigation and other legal efforts of Judicial Watch on behalf of Paul. Complaint ¶ 77. They failed to diligently and competently provide legal representation to Paul, in connection with the aforesaid criminal and civil matters, despite their duty to do so. Complaint ¶ 78. The defendants unilaterally and wrongfully abandoned Paul and withdrew their representation of Paul but Fitton and Judicial Watch continued to benefit from fundraising efforts on the back of Paul's claims against Senator Clinton. Complaint ¶ 79. The defendants thereafter failed and/or refused to properly allocate the amounts necessary for the diligent and competent legal representation of Paul, and they unilaterally and without consent, withdrew their legal representation, leaving Paul without resources to pay the continuing fees costs and expenses associated with the aforesaid criminal and civil matters. Complaint ¶ 80. Despite repeated demands, the defendants refused to pay for Paul's growing legal expenses. Complaint ¶ 81. As alleged, by successfully fundraising on the back of Paul's whistle-blowing claims and by failing to provide adequate representation or pay for the same, the defendants achieved a windfall at Paul's expense, for which he continues to suffer.

     Thus, separate and apart from the damages alleged as a result of the wrongful withdrawal of legal representation undertaken by the defendants, the continued failure to pay Paul for his legal expenses while still fundraising on the back of Paul's allegations, as alleged, entitles Paul to the quasi-contract remedies associated with unjust enrichment under District of Columbia law. Moreover, the remedies available under the doctrine of unjust enrichment are properly pled as primary and alternative causes of action. Should the Court find that no contractual remedies are

342408-4

available, then Paul would be entitled to the quasi-contract remedies for unjust enrichment. Therefore, the Motion as to this count must be denied.

### F. The Court Should Deny The Motion To Dismiss Count Five (Lanham Act).

Section 43(a) of the Lanham Act, 15 U.S.C. s. 1125(a), creates a federal cause of action for unfair competition as provides in pertinent part:

> False designations of origin, false descriptions, and dilution forbidden
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Act has been held to apply to situations that would not qualify formally as trademark infringement, but that involve unfair competitive practices resulting in actual or potential deception." *Allen v. National Video, Inc.*, 610 F.Supp. 612 (S.D.N.Y. 1985). To make out a cause of action under the Act, a plaintiff must establish (1) involvement of goods or services, (2) effect on interstate commerce, and (3) a false designation of origin or false description of the goods or services." *Id.* at 625. "The scope of § 43(a) extends beyond disputes between producers of commercial products and their competitors. It also permits celebrities to vindicate property rights in their identities against allegedly misleading commercial use by

others." *Parks v. LaFace Records*, 329 F.3d 437, 445 (6th Cir. 2003). A celebrity is defined as "a celebrated or widely known person: one popularly honored for some signal achievement." *Id.* at 447. In *Parks*, a viable claim existed under § 43(a) where consumers falsely believed that Rosa Parks had sponsored or approved the product, or was somehow affiliated with the product. Courts have also held that "liability attached not just for descriptions that are literally false, but for those that create a 'false impression'." *Allen*, 610 F.Supp. at 626. In such cases, as in Parks and Allen, "a showing of the likelihood of consumer confusion is sufficient to make out a claim." *Id*. at 626. *See also Klayman v. Judicial Watch, Inc.* 2007 U.S. Dist. LEXIS 3197 (D.D.C.)("the Court notes that this Circuit has not addressed whether a celebrity may bring a claim under *Section 43(a)* of the Lanham Act based on misleading or deceptive use of their name or likeness, and that the two Circuits and various District Courts that appear to have addressed the issue have allowed such claims to be brought under *Section 43(a)(1)(A)*, the false endorsement prong of *Section 43(a)* of the Lanham Act). *See, e.g.*, *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997); *Parks*, 329 F.3d at 445-46.

 Paul does not deny that the defendants unilaterally and wrongfully withdrew from their legal representation of Paul. However, Paul has standing to sue because, as alleged, he is a notable celebrity in the entertainment, political gadfly and non-profit worlds. He is widely recognized, both nationally and internationally, as a leading figure in connection with pursuing accusations against the Clinton's illegal campaign fundraising. Complaint ¶ 88. Unlike the unsuccessful consumer plaintiff in *Made in the USA Found. v. GMC*, 2005 U.S. Dist. LEXIS 5689 (D.D.C. 2005), Paul is not a 'consumer' for purposes of bringing a claim under the Lanham Act. His case is more akin to *Parks,* because Paul's valuable reputation was injured by

14

the defendants claiming his victories against the Clintons as their own *after* they had already withdrawn from the representation and quit the field. *See* Complaint ¶¶ 89-91.

In the Motion, the defendants impermissibly attempt to engage in a merit analysis of the claims in Count Five for violations of the Lanham Act. The defendants point to Exhibit "H" to the Complaint, *see* Complaint ¶¶ 51-52, for the proposition that Judicial Watch only engaged in protected, not commercial, speech relating to Paul's claims and victories against the Clinton's fund raising abuses. However, such assertions are extraneous to the instant Motion under the standard for dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and must be disregarded by the Court. In fact, the Complaint alleges that after the defendants' vindictive abandonment of Paul in the aforesaid criminal and civil actions, the defendants' continued their massive fundraising efforts on the pretense of supporting Paul's legal matters, and obtained vast sums as a result. Complaint ¶ 53. The clear implication of the Complaint is that JW is, in part, a marketing enterprise that plys its trade in relation to the political activities of citizens such as Paul. Defendants' false portrayal of Paul, and of their role in Paul's affairs, was used to entice donors supporting Paul's efforts to continue giving donations to Judicial Watch even after JW abandoned Paul. Complaint ¶ 91. Defendants' own factual gloss on their activities as entirely proper does not support their motion to dismiss. Such claims are defenses subject for discovery and factual refutation.

> **G.    The Court Should Deny The Motion To Dismiss Count Six (Appropriation of Likeness).**

Under District of Columbia law, the essence of a misappropriation of name or likeness action is that the defendant has used another's name to take advantage of some value associated with it. *Pierce v. E.F. Hutton Group, Inc.*, 664 F.Supp. 1490 (D.D.C. 1987). The Restatement (Second) of Torts, as well as the District of Columbia cases adopting and interpreting it, require

15

342408-4

only that plaintiff allege that some benefit was derived through defendant's "use" of plaintiff's name, and that the "use" was not "incidental," in order to survive a motion to dismiss. D.C. Courts have adopted the definition of the tort of appropriation of name or likeness set forth in Section 652C of the Restatement (Second) of Torts, which provides that "one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy. Restatement (Second) of Torts, § 652C; *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C. 1985). The Comment to this section of the Restatement further elaborates that the interest protected by this proposition is in the nature of an individual property right in the exclusive use of one's own identity *insofar as the use of one's name or likeness may be of benefit to him or her or others*. *Id*. comment a. [emphasis added]. It goes on to state:

> The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose [] however, *the rule stated is not limited to commercial appropriation*. It applies also when the defendant makes use of the plaintiff's name or likeness for his *own purposes and benefit, even though use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one*.

*Id*. comment b [emphasis added]. The types of benefits contemplated include "reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id*. comment c.

Here, Paul alleges that the defendants benefited from the use of his name and likeness in their promotional and elaborate fundraising efforts. Complaint ¶¶ 51, 52, 90, 91, 96. As alleged in the Complaint, the defendants unlawfully and willfully copied, used and/or otherwise misappropriated all or part of Paul's files, documents and other irreplaceable evidence and exhibits relating to his cases, including Paul's likeness and name. They put these assets to their own use and benefit and have not returned them despite demand. Complaint ¶ 95. Moreover,

16

the Complaint specifically alleges that the "defendants <u>continue</u> to misappropriate Paul's files, documents and other irreplaceable evidence and exhibits relating to his cases, including Paul's likeness and name for their own use and benefit, thereby confusing the public and causing Paul to suffer irreparable damages and lost access to resources and/or benefits.  Complaint ¶ 96 (emphasis added).

Dismissal of Count Six is inappropriate because Paul properly alleged a continuing violation and, thus, the statute of limitations cannot bar Paul's claims at this stage in the litigation.  In fact, Judicial Watch's website continues to link to images of Paul and Hillary Clinton at the 2000 Senate fundraiser, without the consent of Paul.  *See* page from Judicial Watch's website printed April 11, 2007, attached hereto as Exhibit "A."  Thus, Paul has properly alleged a continuing claim for misappropriation of likeness against the defendants, and therefore, the Motion as to Count Six must be denied.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss the Complaint in its entirety.

        Respectfully submitted,

        **SPECTOR GADON & ROSEN, P.C.**

        By:   //s// *Daniel J. Dugan*
           Daniel J. Dugan, Esquire
           1635 Market Street, 7th floor
           Philadelphia, PA  19103
           215.241.8872
           215.241.8844 *fax*
           email:  ddugan@lawsgr.com

April 16, 2007        *Attorneys for Plaintiff Peter F. Paul*

342408-4

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2007, a true and correct copy of Plaintiff's Opposition to the defendants' Motion To Dismiss was served via electronic filing on the following:

>Richard W. Driscoll, Esquire
>Driscoll & Seltzer, PLLC
>600 Cameron Street
>Alexandria, Virginia 22314
>
>*Counsel for Defendants*


By:    //s// *Daniel J. Dugan*
           Daniel J. Dugan, Esquire

342408-4

**For Immediate Release**
Jul 17, 2001

Contact: Press Office
202-646-5172

# Pictures from Judicial Watch Client Peter F. Paul's Fundraisers for Hillary Clinton and Al Gore

Includes Exclusive Photos Taken at Hollywood Tribute to Bill Clinton

(Click on Photo to Enlarge)



© Copyright 1997-2002, Judicial Watch, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER F. PAUL, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:07-CV-00279-RCL |
| | Honorable Royce C. Lamberth |
| JUDICIAL WATCH, INC., *et al.*, | |
| *Defendants*. | |

### **ORDER**

Upon consideration of the Defendants' Motion to Dismiss the Complaint and Plaintiff's opposition thereto, it is hereby

ORDERED that the Motion to Dismiss Counts is DENIED in its entirety.

Entered this _____ day of _____, 2007.

_____
United States District Judge

345609-1