## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER F. PAUL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:07-279 (RCL)** |
| ) | |
| **JUDICIAL WATCH, INC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This matter comes before the Court on defendants' motion [2] to dismiss, plaintiff's

opposition, and the reply thereto.  Upon consideration of the filings, the entire record herein, and

the relevant law, defendants' motion [2] to dismiss will be GRANTED in part and DENIED in

part.

## I. BACKGROUND

Defendant Judicial Watch, Inc. ("Judicial Watch"), is a non-profit organization formed

under the laws of the District of Columbia.  (*See* Compl. ¶ 8.)  Defendant Thomas J. Fitton

("Fitton"), is President of Judicial Watch.  (*See id*. ¶ 9.)  Defendant Paul J. Orfanedes

("Orfanedes") is the Secretary and a director of Judicial Watch.  (*See id*. ¶ 10.)  This case arises

out of defendants' representation of plaintiff Peter F. Paul ("Paul"), in connection with plaintiff's

whistle-blowing activities directed at Hillary Rodham Clinton's 2000 Senate campaign.  Judicial

Watch and Paul entered into a legal representation agreement whereby Judicial Watch agreed to

represent him in connection with his whistle-blowing activities.  (*See id*. ¶ 2.)  According to

Paul's complaint, the representation included providing and/or paying for Paul's legal

representation in actions he instituted, and defending him in actions brought against him alleging securities law and related violations of campaign financing laws and civil litigation. (*See id*.) The complaint further states that in return for providing him representation, Paul authorized Judicial Watch to solicit donations from the public for championing Paul's case, and to seek publicity for Paul in service of the public interest. (*See id*.) The relationship between the parties ended in early 2005 when defendants allegedly failed to prosecute and defend Paul's claims and interests, attempted to coerce Paul into modifying the contract, and unilaterally and without Paul's consent, withdrew from representing Paul. (*See* Pl.'s Opp'n at 2.) Plaintiff filed the instant suit on February 6, 2007, alleging claims for breach of contract, breach of fiduciary duty, violations of standards of professional conduct, unjust enrichment, Lanham Act violations, and appropriation of name and likeness.

Defendants subsequently filed a motion to dismiss on March 15, 2007, which was followed by plaintiff's opposition filed on April 16, 2007. Defendants' motion seeks an order from this Court dismissing the following claims: (1) breach of contract by Fitton and Orfanedes; (2) breach of fiduciary duty by Fitton; (3) violations of ethical standards of professional conduct; (4) unjust enrichment; (4) violations of the Lanham Act; and (5) appropriation of name and likeness.

## II. DISCUSSION

### A.    Legal Standard

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127

S.Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a

doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to

relief).  This Court must construe the allegations and facts in the complaint in the light most

favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be

derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994)).  However, the Court need

not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth

in the complaint.  *Kowal*, 16 F.3d at 1276.

**B.     Analysis**

    **1.        Breach of Contract by Fitton or Orfanedes**

In Count 1 of the complaint, plaintiff alleges that defendants breached the agreement with

plaintiff when they:  (1) withdrew from representing plaintiff in his criminal and civil matters

(*see* Compl. ¶¶ 57, 59); (2) failed and/or refused to pay for plaintiff's legal fees (*see id.*); and (3)

attempted to coerce plaintiff into modifying the agreement (*see id.* ¶ 58).  Defendants argue that

Count 1 fails to state a claim for breach of contract by Fitton or Orfanedes because they were not

parties to the agreement.  (*See* Defs.' Mot. to Dismiss at 2–3.)  Plaintiff contends that since the

contract was for legal services, Fitton (a non-lawyer), and Orfanedes (a lawyer), are each liable as

individuals for malpractice in tort and in contract.  (*See* Pl.'s Opp'n at 4–5.)

It is a general principle of corporation law that the officers and employees of a corporate

entity are its agents.  *Ridgewells Caterer, Inc. v. Nelson*, 688 F. Supp. 760, 762 (D.D.C. 1988)

(citing 2 FLETCHER CYC. CORP. § 434 (1982)).  Under the law of the District of Columbia, an

agent is not personally liable on a contract it executes on behalf of a principal so long as it

3

identifies the principal and discloses the agency relationship. *Id.* (citing *Rittenberg v. Donohoe Constr. Co. Inc.*, 426 A.2d 338, 341 (D.C. 1981); *Resnick v. Abner B. Cohen Advertising, Inc.*, 104 A.2d 254, 255 (D.C. 1954)). Further, where a principal is disclosed, no liability will fall upon the agent for acts committed by the principal unless he binds himself for same by definite words or stipulation. *Rittenberg*, 426 A.2d at 341 (citations omitted). Nor does liability attach to an agent of a disclosed principal for his act within the scope of the agency unless he binds himself by definite words or stipulation. *Id.* (citation omitted). The contract at issue here is clearly between Paul and Judicial Watch. Defendant Fitton signed the agreement in his capacity as President of Judicial Watch but neither he nor Orfanedes are listed as parties to the agreement. Moreover, plaintiff alleges no facts that Fitton or Orfanedes obligated themselves to the terms of the agreement or otherwise gave consent to be personally bound. Nevertheless, plaintiff urges the Court to find that Fitton and Orfanedes were personally bound to the agreement by way of the duty of care implied in every contract for legal services. Plaintiff cites no authority, however, for his proposition that the duty of care owed to clients by all attorneys personally obligates attorneys under the terms of a contract to which they are a nonparty. As such, personal liability for breach of contract may not be imposed upon the corporation's agents under these circumstances. Accordingly, defendants' motion to dismiss Count 1 as to Fitton and Orfanedes shall be GRANTED.

## 2.    Breach of Fiduciary Duty by Fitton

Count 2 of plaintiff's complaint alleges that each of the defendants owed a fiduciary duty to provide faithful, competent, and vigorous legal representation to plaintiff and that they breached that duty when they withdrew their representation and failed to pay plaintiff's legal fees.

4

(*See* Compl. ¶¶ 62–65.)  Defendants move to dismiss Count 2 as to defendant Fitton on grounds

that, as a non-lawyer, Fitton owed no fiduciary duty to Paul.  Plaintiff urges this Court to embark

upon a "'searching inquiry into the nature of [his relationship with Fitton], the promises made, the

type of services or advice given and the legitimate expectations of the parties.'"  (Pl.'s Opp'n at 7

(quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994)).)

To state a claim for breach of fiduciary duty, a plaintiff must allege facts sufficient to

establish the following:  (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached

that duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately

caused an injury.  *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 75

(D.D.C. 1998).  For the reasons set forth below, plaintiff's claim against defendant Fitton fails

without moving beyond prong one of the analysis:  existence of a fiduciary duty.

As a general rule, the mere existence of a contract does not create a fiduciary duty.  *Steele

v. Isikoff*, 130 F. Supp. 2d 23, 36 (D.D.C. 2000) (citing *Church of Scientology*, 848 F. Supp. at

1028).  A fiduciary relationship could exist, however, where circumstances show that the parties

extended their relationship beyond the limits of the contractual obligations to a relationship

founded upon trust and confidence.  *See Church of Scientology*, 848 F. Supp. at 1028 (citing *Don

King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 769 (S.D.N.Y. 1990)).  The complaint alleges a

relationship with Fitton that spanned the period from September 2003 through April 2005, and

which entailed the performance of substantial services to plaintiff.  Plaintiff argues that Fitton,

through his control of the litigation, advised plaintiff and was entrusted with the management of

his affairs.  (Pl.'s Opp'n at 7.)  The Court need not delve into the intricacies of plaintiff's

relationship with Fitton since it is clear that Fitton's actions with respect to plaintiff were entirely

within the scope of his employment with Judicial Watch. Throughout his relationship with plaintiff, Fitton acted solely on behalf of Judicial Watch, rather than in any personal or individual capacity. While *Scientology* held that the nature of the parties' relationship determines the existence of a fiduciary duty, that case involved no officers or directors as named defendants. Rather, that case dealt only with the liability of an organization under the terms of a contract to which it was a party. *Scientology* therefore provides no support for holding individual officers or employees liable for the alleged breaches of fiduciary duty of their employer-organization. Moreover, plaintiff has failed to establish why this Court should impose the fiduciary duties of a lawyer upon a non-lawyer. As such, defendant's motion to dismiss Count 2 as to defendant Fitton shall be GRANTED.

### 3.     Violations of Standards of Professional Conduct

In Count 3, plaintiff alleges that defendants Judicial Watch, Orfanedes, and other individuals not named in the suit, are in breach of the applicable standards of professional conduct governing attorneys in the District of Columbia, the State of California, and the State of New York. (*See* Compl. ¶¶ 69–74.) Plaintiff further alleges that Fitton engaged in the unauthorized practice of law by providing legal advice to plaintiff, and making substantive legal decisions concerning strategy and tactics in the representation. (*See id.* ¶ 75.) Accordingly, plaintiff seeks monetary damages for the alleged breaches of professional conduct standards and for Fitton's alleged unauthorized practice of law. Defendants challenge whether either of plaintiff's allegations create valid causes of action.

The Court will begin with the claims against Judicial Watch and Orfanedes for breach of the standards of professional conduct. Defendants seek to dismiss Count 3 on grounds that under

the rules governing practice in the District of Columbia, California, and New York, a violation of the standards of professional conduct does not give rise to a civil cause of action. (*See* Defs.' Mot. to Dismiss at 5.) Plaintiff argues, however, that Count 3 is a claim for malpractice rather than an attempt to recover for violations of lawyer ethics rules. Under a malpractice theory, plaintiff must allege facts that establish: (1) the duty of care; (2) a breach of the duty; (3) proximate cause between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the alleged negligence. *Shapiro*, 24 F. Supp. 2d at 75 (internal citations omitted). Defendants contend that plaintiff's claim fails on the third and fourth elements of the malpractice analysis. In paragraph 66 of the complaint, plaintiff alleges the following: "As a direct and proximate cause of the aforesaid breaches, Defendants cause Paul to suffer economic loss, physical and emotional distress and damages, and injuries and losses to his claims, reputation and good will." (Compl. ¶ 66.) Plaintiff continues in paragraph 67: "As a direct and proximate cause of the aforesaid breaches, Paul suffered economic loss, physical and emotional distress and damages, and injuries and losses to his claims, reputation and good will." (*Id*. ¶ 67.) Defendants have not established why these allegations showing causation and actual injury are insufficient for plaintiff's malpractice claim. To be sure, the allegations set forth in paragraphs 66 and 67 (1) were incorporated by reference by paragraph 68 of plaintiff's malpractice count and (2) refer to the same underlying conduct as that alleged in the malpractice claim. Construing these facts in the light most favorable to plaintiff and granting plaintiff the benefit of all inferences that can be derived from the facts alleged, this Court finds that plaintiff has pled sufficient facts to establish a malpractice claim and therefore defendants' motion to dismiss as to

Judicial Watch and Orfanedes shall be DENIED.[1]

Moving now to Paul's ability to collect monetary damages for Fitton's alleged unauthorized practice of law, the Court finds that Count 3 as to Fitton must be dismissed. In this diversity action, this Court has subject matter jurisdiction to consider complaints of unauthorized practice of law initiated by private parties. *See J.H. Marshall & Assocs., Inc. v. Burleson*, 313 A.2d 587, 592 (D.C. 1973) (recognizing that the court has authority to consider complaints of unauthorized practice of law and the power and responsibility to enjoin such activities). However, there is no authority in the District of Columbia that supports a damages award based on a claim for unauthorized practice of law. Thus, defendants' motion to dismiss count 3 as to Fitton for unauthorized practice of law and as to Judicial Watch and Orfanedes for aiding and abetting Fitton's alleged unauthorized practice of law, shall be GRANTED.

### 4.    Unjust Enrichment

Count 4 of plaintiff's complaint alleges that defendants are unjustly enriched as a result of their retention of funds that were raised to support the litigation and other legal efforts of Judicial Watch on plaintiff's behalf. (*See* Compl. ¶¶ 77–82.) Defendants argue that Count 4 fails because the existence of an express contract bars any claim for unjust enrichment. (*See* Defs.' Mot. to Dismiss at 6.) Where parties have an express contract, the law does not recognize a right to claim unjust enrichment. *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997). Therefore, District of Columbia courts will not "resort to [quasi contract] when the evidence sustains the existence of a true contract, either express or implied in fact." *See Jordan*

---

[1] As to whether Orfanedes can, in fact, be sued for malpractice for alleged conduct that occurred while he was employed for a non-profit corporation that has agreed to perform legal representation, that question was not raised and the Court expresses no view herein on that issue.

*Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005) (internal quotation omitted).  One who has entered into a valid contract cannot be heard to complain that the contract is unjust, or that it unjustly enriches the party with whom he or she has reached agreement.  *Id*.  In the instant matter, there is an express contract between Paul and Judicial Watch.  As such, plaintiff is not entitled to recover on grounds that Judicial Watch has been unjustly enriched.  Even if there were no express or implied contract between Paul and Judicial Watch, plaintiff's unjust enrichment claim would still fail.  For a plaintiff to recover on an unjust enrichment claim, "he must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (internal quotation omitted).  Plaintiff has failed to establish that defendants were unjustly enriched at his expense.  The Complaint alleges that the funds at issue were generated from Judicial Watch's donor base.  (*See* Compl. ¶ 77.)  Plaintiff makes no allegation that he spent his own funds or efforts to solicit the donations from Judicial Watch's donors.  Instead, he alleges that Judicial Watch solicited the funds from its own donor base.  Accordingly, plaintiff's claim against defendants for unjust enrichment shall be dismissed.

Plaintiff's claim against Fitton and Orfanedes for unjust enrichment fails for yet another reason.  Plaintiff has made no allegation that either Fitton or Orfanedes retained any of the donated funds for themselves.  Based on the allegations in the complaint, Judicial Watch was the recipient of the contributions—not Fitton or Orfanedes.  Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another.  *Jordan Keys*, 870 A.2d at 63.  Plaintiff having made no allegation that anyone other than Judicial Watch

retained the funds, his claim against defendants Fitton and Orfanedes shall be dismissed. As such, defendants' motion to dismiss Count 4 shall be GRANTED.

## 5.    Violation of Section 43(a) of the Lanham Act

Count 5 of plaintiff's complaint alleges that defendants made false and misleading representations and advertisements about plaintiff and about defendants' role in plaintiff's legal affairs. (*See* Compl. ¶¶ 84–93.) Plaintiff claims that defendants' activities therefore violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Act"). Specifically, plaintiff's claims arise under the false association/false endorsement and the false advertising provisions of the Act. 15 U.S.C. § 1125(a)(1)(A) and (B). These claims rely on a 2005 solicitation for donations sent by Judicial Watch to its donors and a January 6, 2006 press release. (*See* Compl. Ex. B; Compl. ¶¶ 23, 51.) Both the solicitation and the press release refer to Paul as a former client.[2]

To succeed on a false association/false endorsement claim under 15 U.S.C. § 1125(a)(1)(A), "a celebrity[3] must show that use of his or her name is likely to cause confusion among consumers as to the 'affiliation, connection, or association' between the celebrity and the defendant's goods or services or as to the celebrity's participation in the 'origin, sponsorship, or

---

[2] The complaint refers to the January 6, 2006 press release as "Exhibit H." (*See* Compl. ¶ 51.) For whatever reason, the press release was not attached to the complaint as filed and neither defendants nor this Court have received a copy of the press release plaintiff references as "Exhibit H." However, for purposes of defendants' motion to dismiss, this Court's findings as to the press release may rely upon facts alleged in the complaint. In paragraph 51 of the complaint, plaintiff alleges that the press release refers to him as a "former client." (*See id.*) Plaintiff's allegation is sufficient for the Court's analysis at this phase.

[3] Plaintiff describes himself as "a notable celebrity in the entertainment, political gadfly and non-profit worlds." (Pl.'s Opp'n at 14.) Granting plaintiff the benefit of all reasonable inferences, this Court will accept plaintiff's assertion as true for the purposes of determining whether defendants' use of his name and likeness caused consumer confusion.

approval' of the defendant's goods or services." *Parks v. LaFace Records*, 329 F.3d 437, 445–46 (6th Cir. 2003) (quoting 15 U.S.C. § 1125(a)(1)(A) (internal citations omitted)). "Consumer confusion occurs when consumers . . . believe that the products or services offered by the parties are affiliated in some way, or when consumers make an incorrect mental association between the involved commercial products or their producers." *Id*. at 446 (internal quotations and citations omitted). Liability may attach "not just for descriptions that are literally false, but also for those that create a 'false impression.'" *Geisel v. Poynter Prods. Inc.*, 283 F. Supp. 261, 267 (S.D.N.Y. 1968); *see Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985) (holding that "unauthorized use of a person's name or photograph in a manner that creates the false impression that the party has endorsed a product or service in interstate commerce violates the Lanham Act"). In such cases, "a showing of the likelihood of consumer confusion is sufficient to make out a claim." *Geisel*, 283 F. Supp. at 267. In the instant case, there is no such false impression or likelihood for confusion as to plaintiff's affiliation with Judicial Watch since both of the documents at issue properly refer to plaintiff as a former Judicial Watch client. Further, plaintiff has made no allegation that either the solicitation or the press release represented that plaintiff endorsed Judicial Watch's work. As such, plaintiff's Count 5 for false association/false endorsement fails to state a claim and shall be dismissed.

As for plaintiff's claim under the false advertisement provision of the Lanham Act, plaintiff must show that defendants "misrepresent[ed] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). For the same reasons that plaintiff's false association/false endorsement claim fails, plaintiff's false advertisement claims also fails to state a claim. Defendants having

11

only referred to plaintiff as a former Judicial Watch client, made no misrepresentations under the Act and therefore plaintiff's claim for false advertisement shall be dismissed.[4]

### 6.    Appropriation of Name and Likeness

In Count 6 of the complaint, plaintiff alleges that defendants misappropriated his name and likeness for their own benefit.  (*See* Compl. ¶¶ 94–96.)  Specifically, plaintiff alleges that defendants benefitted from the use of his name and likeness in their promotional and fundraising efforts.  (*See id*. ¶¶ 51, 52, 90, 91, 96.)  Defendants argue that plaintiff's claim fails since the applicable statute of limitations has expired.  District of Columbia courts interpret an allegation of appropriation of name and likeness as a claim for invasion of privacy.  *See Grunseth v. Marriott*, 872 F. Supp. 1069, 1074 (D.D.C. 1995) (stating that a cause of action for invasion of privacy may be maintained on any one of four theories, including "appropriation of name or likeness for another's benefit").  Therefore, the one-year statute of limitations under D.C. Code § 12-301(4), which governs libel, slander, and similar intentional torts, applies to any invasion of privacy claims because such claims are types of defamation.  *Id*.  Since the most recent allegation of defendants' use of plaintiff's name or likeness refers to Judicial Watch's January 6, 2006 press release, any claim filed after January 6, 2007, is time barred.  Plaintiff did not file the instant action until February 6, 2007.  Plaintiff counters, however, that the one-year statute of limitations

---

[4] Defendants also challenge whether plaintiff has standing to assert either his false association/false endorsement claim under 15 U.S.C. § 1125(a)(1)(A) or his false advertising claim under 15 U.S.C. § 1125(a)(1)(B).  According to defendants, standing to assert a claim under either of these provisions requires a plaintiff to claim a competitive or commercial injury—which defendants claim plaintiff has failed to allege.  This inquiry is of no consequence since this Court has already found that assuming *arguendo* plaintiff is a celebrity under the Act, plaintiff has not established that defendants' communications caused consumer confusion or included misrepresentations about the organization's activities with plaintiff.

cannot bar his claim since his complaint alleges a continuing violation.

This Court refuses to apply the doctrine of continuing violations in plaintiff's case for two reasons. First, plaintiff's complaint alleges no specific acts that demonstrate a continuing violation. Instead, the complaint states only that "defendants continue to misappropriate [his] files, documents and other irreplaceable evidence and exhibits relating to his cases, including [plaintiff's] likeness and name for their own use and benefit." (*See* Compl. ¶ 96.) Viewing the facts in a light most favorable to plaintiff, this vague allegation is insufficient to show a continuing violation. Plaintiff alleges specific acts demonstrating a continuing violation for the first time in his opposition brief to defendants' motion to dismiss, rather than in his complaint.[5] (*See* Pl.'s Opp'n at 17.) It is therefore improper for the Court to consider those allegations as an expansion of the claim as alleged. Second, plaintiff has made no allegation that he was unaware of defendants' alleged appropriation until after the statute of limitations had run. Under the law of this Circuit, the continuing violations doctrine will not toll the statute of limitations where plaintiff is aware of the alleged violations. *See, e.g.*, *Moore v. Chertoff*, 437 F. Supp. 2d 156, 162–63 (D.D.C. 2006) (finding that in the context of employment discrimination actions, "the law of this circuit . . . precludes applying the doctrine of continuing violations where plaintiffs are aware of the discriminatory nature of the acts if the basis for the continuing violation is a series of related acts"); *Butler v. Fairbanks Capital*, Civ. A. 04-0367, 2005 WL 5108537, at *9 (D.D.C. Jan. 3, 2005) (stating that in actions brought under the Truth in Lending Act, 16 U.S.C. §

---

[5] Plaintiff attaches to his opposition brief a document printed from Judicial Watch's website on April 11, 2007. The document itself has a release date of July 17, 2001. Plaintiff claims that the document shows that Judicial Watch, through its website, continues to broadcast images of Paul and Hillary Clinton at the 2000 Senate fundraiser.

13

1601 *et seq*., courts will only apply the continuing violations doctrine where plaintiff is "reasonably unaware of the violation").  Accordingly, the statute of limitations as to plaintiff's claim for appropriation of name and likeness began to run in January 2006 and therefore plaintiff's claim is time barred.  Thus, defendants' motion to dismiss Count 6 of the complaint shall be GRANTED.

### III. CONCLUSION

For the foregoing reasons, defendants' motion [2] to dismiss shall be GRANTED in part and DENIED in part.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on February 6, 2008.

14