IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER F. PAUL, | |
| Plaintiff, | |
| v. | Civil Action No. 1:07-cv-00279-RCL |
| | Honorable Royce C. Lamberth |
| JUDICIAL WATCH, INC., *ET AL.* | No Events Currently Scheduled |
| Defendants. | |

**REPLY MEMORANDUM OF DEFENDANTS'**
**IN SUPPORT OF MOTION DISQUALIFY LARRY E. KLAYMAN AS COUNSEL**

Defendants Judicial Watch, Inc. ("Judicial Watch") and Paul J. Orfanedes ("Orfanedes"), by undersigned counsel, hereby reply to the Memorandum[1] of Plaintiff Peter Paul ("Paul") in opposition to the Motion to Disqualify Larry E. Klayman ("Klayman") as his counsel.

**INTRODUCTION**

Paul's Opposition Memorandum consists entirely of unsupported argument. Not one case is cited as authority that was not previously cited by Defendants. The undisputed fact is that Klayman was directly involved with the matters that now form the basis of Paul's Complaint. *See* Complaint at ¶¶ 2 and 3; Def's Motion, Exhibit 10; *see also* Legal Services Agreement, attached to the Complaint as Exhibit A. The parties also agree that Klayman and Judicial Watch are adverse parties.[2] Despite the self-serving assertions of Klayman, acting as

---

1   On June 25, 2008, Paul filed a Supplemental Memorandum in Opposition to the Motion to Disqualify Klayman as his counsel. Defendants reserve the right to reply to this Memorandum within the time permitted by the Local Rules (*i.e.*, 5 days).

2   Paul asserts that he and Klayman are not adverse because a claim for breach of fiduciary duty is based on the individual actions of the Defendants. This assertion ignores that Judicial Watch, as a corporate entity, can only action through its agents, one of whom was Klayman. Further, the collection of vast donations as alleged in the Complaint occurred predominantly under Klayman's direction and pursuant to solicitation letters he

Paul's attorney, there is no dispute that this litigation is substantially related to the underlying matter and that Klayman was principally involved in those circumstances as both General Counsel for Judicial Watch and as counsel for Paul. Klayman's attempt to represent Paul in this litigation presents a direct conflict of interest. Further, Klayman will be a fact witness. There is no option other than to disqualify Klayman as counsel for Paul.

## LEGAL ARGUMENT

### I. PLAINTIFF'S OPPOSITION IGNORES THE STANDARD FOR DISQUALIFICATION OF AN ATTORNEY

Paul and Klayman agree that a party's counsel must be disqualified "when [1] the conduct is in violation of the rules of professional conduct to the point of undermining the court's confidence in the vigor of counsel's representation of his client or [2] where the attorney is in a position to use confidential information concerning his client's opponent gained from a prior representation." *Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 7-8 (D.D.C. 2006) (*citing Koller v. Richardson-Merrell Inc.*, 237 U.S. App. D.C. 333, 737 F.2d 1038 (D.C. Cir. 1984), vacated on other grounds, 472 U.S. 424 (1985)). Completely ignoring this standard, Paul and Klayman argue that disqualification is not warranted because Judicial Watch did not articulate the specific confidential information at risk. This argument is foolish. To be disqualified, counsel need only be "in a position to use confidential information" that was gained while functioning as Judicial Watch's general counsel. According to Klayman (who is the real party in interest in this litigation), there is some type of magical divide between representation of Paul when Klayman was general counsel to Judicial Watch and representation of Paul on the same matter after Klayman separated from Judicial Watch.

---

    drafted and signed.

Paul's magical divide contradicts the Rules of Professional Conduct. The term "matter" is defined as follows:

> any litigation, administrative proceeding, lobbying activity, application, claim, investigation, arrest, charge or accusation, the drafting of a contract, a negotiation, estate or family relations practice issue, or any other representation, except as expressly limited in a particular rule.

Rule 1.0(h) of the D.C. Rules of Professional Conduct. Representation of Paul before and after Klayman separated from Judicial Watch is, without question, the same "matter". Therefore, Klayman may represent Paul in this case only if the representation of Paul is not substantially related to Judicial Watch's representation of Paul, Judicial Watch and Paul will not be materially adverse parties, and Judicial Watch gives Klayman its informed consent. *See* Rule 1.9 of the D.C. Rules of Professional Conduct. Clearly, this standard is not met.

Suing Judicial Watch regarding its representation of Paul is directly related to the "matter" of Judicial Watch's prior representation of Paul. Klayman cannot separate himself from that reality. One need only view the case caption to conclude that Judicial Watch and Paul will be materially adverse parties in this case. Finally, as Paul concedes, Judicial Watch did not consent to Klayman's representation of Paul in this litigation. As such, Klayman's representation of Paul directly conflicts with his ethical obligations and is, simply put, a direct conflict of interest.

Paul repeatedly contends, without citation to any authority, that Klayman should not be disqualified because he does not possess any confidential information belonging to Judicial Watch and no such information has been communicated to him. Initially, Judicial Watch is not required to disclose specifics regarding the confidential information because this requirement would essentially disclose the information. More importantly, Judicial Watch did articulate one

important area of Klayman's confidential knowledge. Klayman was the principal representative of Judicial Watch to handle Paul's matters prior to his separation in September of 2003. As General Counsel, he also drafted and signed the Legal Representation Agreement for his client, Judicial Watch. *See* Def's Motion to Disqualify, Exhibit 10 at ¶¶ 4 – 5 and Exhibit 3, Declaration in the Superior Court of the State of California at ¶ 10. In light of the dispute surrounding the agreement, Klayman is absolutely disqualified because he possesses this information and will be a fact witness.

> II. **PAUL'S OPPOSITION DEMONSTRATES THAT THE SCOPE AND INTERPRETATION OF THE LEGAL REPRESENTATION AGREEMENT IS AT ISSUE AND THAT KLAYMAN WILL BE A FACT WITNESS**

Paul erroneously asserts that he has no need for Klayman as a witness in this litigation. Frankly, Paul's assertion is not relevant to determining whether the attorney may be a witness. Whenever a former client sues the attorneys who previously represented him, each attorney that participated in representation of the former client in the underlying matter becomes a potential witness in the matter. At a minimum, each former attorney will be deposed. Putting aside this reality, Klayman's involvement transcends this potentiality because Paul's Opposition confirms that interpretation of the Legal Representation Agreement will be at issue in this case. Pl's Opp. at 3. Specifically, Paul and Klayman assert "The contract speaks for itself [] and *its meaning and intent are not issues of litigation in this matter as much as the Defendants would like it to be*". *Id*. (emphasis added). This assertion clearly demonstrates that the parties are at odds regarding the scope of the agreement, as well as the obligations imposed by the agreement on each party. Paul's assertion that "[a]t no time did Mr. Klayman represent Judicial Watch in any matters regarding Paul's case" is quite simply belied by Klayman's signature on the very document that

is at the center of the dispute. For purposes of that agreement, Klayman was representing Judicial Watch. Complaint, Exhibit A.

Klayman's relevance as a witness in this litigation is further illustrated by the Complaint and Answer. Paragraphs 56 and 57 allege that Judicial Watch was under obligation to Paul regarding payment of legal fees and representation. Defendants deny those allegations. *See* Complaint and Answer. The agreement at the center of this dispute was drafted, at least in part, by Klayman who then signed the agreement as Judicial Watch's General Counsel. That Klayman's testimony will be relevant regarding creation and performance of the agreement is beyond dispute. More importantly, Klayman's attempt to argue an interpretation of the agreement that is adverse to his former client is the very definition of a conflict of interest. Clearly, Klayman cannot function as counsel and witness simultaneously. *See* Rule 3.9 of the Rules of Professional Conduct.

### III. KLAYMAN'S MISGUIDED UNDERSTANDING OF RULE 1.6 OF THE RULES OF PROFESSIONAL CONDUCT HIGHLIGHTS THE DANGER FOR DISCLOSURE OF JUDICIAL WATCH'S CONFIDENCES AND SECRETS

Although Klayman was General Counsel to Judicial Watch before he was ever counsel to Paul, Paul asserts that Klayman is not in danger of violating Rule 1.6 because Klayman is "preserving the attorney-client privilege with Paul" by representing him in this litigation. Pl's Opp. at 9. This statement demonstrates a complete lack of loyalty by Klayman to his former client, Judicial Watch. Indeed, Klayman has no loyalty to Judicial Watch as this litigation is merely part of his effort to harm the organization. The putative wrongs alleged in this case were manufactured by Klayman as part of his media campaign against Judicial Watch. Paul is not a client. He is merely a vehicle that Klayman uses to exact revenge on his former client.

Paul's Opposition conveniently ignores Klayman's obligation to obtain Judicial Watch's consent to disclose confidences or secrets. While Klayman proudly announces his former position as General Counsel for Judicial Watch when it suits his needs, in practice, he takes no steps to preserve the confidences that the tenets of his profession require. Instead, ethics impose not limits on Klayman's conduct but function as mere guidelines. Despite his views, Klayman continues to have an ethical responsibility to safeguard information he acquired while employed as Judicial Watch's General Counsel. Representation of Paul in this litigation is a violation of those responsibilities that continue to harm Judicial Watch, and the reputation of attorneys in general.

## IV.   JUDICIAL WATCH FACES IMMINENT AND ACTUAL HARM

Paul agrees with Defendants that *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 754 (D. Md. 1997) is similar to the facts of this dispute and greatly intensifies the potential that "confidential information will be disclosed in the ex parte setting". Pl's Opp. at 10 – 11. However, Paul (and Klayman) contend that this is not a circumstance of "dual representation". *Id.* In addition, they maintain that "Defendant [sic] fail to state what is the conflict". Pl's Opp at 11. Such an argument disregards the substantial relationship between this litigation and the underlying matter, as well as Klayman's representation of both Judicial Watch and Paul in the underlying matter. Essentially, Paul's argument rests on a technicality of diction that ignores the facts. Clearly stated, the direct conflict arises because an attorney who represented both parties in the underlying matter now seeks to represent one and sue the other over the underlying matter. The conflict is unambiguous.

The attitude and conduct of Paul (and Klayman) signal no concern for Klayman's continuing obligations to Judicial Watch. Klayman cannot reasonably believe that a direct

conflict does not exist. *See* Rule 1.7, Comment [7] (stating that the belief a lawyer will be able to provide competent and diligent representation to the affected clients is judged by objective, and not subjective, reasonableness). It is incumbent on the Court to intercede and enforce the Rules of Professional Conduct.

V.   **PAUL WILL SUFFER NO PREJUDICE**

Paul contends that no one will represent him if the Court disqualifies Klayman. Frankly, that is no reason to permit ethical violations. Moreover, it is still early in the litigation and Paul has ample time to obtain other counsel. If what he asserts is true (that no other attorney will take the case), then perhaps Paul should rethink the action and his motivation for filing it. A simple reason for the lack of interest by any other attorney is most likely the absence of any merit to the allegations.

**CONCLUSION**

WHEREFORE, for all of the forgoing reasons, and for those set forth in the Defendants' Motion, Defendants Judicial Watch, Inc. and Paul J. Orfanedes respectfully request that the Court GRANT this Motion and disqualify Larry Klayman as counsel for Plaintiff Peter Paul.

Respectfully submitted,

/s/ *Richard W. Driscoll*
_____
Richard W. Driscoll (436471)
Juli Z. Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc. and Paul J. Orfanedes*

Dated: June 26, 2008