IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER PAUL, et al.,**<br><br>       Plaintiffs,<br><br>v.<br><br>**JUDICIAL WATCH, INC., et al.,**<br><br>       Defendants. | Civil Action No.  –CV-00279-RCL<br>Honorable Royce C. Lamberth |

## NOTICE OF APPEAL

Larry Klayman, counsel for Peter Paul, hereby appeals the Court's Order and

Memorandum Opinion of July 16, 2008. (attached).

                                          Respectfully submitted,

                                          s/Larry Klayman_____
                                          Larry Klayman, Esq.
                                          D.C. Bar No.: 334581
                                          3415 SW 24th Street
                                          Miami, FL 33145
                                          Tel: 305.447.1091
                                          Fax: 305.447.1548

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July 2008, a true copy of the foregoing

Notice of Appeal was served via electronic means to:

          Richard W. Driscoll, Esquire

Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, VA 22314

By:  s/Larry Klayman_____
Larry Klayman, Esq.
D.C. Bar No.: 334581
3415 SW 24th Street
Miami, FL 33145
Tel: 305.447.1091
Fax: 305.447.1548

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **PETER F. PAUL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-279 (RCL) |
| | ) | |
| **JUDICIAL WATCH, INC,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Now comes before this Court defendants' Motion to Disqualify Opposing Counsel [Klayman] [21]. Upon consideration of defendants' motion [21], plaintiff's opposition [29], plaintiff's supplemental memorandum [30] and defendants' reply [31], all applicable law and the entire record herein, plaintiffs' motion [21] will be GRANTED.

**I.    BACKGROUND**

Plaintiff Peter Paul ("Paul") filed the instant suit against Judicial Watch and the named defendants on February 6, 2007, alleging breach of contract, breach of fiduciary duty, violations of the standards of professional conduct, unjust enrichment, violation of the Lantham Act and appropriation of name and likeness. (*See* Compl.) After this Court's order of February 6, 2008, granting in part and denying in part defendants' Motion to Dismiss [2], the remaining counts are limited to breach of contract against Judicial Watch and breach of fiduciary duty and violations of the standards of professional conduct with respect to Judicial Watch and defendant Paul Orfanedes. (*See* Ct. Order [9].) These remaining counts are all related to the legal services

1

provided by Judicial Watch to Paul in connection with various legal proceedings. Judicial Watch provided these legal services pursuant to a legal representation agreement signed by the parties on March 20, 2001 and amended by the parties in April, 2002. (*See* Compl. Ex. A; Def.'s Mem. Ex. 1.) It is undisputed that Mr. Larry E. Klayman, present counsel for plaintiff, signed the agreement and subsequent modification thereto (the "legal representation agreement," collectively) as "Chairman and General Counsel" of Judicial Watch.

## II.     Initial Observations

In the case at bar, the Court must consider two questions in turn: first, whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification.

Disqualification of counsel is uncommon, as evidenced by the relative paucity of case law directly on point. However, it is clear that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Ex parte Burr*, 9 Wheat. 529, 531 (1824)). "[T]he district court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary." *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983). In addition,

> [m]otions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

*Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994) (citing *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992) *cert. denied sub nom*. *Northwest Airlines, Inc. v.*

*American Airlines*, 507 U.S. 912 (1993)). *See also Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). Courts must also "recognize of course that disqualification motions may be used as 'procedural weapons' to advance purely tactical purposes." *American Airlines,* 972 F.2d at 611.

The District of Columbia Rules of Professional Conduct govern the practice of law in this District. *See* LCvR 83.15.

### III.     Violation Of Rule 1.9

####     A.     Applicable Standard

Rule 1.9 of the District of Columbia Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter *shall not* thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent" (emphasis added). Based on the language of the rule, for this Court to find a violation of Rule 1.9 in the present circumstances, three questions must be answered affirmatively.[1] The first is whether the attorney accused of the violation is a "former attorney" with respect to a party presently before the court. If so, the second question is whether the subject matter of the former representation is the same as, or substantially related to, the present matter on which the alleged violation of Rule 1.9 is based. If so, the third question is whether the interests of the former client are adverse to the interests of the party represented by the attorney who is accused of violating Rule 1.9. These questions are essentially factual in nature and require careful review in

---

[1]The following discussion assumes the absence of consent on the part of the former client.

each instance.

In many instances, including the case at bar, the answers to the first and third questions will be clear. With respect to whether a present matter is "the same or a substantially related" to the prior representation, the District of Columbia Rules of Professional Conduct provide additional guidance.

Rule 1.0(h) defines "matter" as: "any litigation . . . the drafting of a contract, a negotiation . . . or *any other representation*, except as expressly limited in a particular rule" (emphasis added). Comment [2] to Rule 1.9 explains that, while "[t]he scope of a 'matter' for purposes of this rule may depend on the facts of a particular situation or transaction . . . *[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question*" (emphasis added). Comment [3] to Rule 1.9 provides that "matters are 'substantially related' for purposes of [Rule 1.9] *if they involve the same transaction or legal dispute* or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter" (emphasis added).

A. **Mr. Klayman's Representation of Mr. Paul in this Matter is in Violation of Rule 1.9**

Applying the plain language of Rule 1.9, it is clear that Mr. Klayman's representation of Mr. Paul in the present case is an unambiguous violation thereof. It is uncontested that Mr. Klayman previously served as General Counsel of Judicial Watch and is no longer serving Judicial Watch in that capacity. Paul does not contest defendants' assertion that "Klayman

directed and supervised negotiation and drafting of the Legal Representation Agreement." (Def.'s Mem. Ex. 10, 1-2.)   Klayman is thus a former attorney with respect to Judicial Watch.

It is also plain that the interests of Paul and the defendants are materially adverse.  One is a plaintiff who has named the other as a defendant.  And, as is clear from the existence of the underlying motion, the defendants have not consented to Klayman's representation of Paul.

Turning to the second question above, it is clear to the Court that Mr. Paul's present action is *at least* substantially related to, if not the very same as, a matter in which Mr. Klayman previously represented Judicial Watch.  As the complaint makes clear, each of Paul's remaining claims arise out of the legal representation agreement.  The agreement is the very subject of Paul's breach of contract claim in Count I. (*See* Compl. ¶¶ 56-57.)  The agreement is the source of the duty Paul alleges in his breach of fiduciary duty claim in Count II. (*See* Compl. ¶ 62.)  And, the gravamen of Count III is that the defendants' actions *which were undertaken pursuant to the legal representation agreement* constituted a violation of the standards of professional conduct. (*See* Compl. ¶¶ 68-75.)  This same agreement was negotiated at a time when Klayman served as General Counsel of Judicial Watch – *and was signed by him in that capacity*.  The Court is thus satisfied that Mr. Klayman is attempting to represent Paul in a matter that is substantially related to a matter in which he represented Judicial Watch.

Succinctly put, Mr. Klayman is representing the current plaintiff in a matter directly arising from an agreement he signed in his capacity as General Counsel for the current defendant.  Klayman's present representation of Paul is the very type of "changing of sides in the matter" forbidden by Rule 1.9 of the Rules of Professional Conduct.

**IV.   Disqualification**

5

A.      **<u>Background Considerations</u>**

Having found a clear violation of Rule 1.9 on the part of Mr. Klayman, the Court turns to whether this violation should result in the granting of defendants' motion to disqualify. A survey of relevant case law in this and other circuits reveals some ambiguity with respect to the standard for disqualification in the face of a violation of Rule 1.9 (or its equivalent).

Though not directly on point, in its most recent case on the subject our Circuit Court expressed agreement with the proposition "that disqualification is warranted *only rarely* in cases where there is neither a serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party." *Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984) (emphasis added) (internal citations omitted) (vacated on other grounds). Discussing this standard in a different context from the case at bar, the Court indicated it was agreeing "with the Second Circuit's admonition that unless an attorney's conduct tends to taint the underlying trial, by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney." *Id.* at 1055-56 (quoting *Board of Education of New York City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)) (citations, footnotes and internal quotation marks omitted). This so-called "taint standard," primarily exemplified in the Second Circuit's approach to motions to disqualify, takes the position that "[t]he business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice [before the court] unless the questioned behavior taints the trial of the cause before it." *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2nd Cir. 1976) (citing *Lefrak v. Arabian American Oil Co.*, 527 F.2d 1136, 1141 (2nd Cir. 1975)). Under

6

the taint standard, an attorney's ethical violation – by itself – does not warrant disqualification. Instead, unethical conduct must also threaten to impact the outcome of the trial.

The Fifth Circuit has "squarely rejected this hands-off approach in which ethical rules 'guide' whether counsel's presence will 'taint' a proceeding, holding instead that a '[d]istrict [c]ourt is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.'" *American Airlines,* 972 F.2d at 615 (citing *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976)). Under this approach, a "motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *Id.* at 611 (quoting *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980)). Other Circuits have suggested a similar *affirmative* duty on the part of district courts to discipline members of the bar through disqualification in the face of violations of applicable rules of professional conduct. *See, e.g. Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir.1984) ("the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it" and violation of Model Rules of Professional Responsibility sufficient grounds for disqualification); *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983) (same); *Int'l Bus. Mach. Corp. v. Levin*, 579 F.2d 271, 279 (3rd Cir. 1978) ("If the facts found by the district court establish that practitioners before it have acted in a way which disqualifies them under its rules and established standards of professional conduct, it would ordinarily be error for the court to fail to declare the disqualification.").

This difference in approach to enforcement of Rules of Professional Conduct is apparent in differing standards as to whether disqualification is warranted in the face of a violation of a rule of professional conduct (such as Rule 1.9) prohibiting an attorney from representing a client

where the attorney's prior representation of a former client may create an appearance of, or actual, conflict of interest.

A recent Second Circuit decision establishes the following elements that must be shown in that Circuit before an attorney can be disqualified in a case of successive representation:

> (1) the moving party is a former client of the adverse party's counsel;
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2nd Cir. 2005) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2nd Cir.1983)).  Several other Circuits do not join the Second Circuit in requiring the third showing – that the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his substantially related prior representation – in order to disqualify.

For example, the Fifth Circuit has held that a party seeking to disqualify opposing counsel on the ground of a former representation must establish only the first two elements above: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *American Airlines*, 972 F.2d 614.  With respect to requiring access or likely access to relevant privileged information, the Fifth Circuit has stated "[o]nce it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *Perillo v. Johnson*, 205 F.3d 775, 800 (5th Cir. 2000).  This approach is similar to that of other

circuits. For example, the Ninth Circuit has stated:

> The test [for disqualification] does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.

*Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). And the Seventh Circuit similarly has found "[t]he evidence need only establish the scope of the legal representation and not the actual receipt of the allegedly relevant confidential information." *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 and n.3 (7th Cir. 1978).

In the instant case – though they disagree as to the particulars of the standard – both parties' filings suggest that *Koller* and *Steinbuch v. Cutler*, 463 F.Supp.2d 4 (D.D.C. 2006), express the relevant standard for disqualification under the present circumstances. This Court is not convinced that *Koller* and *Steinbuch* alone reveal the appropriate standard.

In *Steinbuch*, Magistrate Judge Facciola interpreted *Koller* as establishing an "extraordinarily high burden," for the disqualification of counsel. *Steinbuch*, 463 F.Supp.2d at 7. While both *Koller* and *Steinbuch* dealt with the question of when it is appropriate to disqualify counsel, neither court found the underlying conduct at issue in those cases to be a clear and unequivocal violation of the Rules of Professional Conduct. On the contrary, the *Koller* court found the conduct at issue *did not* constitute a clear violation of any applicable rule, *Koller* 737 F.2d at 1057-60, and in *Steinbuch* the issue was not decided, s*ee* 463 F.Supp.2d at 7-8. Thus, while *Koller* and *Steinbuch* inform this Court's analysis, it is clear they are not directly applicable to the case at bar, in which a clear violation of Rule 1.9 has been found.

It is also relevant that the *Koller* court did not *prohibit* disqualification outside of the two enumerated circumstances – instead it indicated that disqualification outside of such circumstances was warranted "*only rarely.*" *Koller*, 737 F.2d at 1055 (emphasis added). For example, in *Koller* our Circuit pointed out that it had previously "approved or even on occasion mandated disqualification" in certain circumstances, including:

> where a conflict of interest – potential or actual – between current clients undermined the court's confidence in counsel's ability to serve each client with undivided loyalty, where a lawyer would likely be called as a witness in the main case, thus compromising his effectiveness as an advocate, or where counsel's prior work on the same or related matters as a government official may create an appearance of impropriety in contravention of [the applicable rule from the Code of Professional Responsibility].

*Id.* (internal citations omitted). It is with these concepts of when disqualification has and has not been deemed appropriate in this Circuit in mind that this Court turns to the question of whether a clear violation of Rule 1.9, by itself, provides sufficient grounds for disqualification; or, whether some additional showing is necessary.

### B. A Violation of Rule 1.9 is Sufficient Grounds for Disqualification

To answer the question of whether a violation of Rule 1.9 – without more – provides sufficient basis to grant a motion to disqualify, the Court returns to the language of Rule 1.9 and accompanying comments.

From the outset, the Court notes that Rule 1.9 states unequivocally that an attorney in Mr. Klayman's position "*shall not thereafter represent*" a client such as Paul. DC RPC Rule 1.9 (emphasis added). Also applicable to the case at bar is the statement in Comment [2] to Rule 1.9 that "[w]hen a lawyer has been directly involved in a specific transaction, subsequent

representation of other clients with materially adverse interests *clearly is prohibited*"(emphasis added). As previously discussed, Mr. Klayman was directly involved in the specific transaction giving rise to each of Paul's remaining claims – he signed the legal representation agreement in his capacity as General Counsel of Judicial Watch. Thus, Comment [2] to Rule 1.9 suggests his representation "clearly is prohibited."

Further, Comment [2] to Rule 1.9 explains that the rule "is intended to incorporate District of Columbia and federal case law defining the 'substantial relationship' test." In doing so, it specifically cites two cases, *Brown v. District of Columbia Board of Zoning Adjustment*, 486 A.2d 37 (D.C. 1984) (en banc) and *T.C. Theatre Corp. v. Warner Brothers Pictures*, 113 F. Supp. 265 (S.D.N.Y. 1953) and its progeny. While reference to these cases is not necessary to determine whether a "substantial relationship" exists in the present instance, the decisions provide useful guidance in this Court's analysis as to when disqualification is appropriate.

Notably, the *Brown* court quoted *T.C. Theatre* for the rule that "[w]here any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter *will be prohibited*." *Brown*, 486 A.2d at 42 (quoting *T.C. Theatre*, 113 F.Supp. at 268) (emphasis added). In *T.C. Theatre*, discussing the necessity of showing that the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his substantially related prior representation, Judge Weinfeld stated:

> I am not in accord with [the assertion that the moving party] is required to show that during the [prior representation] it disclosed matters to [the attorney subject to the motion to disqualify] related to the instant case. Rather, *I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on*

11

> *behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.* The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953) (emphasis added).

The potential conflict of interest at issue in *Brown* involved a violation of then-rule DR 9-101(B),[2] regarding successive government and private employment. Considering the required showing for disqualification in that context, the District of Columbia Court of Appeals stated "[i]f the factfinder is persuaded that two matters are substantially related - i.e., that it is reasonable to infer counsel may have received information during the first representation that might be useful to the second - there arises *a conclusive inference* that useful information was, in fact, received." *Brown,* 486 A.2d at 50 (emphasis added) (citing *Westinghouse Elec. Corp*., 588 F.2d at 224 and n. 3 and *Emle Industries, Inc. v. Patentex, Inc*., 478 F.2d 562, 571 (2d Cir.1973))). While the *Brown* court did note that there were reasons for holding former government attorneys to higher standards in cases of potential "side-switching," the refinements to the standard it suggested in that context reduced the showing required in order for the moving party to meet its burden of demonstrating the existence of a substantial relationship. *Id.* at 49-50.

Further, applying its decision in *Brown* in a subsequent disqualification matter involving side-switching between private clients, the District of Columbia Court of Appeals explained:

> It is apparent from this court's explanation of the rule [in *Brown*] that two

---

[2]Precursor rule to current Rule 1.11.

12

> showings by the party seeking disqualification are required. First, the party must show that an attorney-client relationship formerly existed; the rule speaks in terms of "former client" and "former attorney." Second, the party must show that the current litigation is substantially related to the prior representation. *If these two showings are made, then the party seeking disqualification need not show that confidential information was actually transmitted to the attorney or that the attorney to be disqualified has recall of that information. Similarly, even if the attorney to be disqualified shows that he did not have access to or does not recall confidential information, this will not defeat the presumption which has been created.*

*Derrickson v. Derrickson*, 541 A.2d 149, 152 (D.C. 1988) (emphasis added) (footnote omitted). The *Derrickson* court further quoted *Brown* for the rule that "when a party seeking disqualification carries its burden of persuading the factfinder that two matters, handled by the same counsel, are substantially related, there is an *irrebuttable presumption* that counsel received information during the first representation that is relevant to the second." *Id.* at 151-52 (footnote omitted) (quoting *Brown*, 486 A.2d at 42 n.5).

Applying these principles to the case at bar, it is clear to this Court that a motion to disqualify can be granted on the basis of a violation of Rule 1.9, without any further showing.

Once a "substantial relationship" between the prior representation and the present matter is shown – which is necessary to demonstrate a violation of Rule 1.9 – the cases cited in the rule create an irrebuttable presumption that the attorney has information that can be used for the benefit of the present client to the detriment of the former. This conclusive presumption is more than adequate to demonstrate precisely the "substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party" discussed by our Circuit in *Koller*. In this way, two questions – first, whether there is a violation of a rule of professional conduct, and second, whether the violation tends to taint the trial – are collapsed

into a single inquiry.

Thus, regardless of whether or not our Circuit would apply a "taint," or some lesser standard in cases such as the one at bar, the outcome will be the same. If no taint is required, a violation of the rule is sufficient justification for disqualification. If a taint standard is applied, the rule itself creates an irrebuttable presumption that its violation will taint the underlying trial. Accordingly, this Court concludes that disqualification is appropriate when an attorney is in violation of Rule 1.9 of the District of Columbia Rules of Professional Conduct.[3]

### C.     Potential Hardship to Paul

Finally, the Court takes note of Paul's argument that he will suffer prejudice if Mr. Klayman is disqualified. (*See* Pl.'s Opp'n 11; Pl.'s Opp'n Ex. 1, ¶¶ 14-15.) The essence of the hardship that Paul asserts will result from disqualification of Klayman is an inability to obtain alternate counsel for lack of financial resources. The Court is not unsympathetic to this concern. However, in the absence of the consent of the other party, the plain language of Rule 1.9 provides no exception to its prohibition on successive representation in circumstances such as in the case at bar. Even if an exception were permitted, balancing all the interests at stake, this Court would not consider such an exception appropriate. The Court simply cannot condone such a flagrant violation of a Rule of Professional Conduct essential to the proper functioning of our system of justice.

## V.     CONCLUSION

Plaintiff's counsel is in clear violation of Rule 1.9 of the District of Columbia Rules of

---

[3] Because the Court believes disqualification merited in the present case, it does not reach the question of whether a violation of Rule 1.9 *requires* disqualification, or merely provides a sufficient basis for a District Court's decision to grant a motion to disqualify.

Professional Conduct. For this reason, and as further set forth above, defendant's Motion [21] to Disqualify Opposing Counsel will be GRANTED.

    A separate order shall issue this date.

    SO ORDERED.


    Signed by Royce C. Lamberth, Chief Judge, July 16, 2008.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER F. PAUL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 07-279 (RCL) |
| JUDICIAL WATCH, INC, *et al.*, | ) | |
| Defendants. | ) | |

### ORDER

Now comes before this court defendants' Motion to Disqualify Opposing Counsel [Klayman] [21]. Upon consideration of defendants' motion [21], plaintiff's opposition [29], plaintiff's supplemental memorandum [30] and defendants' reply [31], all applicable law and the entire record herein, it is hereby

ORDERED that defendants' Motion to Disqualify Opposing Counsel [21] is GRANTED; and it is further

ORDERED that Larry E. Klayman and the Klayman Law Firm, P.C. are herby disqualified from representing plaintiff Peter Paul in this litigation.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, July 16, 2008.